IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LOCKHEED MARTIN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00-129C |
| | ) | (Judge Allegra) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S BRIEF IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, Lockheed Martin Corporation ("Lockheed" or "Plaintiff") respectfully submits this Brief in Support of Its Motion for Summary Judgment.

## TABLE OF CONTENTS

STATEMENT OF THE CASE AND QUESTIONS PRESENTED .............................................5

A. Statement of the Case........................................................................................ 5

B. Questions Presented ........................................................................................ 8

ARGUMENT ........................................................................................................ 9

I. LOCKHEED'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED ........................................................................................................ 9

II. THE GOVERNMENT'S COUNTERCLAIM FOR "INCREASED COSTS" SHOULD BE DISMISSED BECAUSE THE AMOUNT OF ALLOWABLE CRAY COMPUTER COSTS ALLOCABLE TO GOVERNMENT CONTRACTS UNDER EITHER LOCKHEED'S METHOD OR THE GOVERNMENT'S METHOD WAS GREATER THAN THE AMOUNT PAID BY THE GOVERNMENT............................................ 11

III. LOCKHEED IS ENTITLED TO CHARGE GOVERNMENT CONTRACTS THE ALLOCABLE PORTION OF LOCKHEED'S LOSS ON THE DISPOSITION OF THE CRAY COMPUTERS. ........................................................................................ 12

IV. THE CAS CLAUSE ENTITLES LOCKHEED TO AN EQUITABLE ADJUSTMENT UNDER THE CHANGES CLAUSE FOR THE COST IMPACT ON GOVERNMENT CONTRACTS RESULTING FROM LOCKHEED'S AGREEMENT WITH THE GOVERNMENT TO CHANGE ITS COST ACCOUNTING PRACTICE FOR THE CRAY COMPUTER COSTS TO THE ALLOCATION METHOD DESIRED BY THE GOVERNMENT........................................................................................ 13

CONCLUSION........................................................................................................ 15

## APPENDIX

Exhibit



| | | |
|---|---|---|
| A | Declaration of James M. Blue | 001-007 |
| 1 | September 9, 1994 DCAA Audit Report Number 3121-94J19200016 (attachment omitted) | 008-012 |
| 2 | September 19, 1994 DCAA Audit Report Number 3121-94J19200015 (attachment omitted) | 013-017 |
| 3 | November 22, 1994 DCE Rose letter (attachment omitted) | 018-019 |

| | | |
|---|---|---|
| 4 | September 29, 1995 DCAA letter, forwarding draft DCAA Audit Report Number 3121-95J10501001 to Lockheed | 020-022 |
| 5 | May 31, 1996 DCE Becker letter | 023-024 |
| 6 | December 19, 1997 Lockheed letter (attachment omitted) | 025 |
| 7 | March 16, 1999 DCE Becker final decision | 026-027A |
| 8 | Relevant excerpts from the CAS Statute, 41 U.S.C. § 422 | 028-029 |
| 9 | Relevant excerpts from the Cost Accounting Standards | 030-031 |
| | CAS § 9903.306 (4/26/91) | 030 |
| | CAS § 9904.409-40 (4/26/91) | 031 |
| 10 | Relevant excerpts from the Federal Acquisition Regulation | 032-045 |
| | FAR § 31.101 (8/31/92) | 032 |
| | FAR § 31.205-16 (12/14/95) | 033-034 |
| | FAR § 52.230-2 (8/31/92) | 035-036 |
| | FAR § 52.230-3 (9/30/87) | 037-039 |
| | FAR § 52.243-1 (10/1/95) | 040-042 |
| | FAR § 52.243-2 (10/1/95) | 043-045 |

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................................................................................9

*Cane Tenn., Inc. v. United States*,
60 Fed. Cl. 694 (2004)..................................................................................10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986), *cited by Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987) ...................................................9

*Cornejo-Ortega v. United States*,
61 Fed. Cl. 371, 2004 U.S. Claims LEXIS 173 (2004) ..........................................9, 10

*Jones v. United States*,
49 Fed. Cl. 516 (2001)..................................................................................10

*Sweats Fashions, Inc. v. Pannill Knitting Co.*,
833 F.2d 1560 (Fed. Cir. 1987) ...................................................................9, 10

## STATUTES

41 U.S.C. § 422...........................................................................................11, 13

## REGULATIONS

CAS § 9903.306..............................................................................................11

CAS § 9904.409-40 ........................................................................................12

FAR § 31.205-16 ............................................................................................12

FAR § 52.230-2 .....................................................................................13, 14, 15

FAR § 52.230-3 ..............................................................................................13

FAR § 52.243-1 ..............................................................................................15

FAR § 52.243-2 ..............................................................................................15

## MISCELLANEOUS

Fed. R. Civ. P. 56..............................................................................................9

## STATEMENT OF THE CASE AND QUESTIONS PRESENTED

This case concerns (1) the method under the Cost Accounting Standards ("CAS") for allocating allowable CRAY computer costs, and (2) the proper amount of these costs allocable to government contracts. To simplify this case and expedite its final resolution, Lockheed is limiting the amount it seeks to recover in this case to a portion of the Government's underpayment of CRAY computer costs, specifically, the portion of Lockheed's loss on the disposition of the CRAY computers that is allocable to government contracts using the Government's actual usage method.

