IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LOCKHEED MARTIN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00-129C |
| | ) | (Judge Allegra) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(1) of the Rules of the United States Court of Federal Claims, Lockheed Martin Corporation ("Lockheed" or "Plaintiff") respectfully submits its Proposed Findings of Uncontroverted Fact in support of its Motion for Summary Judgment.

1. Lockheed Corporation formed the Lockheed Information Technology Company ("LITC") as a wholly owned subsidiary operating in Denver, Colorado in 1992. Declaration of James M. Blue ("Blue Decl.") ¶ 4.[1] Lockheed centralized most data processing services and information technology resources at LITC, including CRAY computer resources, for the purposes of achieving significant Corporate-wide cost savings. *Id.* Following the merger of Lockheed Corporation and Martin Marietta Corporation in 1995, LITC operations were transitioned to EIS, a Lockheed Martin IT organization. *Id.*

[1] Mr. Blue's Declaration is at pages 001-007, Exhibit A, of the Appendix to Plaintiff's Motion for Summary Judgment.

2. To support company forecasted demands, LITC acquired two CRAY super computers, with an investment value of approximately $18.2 million. Blue Decl. ¶ 5.

3. The predominant users of the CRAY computers were expected to be Lockheed Missiles and Space ("LMSC") in Sunnyvale, California; Lockheed Aeronautical Systems Company ("LASC") in Marietta, Georgia; and Lockheed Advanced Development Company ("LADC" or "Skunk Works") in Palmdale, California. Blue Decl. ¶ 6.

4. In 1994-1995, LITC supplied CRAY computer resources to LMSC and LASC. Blue Decl. ¶ 7. At LMSC, the CRAY computers were used exclusively in the performance of government contracts, and at LASC they were used almost exclusively in the performance of government contracts or on Independent Research and Development ("IR&D") work performed in support of government contracts. *Id.*

5. In accordance with CAS 418, 48 C.F.R. § 9904.418, Lockheed chose one of several methods it considered to be acceptable for the allocation of CRAY computer costs in the CRAY Computing Cost Pool. Blue Decl. ¶ 8. Lockheed (1) supplied CRAY computer resources to operating companies; (2) accumulated LITC costs for CRAY computer hardware, maintenance, software, labor support, facility, administrative, service and telecommunications in the "CRAY Computing Cost Pool"; and (3) for the years 1994 and 1995, allocated costs in LITC's CRAY Computing Cost Pool to operating companies by charging a fixed cost for CRAY computer resources to each operating company based on the operating company's annual forecasted hours for CRAY computer resources ["resource commitment method" or "Lockheed's method"]. *Id.* The Government's method required allocation of CRAY costs to each operating company based on the hours actually used by the operating company ["actual usage method" or "Government's method"]. *Id.*

6. In return for their resource commitments, LITC guaranteed that the operating companies would receive their committed level of processing capacity on LITC's CRAY computers. Blue Decl. ¶ 9.

7. Because the operating companies paid a fixed cost for the availability of a certain guaranteed level of processing on LITC's CRAY computers, Lockheed considered the fixed cost to be an appropriate "resource consumption measure" for allocation under CAS 418. Blue Decl. ¶ 10.

8. Due in part to the operating companies' underutilization of the CRAY computers in 1994 and 1995, Lockheed disposed of the two CRAY computers in 1995. Blue Decl. ¶ 11. The Government recommended and concurred with this action. *Id.*; Exhibit 4 (Appendix to Plaintiff's Motion for Summary Judgment ("App.") at 020-022)).

9. Because Lockheed disposed of the CRAY computers before the end of their normal service life, their disposition resulted in an unanticipated loss to Lockheed of approximately $6.8 million. Blue Decl. ¶ 12. The CRAY computers are tangible capital assets. *Id.*

10. Lockheed used the Government's actual usage method to allocate Lockheed's loss on the disposition of the CRAY computers to the two operating companies that used the computers. Blue Decl. ¶ 13.

11. On September 9, 1994, the Defense Contract Audit Agency ("DCAA") issued Audit Report Number 3121-94J19200016, in which it asserted "LITC is in non-compliance with CAS 418 . . . . The area of non-compliance is LITC's policies and practices regarding the allocation of CRAY computer costs to the benefiting Lockheed divisions." Blue Decl. ¶ 14; Exhibit 1 (App. at 008-012). DCAA believed that Lockheed's method did not comply with CAS

because Lockheed's allocation of CRAY computer costs was not based on "resource consumption." *Id.*

12. On September 19, 1994, DCAA issued Audit Report Number 3121-94J19200015, in which it expressed the same opinion concerning Lockheed's allocation of IBM computer costs: that Lockheed's method of allocating computer costs based on a segment's "commitment usage" or "usage commitment" rather than on "resource consumption" did not comply with CAS. Blue Decl. ¶ 15; Exhibit 2 (App. at 013-017).

