IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LOCKHEED MARTIN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00-129C |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S
PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56(h)(2), defendant, the United States, responds as follows to plaintiff's proposed findings of uncontroverted fact in support of its motion for summary judgment.

GENERAL DENIAL

1. Most of Lockheed's proposed findings of uncontroverted fact rely solely upon the declaration of James Blue. See plaintiff's proposed findings 1-7, 9-10, 14, 16, 18, 20, 23-24. Mr. Blue's declaration, however, demonstrates that he has no personal knowledge as to any of the facts alleged, which is an explicit prerequisite to acceptance of a declaration. See RCFC 56(e) (declarations "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein").

Courts routinely strike declarations (or portions thereof) that are not based upon the declarant's personal knowledge. See Hollander v. American Cyanamid Co., 172 F.3d 192, 197 (2d Cir. 1999) (affirming trial court's decision to strike affidavit that was "riddled with inadmissible hearsay, conclusory statements and arguments, and information clearly not made on the affiant's personal knowledge, and more resemble[d] an adversarial memorandum than a bona

fide affidavit" (internal quotations omitted)); Stagman, 176 F.3d at 995, 997, 1002 (statements outside affiant's personal knowledge inadequate basis for summary judgment); Schacht v. Wisconsin Department of Corrections, 175 F.3d 497, 504 (7th Cir. 1999) (affidavits failed to demonstrate personal knowledge and thus were not competent evidence); United States v. Private Sanitation Industry Association, 44 F.3d 1082, 1084 (2d Cir. 1995) (same). Accordingly, the Government denies plaintiff's proposed findings of fact to the extent that they rely upon the declaration of Mr. Blue.

2. Several of Lockheed's proposed findings of uncontroverted fact allegedly support Lockheed's claims related to an allocation of costs associated with the disposition of CRAY computers. See plaintiff's proposed findings 8-10, 20, 23-24. Lockheed did not raise these claims in its complaint, in its reply to the Government's counterclaim, or in the joint preliminary status report. Because Lockheed did not previously raise these issues, the Government did not propound any discovery as to the facts underlying the claims or the merits of the claims. In these circumstances, and given the obvious prejudice to the Government, the Court should strike the claims relating to the disposition of the CRAY computers, and any facts asserted in support thereof, which Lockheed avers in its motion but did not plead in its complaint. See Crest A Apartments Ltd. II v. United States, 52 Fed. Cl. 607, 613 (Fed. Cl. 2002) (and cases cited therein).

RESPONSES

1. Lockheed Corporation formed the Lockheed Information Technology Company ("LITC") as a wholly owned subsidiary operating in Denver, Colorado in 1992. Declaration of James M. Blue ("Blue Decl.") ¶ 4. Lockheed centralized most data processing services and

information technology resources at LITC, including CRAY computer resources, for the purposes of achieving significant Corporate-wide cost savings. *Id*. Following the merger of Lockheed Corporation and Martin Marietta Corporation in 1995, LITC operations were transitioned to EIS, a Lockheed Martin IT organization. *Id*.

Response:

Admits.

2. To support company forecasted demands, LITC acquired two CRAY super computers, with an investment value of approximately $18.2 million. Blue Decl. ¶ 5.

Response:

The Government denies this proposed finding. The declaration of Mr. Blue, upon which Lockheed relies, demonstrates that Mr. Blue does not have personal knowledge of the acquisition of the CRAY computers by LITC as required by Rule 56(e), and Lockheed has failed to provide any documentary evidence of this cost. In addition, the acquisition cost of the CRAY computers is not relevant to the issues before the Court, and no discovery has been propounded regarding Lockheed's acquisition of its CRAY computers.

3. The predominant users of the CRAY computers were expected to be Lockheed Missiles and Space ("LMSC") in Sunnyvale, California; Lockheed Aeronautical Systems Company ("LASC") in Marietta, Georgia; and Lockheed Advanced Development Company ("LADC" or "Skunk Works") in Palmdale, California. Blue Decl. ¶ 6.

Response:

The Government denies this proposed finding. The declaration of Mr. Blue, upon which Lockheed relies, demonstrates that Mr. Blue does not have personal knowledge of the acquisition of the CRAY computers by LITC as required by Rule 56(e), and Lockheed has failed to provide any documentary evidence of the business plans of LITC. In addition, the expectations of Lockheed are not relevant to the issues before the Court, and no discovery has been propounded regarding Lockheed's acquisition of its CRAY computers.