There are no genuine issues as to any material fact in connection with the issues that are the subject of this Motion, and disposition of these discrete issues should lead the parties to resolve the entire case.

### A. Statement of the Case.

Lockheed Corporation formed the Lockheed Information Technology Company ("LITC") as a wholly owned subsidiary in 1992. Plaintiff's Proposed Findings of Uncontroverted Fact ("PFOF") ¶ 1. Lockheed centralized most data processing services and information technology resources at LITC, including CRAY computer resources, for the purposes of achieving significant Corporate-wide cost savings. *Id.*

To support company forecasted demands, LITC acquired two CRAY super computers, with an investment value of approximately $18.2 million. *Id.* ¶ 2. The predominant users of the CRAY computers were expected to be Lockheed Missiles and Space ("LMSC") in Sunnyvale, California; Lockheed Aeronautical Systems Company ("LASC") in Marietta, Georgia; and Lockheed Advanced Development Company ("LADC" or "Skunk Works") in Palmdale,

California [hereinafter, "the operating companies"]. *Id.* ¶ 3. In 1994-1995, LITC supplied CRAY computer resources to LMSC and LASC. *Id.* ¶ 4.

Lockheed accumulated LITC costs for CRAY computer hardware, maintenance, software, labor support, facility, administrative, service and telecommunications in the "CRAY Computing Cost Pool" and, for the years 1994 and 1995, allocated these costs to operating companies by charging a fixed cost for CRAY computer resources to each operating company based on each operating company's annual forecasted hours for CRAY computing resources ["resource commitment method" or "Lockheed's method"]. PFOF ¶ 5.

Due in part to the operating companies' underutilization of the CRAY computers in 1994 and 1995, Lockheed disposed of the two CRAY computers in 1995 at a loss of approximately $6.8 million. *Id.* ¶¶ 8-9.

This dispute began with issuance of an audit report by the Defense Contract Audit Agency ("DCAA") on September 9, 1994, in which DCAA opined that Lockheed's method for allocating CRAY computer costs did not comply with CAS 418. PFOF ¶ 11; Exhibit 1 (Appendix to Plaintiff's Motion for Summary Judgment ("App.") at 008-012). DCAA believed that Lockheed's method did not comply with CAS because Lockheed's allocation of CRAY computer costs was not based on "resource consumption." *Id*. By letter dated November 22, 1994, the Defense Corporate Executive ("DCE")[1] assigned to Lockheed, James Rose, rejected DCAA's opinion and concluded that Lockheed's allocation method "meets the intent of [the] CAS 418 requirement. Therefore, with this letter the issue of noncompliance with CAS 418 is

---

[1] In Mr. Rose's November 22 letter, the term "DCE" is synonymous with the term "ACO," or "Administrative Contracting Officer." PFOF ¶ 13 n.2; Exhibit 3 (App. at 018-019).

resolved and disposed of with no additional action required." PFOF ¶ 13; Exhibit 3 (App. at 018-019).

Subsequently, when Lockheed Corporation merged with Martin Marietta Corporation in March 1995, the former Lockheed Corporation Corporate headquarters were moved to Bethesda, Maryland, and Louis Becker replaced James Rose as the DCE for Lockheed Martin. PFOF ¶ 16. On May 31, 1996, a year and one half after Mr. Rose issued the November 22, 1994 letter finding Lockheed's method compliant with CAS, Mr. Becker reversed course and determined that Lockheed's method did not comply with CAS, citing the reasons previously rejected by DCE Rose. *Id.* ¶ 17; Exhibit 5 (App. at 023-024).