13. By letter dated November 22, 1994, Defense Corporate Executive ("DCE")[2] James Rose rejected DCAA's opinion, reasoning that "[w]hile resource consumption is one method of allocation, it is not the only method. The ACO's position is that CAS 418 allows for other methods of allocation as long as the allocation is equitable and results in a distribution of costs that is fair and reasonable." Blue Decl. ¶ 16; Exhibit 3 (App. at 018-019). Mr. Rose noted DCAA's statement that the differences in cost between using Lockheed's method and the Government's method "were not significant" before determining that "LITC's current practice of allocating costs meets the intent of [the] CAS 418 requirement." *Id.*

14. Lockheed's resource commitment method approved by DCE Rose is the same resource commitment method Lockheed used for allocation of CRAY computer costs. Blue Decl. ¶ 17.

15. LITC, Lockheed Corporation and the successor company, Lockheed Martin, understood Mr. Rose's November 22, 1994 letter to determine that Lockheed's method for allocating CRAY computer costs complied with CAS and relied on Mr. Rose's letter as a resolution of the CAS 418 issue. Blue Decl. ¶ 18. In it Mr. Rose stated: "LITC's current

practice of allocating cost meets the intent of [the] CAS 418 requirement. Therefore, with this letter the issue of noncompliance with CAS 418 is resolved and disposed of with no additional action required." *Id.*; Exhibit 3 (App. at 018-019).

16. Subsequently, when Lockheed Corporation merged with Martin Marietta Corporation in March 1995, the former Lockheed Corporation Corporate headquarters were moved to Bethesda, Maryland, and Louis Becker replaced James Rose as the DCE for Lockheed Martin. Blue Decl. ¶ 19.

17. On May 31, 1996, a year and one half after Mr. Rose issued the November 22, 1994 letter finding Lockheed's method compliant with CAS, Mr. Becker reversed course and determined that Lockheed's method did not comply with CAS, citing the reasons previously rejected by DCE Rose. Blue Decl. ¶ 20; Exhibit 5 (App. at 023-024).

18. Because Lockheed considered its method of allocating CRAY computer costs CAS compliant, Lockheed was initially opposed to changing its method of allocating these costs, as demanded by Mr. Becker. Blue Decl. ¶ 21. Nevertheless, following the DCE's resurrection of this issue, the parties attempted to settle this matter. *Id.*

19. While continuing to maintain that its method complied with CAS, Lockheed agreed with the DCE and his representative to change Lockheed's cost accounting practice for CRAY computer costs to the Government's actual usage method. Blue Decl. ¶ 22. By letter dated December 19, 1997, Lockheed informed the DCE's representative how it would handle the adjustments resulting from the change in allocation method. *Id.*; Exhibit 6 (App. at 025).

20. Lockheed implemented its agreement to change its cost accounting practice notwithstanding the dispute between the DCE and Lockheed on the cost impact of the change by

---

[2] In Mr. Rose's November 22 letter, the term "DCE" is synonymous with the term "ACO," or

using the Government's method to (1) reallocate the CRAY hourly costs for calendar years 1994 and 1995, and (2) allocate the loss on the disposition of the CRAY computers to LMSC and LASC, according to each company's actual usage of the CRAY computers. Blue Decl. ¶¶ 13, 23.

21. The DCE and his representative did not like the impact on government contracts of Lockheed's reallocation of CRAY computer costs for calendar years 1994 and 1995 using the Government's method. Blue Decl. ¶ 24. On March 16, 1999, the DCE issued a final decision determining that Lockheed's method for allocating CRAY computer resources was not compliant with CAS and asserted a claim against Lockheed for $2,669,534 plus interest. *Id.*; Exhibit 7 (App. at 026-027A).

22. Lockheed filed the instant action in this Court asserting that either (1) Lockheed's method complied with CAS, or (2) that the Government incorrectly computed the amount allocable to government contracts under CAS using the Government's method. *See* Complaint.

23. The total amount of CRAY costs allocable to government contracts using the Government's method is approximately $30.27 million, of which $23.46 million is for CRAY hourly costs, and approximately $6.8 million is for Lockheed's loss on the disposition of the CRAY computers. Blue Decl. ¶ 25. Of these costs, the Government has paid Lockheed only $20.79 million, thereby leaving a gross underpayment of approximately $9.48 million. *Id.*

24. Allocating the allowable CRAY computer costs using the Government's actual usage method reveals that the Government did not pay any "increased costs." Blue Decl. ¶ 26.

---

"Administrative Contracting Officer." Blue Decl. ¶ 16 n.1; Exhibit 3 (App. at 018-019).

25. The CAS clause, which has appeared at sections 52.230-3 and 52.230-2 of the Federal Acquisition Regulation, has been included or incorporated into Lockheed Martin or Lockheed Corporation's contracts with the Government. Blue Decl. ¶ 27; Exhibit 10 (App. at 035-039).

Respectfully submitted,

s/Clarence T. Kipps

Clarence T. Kipps, Jr., Esq.
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W., Suite 900
Washington, D.C. 20005-5701
Tel: (202) 626-5800
Fax: (202) 628-0858
Attorney of Record
Lockheed Martin Corporation

Of Counsel:

Angela B. Styles, Esq.
Kimberly R. Heifetz, Esq.
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W., Suite 900
Washington, D.C. 20005
Tel: (202) 626-5800
Fax: (202) 628-0858

David M. Christenson, Esq.
LOCKHEED MARTIN CORPORATION
6801 Rockledge Drive
Bethesda, Maryland 20817
Tel: (301) 897-6127
Fax: (301) 897-6333

Dated: September 9, 2004