4. In 1994-1995, LITC supplied CRAY computer resources to LMSC and LASC. Blue Decl. ¶ 7. At LMSC, the CRAY computers were used exclusively in the performance of government contracts, and at LASC they were used almost exclusively in the performance of government contracts or on Independent Research and Development ("IR&D") work performed in support of government contracts. *Id*.

Response:

Admits that LITC supplied CRAY computer resources to LMSC and LASC in 1994 and 1995. The Government denies the proposed finding as to the usage of the CRAY computers at LMSC and LASC because the declaration of Mr. Blue, upon which Lockheed relies, demonstrates that Mr. Blue does not have personal knowledge of the actual usage of the CRAY computers in 1994 and 1995 as required by Rule 56(e), and Lockheed has failed to provide any documentary evidence of such usage.

5. In accordance with CAS 418, 48 C.F.R. § 9904.418, Lockheed chose one of several methods it considered to be acceptable for the allocation of CRAY computer costs in the

CRAY Computing Cost Pool. Blue Decl. ¶ 8. Lockheed (1) supplied CRAY computer resources to operating companies; (2) accumulated LITC costs for CRAY computer hardware, maintenance, software, labor support, facility, administrative, service and telecommunications in the "CRAY Computing Cost Pool"; and (3) for the years 1994 and 1995, allocated costs in LITC's CRAY Computing Cost Pool to operating companies by charging a fixed cost for CRAY computer resources to each operating company based on the operating company's annual forecasted hours for CRAY computer resources ["resource commitment method" or "Lockheed's method"]. *Id*. The Government's method required allocation of CRAY costs to each operating company based on the hours actually used by the operating company ["actual usage method" or "Government's method"]. *Id*.

Response:

Denies that Lockheed's method of allocating its CRAY computer costs is in accordance with CAS 418, 48 C.F.R. § 9904.418. Further denies that Lockheed's allocation method relied upon "the operating company's annual forecasted hours for CRAY computer resources." See defendant's proposed findings of uncontroverted fact, ¶¶ 23-26. Further, the Government denies the proposed finding because the declaration of Mr. Blue, upon which Lockheed relies, demonstrates that Mr. Blue does not have personal knowledge method by which LITC allocated its CRAY computer costs in 1994 and 1995.

6. In return for their resource commitments, LITC guaranteed that the operating companies would receive their committed level of processing capacity on LITC's CRAY computers. Blue Decl. ¶ 9.

Response:

The Government denies this proposed finding because the declaration of Mr. Blue, upon which Lockheed relies, demonstrates that Mr. Blue does not have personal knowledge of any "guarantees" that LITC allegedly made to the operating companies, and Lockheed has failed to provide any documentary evidence of such guarantees.

7. Because the operating companies paid a fixed cost for the availability of a certain guaranteed level of processing on LITC's CRAY computers, Lockheed considered the fixed cost to be an appropriate "resource consumption measure" for allocation under CAS 418. Blue Decl. ¶ 10.

Response:

The Government denies this proposed finding because the declaration of Mr. Blue, upon which Lockheed relies, demonstrates that Mr. Blue does not have personal knowledge of Lockheed's intent to comply with CAS with respect to the allocation of the CRAY computer costs. Further, Lockheed's intent is irrelevant to the issues before the Court.

8. Due in part to the operating companies' underutilization of the CRAY computers in 1994 and 1995, Lockheed disposed of the two CRAY computers in 1995. Blue Decl. ¶ 11. The Government recommended and concurred with this action. *Id.*; Exhibit 4 (Appendix to Plaintiff's Motion for Summary Judgment ("App.") at 020-022)).

Response:

Denies that Lockheed disposed of the two CRAY computers in 1995. Neither document upon which Lockheed relies – the declaration of Mr. Blue and the document provided by the Defense Contract Audit Agency ("DCAA"), dated September 29, 1995 – evidences that Lockheed disposed of the two CRAY computers in 1995. In addition, a contemporaneous Lockheed document states that the "CRAYs were removed from service in 1996," Def. App. 40, and a DCAA audit report dated April 5, 1996, discussed the possible replacement of LITC's CRAY computers, Def. App. 160-63, thus, demonstrating that the CRAY computers were not disposed in 1995. Further, to the extent this proposed finding relates to a claim for costs associated with the disposition of the CRAY computers, it should be stricken because no claim for the recovery of such costs was presented to the contracting officer or raised in this proceeding. See defendant's opposition to plaintiff's motion for summary judgment at 19-20.

9. Because Lockheed disposed of the CRAY computers before the end of their normal service life, their disposition resulted in an unanticipated loss to Lockheed of approximately $6.8 million. Blue Decl. ¶ 12. The CRAY computers are tangible capital assets. *Id*.