While continuing to maintain that its method complied with CAS, Lockheed agreed with the DCE and his representative to change Lockheed's cost accounting practice for CRAY computer costs to the Government's method. PFOF ¶ 19. The Government's method required allocation of CRAY costs to each operating company based on the hours actually used by the operating company [the "Government's method."]. *Id.* ¶ 5. Lockheed implemented its agreement to change its cost accounting practice notwithstanding the dispute between the DCE and Lockheed on whether Lockheed's method complied with CAS and the cost impact of the change to using the Government's method. Lockheed (1) reallocated the CRAY hourly costs for calendar years 1994 and 1995, and (2) allocated the loss on the disposition of the CRAY computers to LMSC and LASC, according to each company's actual usage of the CRAY computers. *Id.* ¶¶ 10, 20.

The DCE and his representative did not like the impact on government contracts of Lockheed's reallocation of CRAY computer costs for calendar years 1994 and 1995 using the Government's method. PFOF ¶ 21. On March 16, 1999, the DCE issued a final decision

determining that Lockheed's method for allocating CRAY computer resources was not compliant with CAS and asserted a claim against Lockheed for $2,669,534 plus interest. PFOF ¶ 21; Exhibit 7 (App. at 026-027A). Lockheed filed the instant action in this Court asserting that either (1) Lockheed's method complied with CAS, or (2) that the Government incorrectly computed the amount allocable to government contracts under CAS using the Government's method. *Id.* ¶ 22; Complaint.

Both Lockheed's and the Government's methods of allocating the CRAY computer costs are acceptable methods under CAS. The Court need not decide whether Lockheed's allocation method complied with CAS because under either Lockheed's method or the Government's method the Government is not entitled to recover any portion of the $2,669,534 claimed by the DCE in his March 16, 1999 final decision and asserted by the Government in its counterclaim because the Government did not pay any "increased costs."

B. <u>Questions Presented.</u>

1. Whether the Government's counterclaim for "increased costs" should be dismissed because the amount of allowable CRAY computer costs allocable to government contracts under either Lockheed's method or the Government's method was greater than the amount paid by the Government?

2. Whether Lockheed is entitled to charge government contracts the allocable portion of Lockheed's loss on the disposition of the CRAY computers?

3. In the alternative, whether the CAS clause entitles Lockheed to an equitable adjustment under the Changes clause for the cost impact on government contracts resulting from Lockheed's

agreement with the Government to change its cost accounting practice for the CRAY computer costs to the allocation method desired by the Government?

## ARGUMENT

### I. LOCKHEED'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Cornejo-Ortega v. United States*, 61 Fed. Cl. 371, 2004 U.S. Claims LEXIS 173, at *7 (2004). Disputes over facts that are not outcome determinative will not preclude the entry of summary judgment. *Cornejo-Ortega*, 2004 U.S. Claims LEXIS 173, at *7. The Supreme Court and the Federal Circuit have recognized the important role that summary judgment motions play in the fair and efficient functioning of the judicial system:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed. R. Civ. Proc. 1.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986), *cited by Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987).

"The burden on the moving party may be discharged by 'showing'. . . that there is an absence of evidence to support the nonmoving party's case." *Sweats Fashions*, 833 F.2d at 1563 (citing *Celotex Corp.*, 477 U.S. at 325). The movant is also entitled to summary judgment if the non-movant fails to make a showing sufficient to establish an element of its case on which it will

bear the burden of proof at trial. *See Cornejo-Ortega*, 2004 U.S. Claims LEXIS 173, at *7 (citing *Celotex*, 477 U.S. at 322-23); *Cane Tenn., Inc. v. United States*, 60 Fed. Cl. 694, 698 (2004).

"[T]he law is clear that where a movant has supported its motion with affidavits or other evidence which, unopposed, would establish its right to judgment, the non-movant may not rest upon general denials in its pleadings or otherwise, but must proffer specific countering evidence sufficient to create a genuine factual dispute." *Jones v. United States*, 49 Fed. Cl. 516, 520 (2001) (citing *Celotex Corp.*, 477 U.S. at 324-25). As the Federal Circuit has stated and this Court has recognized:

> The court may not simply accept a party's statement that a fact is challenged. . . . The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984). *See also Sweats Fashions, Inc. v. Pannill Knitting Co*., 833 F.2d 1560, 1562 (Fed. Cir. 1987) ("The non-movant may not rest on its conclusory pleadings but, under Rule 56, must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial"); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987) [**16] ("However, the party opposing summary judgment must show an evidentiary conflict on the record; mere denials or conclusory statements are insufficient.").

*Jones*, 49 Fed. Cl. at 520. "A dispute is genuine only if, on the entirety of the record, a reasonable jury could resolve a factual matter in favor of the non-movant." *Sweats Fashions*, 833 F.2d at 1562 (citing *Anderson*, 477 U.S. at 249).

In this case, Lockheed has demonstrated that there are no genuine issues as to any material fact in connection with the issues that are the subject of this Motion, and Lockheed is entitled to a judgment as a matter of law.