Response:

The Government denies this proposed finding. The declaration of Mr. Blue, upon which Lockheed relies, demonstrates that Mr. Blue does not have personal knowledge of the disposition of the CRAY computers by LITC as required by Rule 56(e), and Lockheed has failed to provide any documentary evidence of this alleged loss. In addition, the disposition of the CRAY computers by Lockheed is not relevant to the issues before the Court, and no discovery has been

propounded regarding Lockheed's disposition of its CRAY computers. Finally, to the extent this proposed finding relates to a claim for costs associated with the disposition of the CRAY computers, it should be stricken because no claim for the recovery of such costs was presented to the contracting officer or raised in this proceeding. See defendant's opposition to plaintiff's motion for summary judgment at 19-20.

10. Lockheed used the Government's actual usage method to allocate Lockheed's loss on the disposition of the CRAY computers to the two operating companies that used the computers. Blue Decl. ¶ 13.

Response:

The Government denies this proposed finding. The declaration of Mr. Blue, upon which Lockheed relies, demonstrates that Mr. Blue does not have personal knowledge of the disposition of the CRAY computers by LITC as required by Rule 56(e). In addition, Lockheed's allocation of costs associated with its disposition of the CRAY computers is not relevant to the issues before the Court, and no discovery has been propounded regarding Lockheed's disposition of its CRAY computers or the allocation of the alleged losses. Further, to the extent this proposed finding relates to a claim for costs associated with the disposition of the CRAY computers, it should be stricken because no claim for the recovery of such costs was presented to the contracting officer or raised in this proceeding. See defendant's opposition to plaintiff's motion for summary judgment at 19-20.

11. On September 9, 1994, the Defense Contract Audit Agency ("DCAA") issued Audit Report Number 3121-94J19200016, in which it asserted "LITC is in non-compliance with CAS 418 . . . . The area of non-compliance is LITC's policies and practices regarding the allocation of CRAY computer costs to the benefitting Lockheed divisions." Blue Decl. ¶ 14; Exhibit 1 (App. at 008-012). DCAA believed that Lockheed's method did not comply with CAS because Lockheed's allocation of CRAY computer costs was not based on "resource consumption." *Id.*

Response:

Defendant denies the characterization of the audit report, which states that "[t]he costs allocation should be based on actual resource consumption (CPU's and/or wallclock hours) by that division." Pl. App. 11. Otherwise, admits.

12. On September 19, 1994, DCAA issued Audit Report Number 3121-94J19200015, in which it expressed the same opinion concerning Lockheed's allocation of IBM computer costs: that Lockheed's method of allocating computer costs based on a segment's "commitment usage" or "usage commitment" rather than on "resource consumption" did not comply with CAS. Blue Decl. ¶ 15; Exhibit 2 (App. at 013-017).

Response:

Defendant denies the characterization of the DCAA audit report, which describes Lockheed's methodology as "using a preestablished rate, based on the forecasted LITC costs and the Lockheed segment commitment usage." Pl. App. 15. Otherwise, admits.

13. By letter dated November 22, 1994, Defense Corporate Executive ("DCE") James Rose rejected DCAA's opinion, reasoning that "[w]hile resource consumption is one method of allocation, it is not the only method. The ACO's position is that CAS 418 allows for other methods of allocation as long as the allocation is equitable and results in a distribution of costs that is fair and reasonable." Blue Decl. ¶ 16; Exhibit 3 (App. at 018-019). Mr. Rose noted DCAA's statement that the differences in cost between using Lockheed's method and the Government's method "were not significant" before determining that "LITC's current practice of allocating costs meets the intent of [the] CAS 418 requirement." *Id*.

Response:

Denies the implication that Mr. Rose rejected the DCAA's opinion in its entirety, inasmuch as he relied upon DCAA's opinion that the differences of costs based on the LITC cost allocation practice versus allocation of the costs based on recorded usage were not significant. Further, the Government avers that Mr. Rose's letter specifically referenced audit report no. 3121-94J19200015, which addressed the allocation of IBM computer costs; it did not address the allocation of CRAY computer costs. Thus, the DCAA found that the difference between the allocation of IBM costs "based on LITC cost allocation practices versus allocation of the costs based on recorded usage . . . were not significant." Pl. App. 15. However, in auditing Lockheed's allocation of CRAY computer costs, the DCAA found the "[t]he costs allocated using the beginning of the year usage commitment versus the costs allocated based on actual usage are significantly different for the various Lockheed divisions." Pl. App. 10.