## II. THE GOVERNMENT'S COUNTERCLAIM FOR "INCREASED COSTS" SHOULD BE DISMISSED BECAUSE THE AMOUNT OF ALLOWABLE CRAY COMPUTER COSTS ALLOCABLE TO GOVERNMENT CONTRACTS UNDER EITHER LOCKHEED'S METHOD OR THE GOVERNMENT'S METHOD WAS GREATER THAN THE AMOUNT PAID BY THE GOVERNMENT.

The Government has no legal basis for claiming "increased costs" because under either Lockheed's method or the Government's method, the amount of allowable CRAY costs allocable to government contracts was greater than the amount paid by the Government.

Under Lockheed's method, for the years 1994 and 1995, CRAY costs were allocated according to operating company's annual forecasted resource commitment. PFOF ¶ 5. Under the Government's method, CRAY costs were allocated according to each operating company's actual usage of the CRAY computers. *Id.* The total amount of allocable CRAY costs under the Government's method is approximately $30.27 million. *Id.* ¶ 23. Of this amount, the Government has paid $20.79 million. *Id.* Therefore, the Government has underpaid approximately $9.48 million in CRAY costs. *Id*. Under either method, the Government did not overpay Lockheed for any CRAY computer costs. *Id.* ¶ 24.

The CAS statute is clear that the Government is not entitled to recovery under the facts presented here:

> In no case shall the Government recover costs greater than the increased cost (as defined by the Board) to the Government, in the aggregate, on the relevant contracts subject to the price adjustment . . .

41 U.S.C. § 422(h)(3) (attached hereto at Exhibit 8 (App. at 029)); *see also* CAS 9903.306(e) (attached hereto at Exhibit 9 (App. at 030)).

The Government therefore is not entitled to recover on its counterclaim, and its counterclaim should be dismissed with prejudice as a matter of law.

## III. LOCKHEED IS ENTITLED TO CHARGE GOVERNMENT CONTRACTS THE ALLOCABLE PORTION OF LOCKHEED'S LOSS ON THE DISPOSITION OF THE CRAY COMPUTERS.

It is undisputed that the loss on the disposition of the CRAY computers is an allowable and allocable cost and that the year for its allocation is 1995. It is also undisputed that the CRAY computers are tangible capital assets. PFOF ¶ 9. CAS § 9904.409-40(a)(4) provides:

> The gain or loss which is recognized upon disposition of a tangible capital asset shall be assigned to the cost accounting period in which the disposition occurs.

(Attached hereto at Exhibit 9 (App. at 031).) CAS § 9904.409-40(b)(4) provides:

> The gain or loss which is recognized upon disposition of a tangible capital asset, where material in amount, shall be allocated in the same manner as the depreciation cost of the asset has been or would have been allocated for the cost accounting period in which the disposition occurs.

*Id.*; *see also* FAR § 31.205-16(a) (attached hereto at Exhibit 10 (App. at 033-034)).

Because Lockheed disposed of the CRAY computers before the end of their normal service life, their disposition resulted in an unanticipated loss to Lockheed of approximately $6.8 million. PFOF ¶ 9. At LMSC, the CRAY computers were used exclusively in the performance of government contracts. *Id.* ¶ 4. At LASC, they were used almost exclusively in the performance of government contracts or on IR&D work performed in support of government contracts. *Id.* Therefore, Lockheed is entitled to charge to government contracts the allocable portion of the loss on the disposition of the CRAY computers at LMSC and LASC.

## IV. THE CAS CLAUSE ENTITLES LOCKHEED TO AN EQUITABLE ADJUSTMENT UNDER THE CHANGES CLAUSE FOR THE COST IMPACT ON GOVERNMENT CONTRACTS RESULTING FROM LOCKHEED'S AGREEMENT WITH THE GOVERNMENT TO CHANGE ITS COST ACCOUNTING PRACTICE FOR THE CRAY COMPUTER COSTS TO THE ALLOCATION METHOD DESIRED BY THE GOVERNMENT.

The CAS statute and regulations require the Government and Lockheed to comply with CAS:

> Cost accounting standards promulgated under this section shall be mandatory for use by all executive agencies and by contractors and subcontractors in estimating, accumulating, and reporting costs in connection with pricing and administration of, and settlement of disputes concerning, all negotiated prime contract and subcontract procurements with the United States in excess of $500,000.