14. Lockheed's resource commitment method approved by DCE Rose is the same resource commitment method Lockheed used for allocation of CRAY computer costs. Blue Decl. ¶ 17.

Response:

Denies. DCAA audit report no. 3121-94J19200015, addressing the allocation of IBM computer costs, specifically notes that Lockheed's "billing rate is adjusted if the LITC total incurred costs vary from those budgeted by 10 percent or if an individual division's consumption exceeds 10 percent of the level committed to at the beginning of the year." Pl. App. 15. By comparison, no adjustment was made to the billing rate for CRAY computer costs if a division's consumption varied from the level committed. Pl. App. 10. In addition, the Government denies the proposed finding because the declaration of Mr. Blue, upon which Lockheed relies, demonstrates that Mr. Blue does not have personal knowledge of the allocation of computer costs by LITC as required by Rule 56(e).

15. LITC, Lockheed Corporation and the successor company, Lockheed Martin, understood Mr. Rose's November 22, 1994 letter to determine that Lockheed's method for allocating CRAY computer costs complied with CAS and relied on Mr. Rose's letter as a resolution of the CAS 418 issue. Blue Decl. ¶ 18. In it Mr. Rose stated: "LITC's current practice of allocating cost meets the intent of [the] CAS 418 requirement. Therefore, with this letter the issue of noncompliance with CAS 418 is resolved and disposed of with no additional action required." *Id.*; Exhibit 3 (App. at 018-019).

Response:

Lockheed's interpretation of Mr. Rose's letter is irrelevant. The issue before the Court is whether Lockheed's allocation of costs was in compliance with CAS. Further, as previously noted in our response to proposed finding 13, Mr. Rose's letter specifically addressed audit report no. 3121-94J19200015, relating to the allocation of IBM computer costs. It did not address audit report no. 3121-94J19200016, relating to the allocation of CRAY supercomputer costs. In addition, the Government denies the proposed finding because the declaration of Mr. Blue, upon which Lockheed relies, demonstrates that Mr. Blue does not have personal knowledge of Lockheed's "interpretation" of Mr. Rose's letter as required by Rule 56(e).

16. Subsequently, when Lockheed Corporation merged with Martin Marietta Corporation in March 1995, the former Lockheed Corporation Corporate headquarters were moved to Bethesda, Maryland, and Louis Becker replaced James Rose as the DCE for Lockheed Martin. Blue Decl. ¶ 19.

Response:

Denies. James Rose was the DCE for Lockheed Corporation. Louis Becker was the DCE for Martin Marietta Corporation. Upon Lockheed's merger with Martin Marietta Corporation, Louis Becker was the DCE for Lockheed Martin Corporation.

17. On May 31, 1996, a year and one half after Mr. Rose issued the November 22, 1994 letter finding Lockheed's method compliant with CAS, Mr. Becker reversed course and determined that Lockheed's method did not comply with CAS, citing the reasons previously rejected by DCE Rose. Blue Decl. ¶ 20; Exhibit 5 (App. at 023-024).

Response:

Denies. Mr. Becker did not "reverse course." See response to plaintiff's proposed findings of fact numbers 13-15.

18. Because Lockheed considered its method of allocating CRAY computer costs CAS compliant, Lockheed was initially opposed to changing its method of allocating these costs, as demanded by Mr. Becker. Blue Decl. ¶ 21. Nevertheless, following the DCE's resurrection of this issue, the parties attempted to settle this matter. *Id*.

Response:

Admits.

19. While continuing to maintain that its method complied with CAS, Lockheed agreed with the DCE and his representative to change Lockheed's cost accounting practice for CRAY computer costs to the Government's actual usage method. Blue Decl. ¶ 22. By letter dated December 19, 1997, Lockheed informed the DCE's representative how it would handle the adjustments resulting from the change in allocation method. *Id*.; Exhibit 6 (App. at 025).

Response:

Denies that Lockheed ever agreed with the DCE and further denies that Lockheed changed its cost accounting practices to the "Government's actual usage method." Plaintiff's exhibit 6, upon which Lockheed relies, does not evidence an agreement. It states that it will employ "repositioning policies," "if an agreement is reached." No agreement was reached, and Lockheed has not provided any evidence that the Government agreed with Lockheed's proposal

that the repositioning policies were applicable to the cost impact of the non-compliance with CAS. In addition, the Government denies the proposed finding because the declaration of Mr. Blue, upon which Lockheed relies, demonstrates that Mr. Blue does not have personal knowledge of the discussions between Lockheed and the Government about this CAS noncompliance issue as required by Rule 56(e).