41 U.S.C. § 422 (f)(2)(A) (attached hereto at Exhibit 8 (App. at 028)). The relevant clause that has been included or incorporated into Lockheed Martin or Lockheed Corporation's contracts with the Government is the CAS clause, which has appeared at sections 52.230-3 and 52.230-2 of the FAR. PFOF ¶ 25; *see also* Exhibit 10 (App. at 035-039, containing FAR § 52.230-2 and its predecessor, FAR § 52.230-3). The CAS statute and regulations are incorporated in all CAS covered contracts by operation of law and by the CAS contract clause. *See* FAR § 52.230-2(a) (attached hereto at Exhibit 10 (App. at 035-036)).

In his final decision, the DCE stated that Lockheed's method of allocating CRAY computer costs did not comply with CAS because Lockheed's method did not allocate CRAY costs based on the operating companies' actual usage. PFOF ¶ 21; Exhibit 7 (App. at 026-027A). Mr. Becker's predecessor, James Rose, had rejected this position in a letter dated November 22, 1994. PFOF ¶ 13; Exhibit 3 (App. at 018-019). In his decision, Mr. Rose stated "[w]hile resource consumption is one method of allocation, it is not the only method. The ACO's position is that CAS 418 allows for other methods of allocation as long as the allocation

is equitable and results in a distribution of costs that is fair and reasonable." *Id.* Lockheed's resource commitment method approved by DCE Rose is the same resource commitment method Lockheed used for allocation of CRAY computer costs. PFOF ¶ 14.

Both Lockheed's and the Government's methods of allocating the CRAY computer costs are acceptable under CAS, but the Court need not decide whether Lockheed's allocation method complied with CAS.

While continuing to maintain that its method complied with CAS, Lockheed agreed to change its cost accounting practice for CRAY computer costs from its "resource commitment method" to the Government's "actual usage method." PFOF ¶ 19. Lockheed told the Government how the adjustments resulting from the change in allocation methods would be handled. *Id.*; Exhibit 6 (App. at 025). Consistent with this agreement to change its cost accounting practice, Lockheed reallocated the hourly CRAY computer costs for calendar years 1994 and 1995 using the Government's actual usage method. PFOF ¶ 20. Further implementing this agreement, Lockheed used the Government's method to allocate the loss on the disposition of the CRAY computers to LMSC and LASC according to each company's actual usage of the CRAY computers. *Id.* ¶¶ 10, 20. This agreed to change in Lockheed's cost accounting practice triggers section (a)(4)(iii) of the CAS clause under which Lockheed is entitled to an equitable adjustment.

Section (a)(4)(iii) provides: "When the parties agree to a change to a cost accounting practice," they shall "negotiate an equitable adjustment as provided in the Changes clause of this contract." FAR § 52.230-2(a)(4)(iii) (attached hereto at Exhibit 10 (App. at 035-036)). Because Lockheed and the Government agreed to a change in Lockheed's cost accounting practice for allocating the CRAY computer costs, the CAS clause requires the parties to negotiate an

equitable adjustment for the cost impact resulting from that change. *See id.* As set forth in the CAS clause, the amount of the cost impact is calculated under the Changes clause contained in Lockheed Martin or Lockheed Corporation's contracts with the Government. *Id.* The Changes clauses contained in Lockheed's fixed price and flexibly-priced contracts are FAR § 52.243-1 and FAR § 52.243-2, respectively. (Attached hereto at Exhibit 10 (App. at 040-045).)

Lockheed is limiting the amount of the equitable adjustment it seeks to recover in this case to the allocable portion of Lockheed's loss on the disposition of the CRAY computers. For the reasons stated above, Lockheed is entitled to an equitable adjustment for the allocable portion of Lockheed's loss on the disposition of the CRAY computers.

## CONCLUSION

For the foregoing reasons, Lockheed respectfully requests that the Court grant this Motion (1) dismissing the Government's counterclaim with prejudice, and (2) deciding that Lockheed is entitled to recover its loss on the disposition of the CRAY computers that is allocable to government contracts, with the amount of recovery to be resolved by the parties or in further proceedings.

Respectfully submitted,

s/Clarence T. Kipps

Clarence T. Kipps, Jr., Esq.
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W., Suite 900
Washington, D.C. 20005
Tel: (202) 626-5800
Fax: (202) 628-0858
Attorney of Record
Lockheed Martin Corporation

Of Counsel:

Angela B. Styles, Esq.
Kimberly R. Heifetz, Esq.
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W., Suite 900
Washington, D.C. 20005
Tel: (202) 626-5800
Fax: (202) 628-0858

David M. Christenson, Esq.
LOCKHEED MARTIN CORPORATION
6801 Rockledge Drive
Bethesda, Maryland 20817
Tel: (301) 897-6127
Fax: (301) 897-6333

Dated: September 9, 2004