20. Lockheed implemented its agreement to change its cost accounting practice notwithstanding the dispute between the DCE and Lockheed on the cost impact of the change by using the Government's method to (1) reallocate the CRAY hourly costs for calendar years 1994 and 1995, and (2) allocate the loss on the disposition of the CRAY computers to LMSC and LASC, according to each company's actual usage of the CRAY computers. Blue Decl. ¶¶ 13, 23.

Response:

Denies that there was an agreement or that Lockheed reallocated its costs. The declaration of Mr. Blue, upon which Lockheed relies, demonstrates that Mr. Blue does not have personal of any alleged agreement or of any alleged reallocation of costs by Lockheed, as required by Rule 56(e). Further, to the extent this proposed finding relates to a claim for costs associated with the disposition of the CRAY computers, it should be stricken because no claim for the recovery of such costs was presented to the contracting officer or raised in this proceeding. See defendant's opposition to plaintiff's motion for summary judgment at 19-20.

21. The DCE and his representative did not like the impact on government contracts of Lockheed's reallocation of CRAY computer costs for calendar years 1994 and 1995 using the

Government's method. Blue Decl. ¶ 24. On March 16, 1999, the DCE issued a final decision determining that Lockheed's method for allocating CRAY computer resources was not compliant with CAS and asserted a claim against Lockheed for $2,669,534 plus interest. *Id.*; Exhibit 7 (App. at 026-027A).

Response:

Denies that Lockheed ever proposed a reallocation of costs based upon actual usage. See response to proposed finding 19. Admits that the DCE issued a final decision on March 16, 1999.

22. Lockheed filed the instant action in this Court asserting that either (1) Lockheed's method complied with CAS, or (2) that the Government incorrectly computed the amount allocable to government contracts under CAS using the Government's method. *See* Complaint.

Response:

Denies. Lockheed asserted, in the alternative, that its method complied with CAS or that the Government incorrectly determined the amount of increased costs resulting from Lockheed's noncompliance in 1994 and 1995. See Complaint, ¶¶ 28, 30.

23. The total amount of CRAY costs allocable to government contracts using the Government's method is approximately $30.27 million, of which $23.46 million is for CRAY hourly costs, and approximately $6.8 million is for Lockheed's loss on the disposition of the CRAY computers. Blue Decl. ¶ 25. Of these costs, the Government has paid Lockheed only $20.79 million, thereby leaving a gross underpayment of approximately $9.48 million. *Id.*

Response:

The Government denies the proposed finding. The declaration of Mr. Blue, upon which Lockheed relies, demonstrates that Mr. Blue does not have personal knowledge of costs that may be allocable to Government contracts, the usage of the CRAY computers, or the disposition of the CRAY computers by LITC as required by Rule 56(e). Lockheed has provided no contemporaneous, documentary evidence supporting these allegations. Further, to the extent this proposed finding relates to a claim for costs associated with the disposition of the CRAY computers, it should be stricken because no claim for the recovery of such costs was presented to the contracting officer or raised in this proceeding. See defendant's opposition to plaintiff's motion for summary judgment at 19-20.

24. Allocating the allowable CRAY computer costs using the Government's actual usage method reveals that the Government did not pay any "increased costs." Blue Decl. ¶ 26.

Response:

The Government denies the proposed finding. The declaration of Mr. Blue, upon which Lockheed relies, demonstrates that Mr. Blue does not have personal knowledge of costs that may be allocable to Government contracts, the usage of the CRAY computers, or the disposition of the CRAY computers by LITC as required by Rule 56(e). Lockheed has provided no contemporaneous, documentary evidence supporting these allegations. Further, to the extent this proposed finding relates to a claim for costs associated with the disposition of the CRAY computers, it should be stricken because no claim for the recovery of such costs was presented to

the contracting officer or raised in this proceeding. See defendant's opposition to plaintiff's motion for summary judgment at 19-20.

25. The CAS clause, which has appeared at sections 52.230-3 and 52.230-2 of the Federal Acquisition Regulation, has been included or incorporated into Lockheed Martin or Lockheed Corporation's contracts with the Government. Blue Decl. ¶ 27; Exhibit 10 (App. at 035-039).

Response:

Admits.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Doris S. Finnerman
DORIS S. FINNERMAN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-0300\
Fax: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:

Gregory T. Allen
Raymond J. M. Wong
Office of the General Counsel
Defense Contract Management Agency
Ft. Belvoir, VA 22060

October 22, 2004