Audit Report No.
3121-94J19200016
CHRON NO. 1001

9 September 1994

REPORT ON CAS 418 NONCOMPLIANCE
ALLOCATION OF DIRECT AND INDIRECT COSTS
LOCKHEED INFORMATION TECHNOLOGY COMPANY
DENVER, COLORADO

Under the provisions of Title 32, Code of Federal Regulations, Part 290.26(b)(2), any Freedom of Information Act requests for audit reports received by DCAA will be referred to the cognizant contracting agency for determination as to releasability and a direct response to the requester.

Contractor information contained in this audit report may be proprietary. The restrictions of 18 U.S.C. 1905 should be considered before this information is released to the public.

This report may not be released to any Federal agency outside the Department of Defense without the approval of Headquarters, DCAA, except to an agency requesting the report in negotiating or administering its contract.

DENVER BRANCH OFFICE
DEFENSE CONTRACT AUDIT AGENCY
LAKEWOOD, COLORADO

FOR OFFICIAL USE ONLY

CENTRAL REGION
DENVER BRANCH OFFICE
DEFENSE CONTRACT AUDIT AGENCY
7112 WEST JEFFERSON AVENUE SUITE 200
LAKEWOOD CO 80235-2327

IN REPLY REFER TO

Audit Report No. 3121-94J19200016 9 September 1994

SUBJECT: Report on CAS 418 Noncompliance
Allocation of Direct and Indirect Costs
Lockheed Information Technology Company
Denver, Colorado

TO: Mr. Richard Dodd
Resident Auditor, DCAA
Resident Office - Lockheed Corporation
4500 Park Granada Boulevard
Calabasas, California 91399-0357

1. Purpose and Scope of Audit

a. Our continuous audit of Lockheed Information Systems Company's (LITC) cost accounting practices during performance of contracts includes evaluating whether the LITC has complied with the CAS Board's rules, regulations, and standards, and FAR Part 31. The purpose of the audit was to determine if LITC has complied with the requirements of CAS 418. LITC is responsible for compliance with the requirements of this standard. Our responsibility is to express an opinion on compliance with those requirements based on our audit.

b. The audit was conducted in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the contractors accounting practices comply with the requirements referred to above. An audit includes examining, on a test basis, evidence about the contractors compliance with those requirements. We believe that our audit provides a reasonable basis for our opinion.

2. Summary of Audit Results

a. In our opinion, LITC is in noncompliance with CAS 418. This report is limited to the cited instances of noncompliance. Accordingly, we express no opinion on whether other practices are proper, approved, or agreed to for pricing proposals, accumulating costs, or reporting contractor performance data.



PRINTED ON RECYCLED PAPER

b. The results of audit were discussed with Ms. Jan Wade, LITC Supervisor of Administration, at our exit conference on 16 August 1994. The LITC written response is included as an attachment to this report.

c. Information in this report should not be used without first discussing its applicability with the auditor.

3. Statement of Conditions and Recommendations

Our audit disclosed that LITC's failure to comply with a cost accounting standard has resulted or may result in increased cost paid by the government. The area of non-compliance is LITC's policies and practices regarding the allocation of CRAY computer costs to the benefiting Lockheed divisions.

(a) Condition:

LITC has two CRAY computers whose annual costs are estimated at $10,057,189 for 1994. These costs are allocated to the Lockheed Missiles and Space Company (LMSC), Advanced Development Company (LADC), and Aeronautical Systems Company (LASC) based on a beginning of year usage commitment by these divisions for wall clock hours and shared Computer Processing Units (CPU). The costs allocated using the beginning of the year usage commitment versus the costs allocated based on actual usage are significantly different for the various Lockheed divisions. This practice violate CAS 418.50(e)(1) which recommends that the allocation of the costs be based on resource consumption. Specifically, in situations where pool costs do not contain a material amount of management or supervision costs, the standard specifies:

> CAS 418.50(e)(1):...Homogenous indirect cost pools of this type have a direct and definitive relationship between the activities in the pool and benefitting cost objectives. The pooled costs shall be allocated using an appropriate measure of resource consumption. This determination shall be made in accordance with the following criteria taking into consideration the individual circumstances: (1) The best representation of the beneficial or causal relationship between an indirect pool and the benefiting cost objectives is a measure of resource consumption of the activities of the indirect cost pool....

(b) Significance of Condition:

We computed a $1,236,010 estimated cost impact to the government based on each benefiting Lockheed divisions' 1993 percentage of cost reimbursable and firm fixed price types of government contracts. The projected variance in 1994 costs allocated based on the usage commitment versus cost allocations based on actual resource consumption (Computer Processing Units (CPU)) is as follows:

| Division | OVER/ (UNDER) Cost Allocation | Government Cost Reimbursable Participation | Government Fixed Price Participation | Government Cost Reimbursable Cost Impact | Government Fixed Price Cost Impact |
|---|---|---|---|---|---|
| LMSC | $2,014,404 | 87.0% | 3.2% | $1,752,531 | ($64,461) |
| LADC | $1,347,213 | 67.7% | 25.1% | $912,063 | ($338,150) |
| LASC | ($3,353,484) | 42.6% | 40.5% | ($1,428,584) | $1,358,161 |
| | | | | $1,236,010 | $955,550 |

(c) Recommendation:

The costs allocation should be based on actual resource consumption (CPUs and/or wallclock hours) by that division.

(d) LITC's Reaction to the Issue:

LITC believes their method of cost allocation is fair and reasonable. The LITC written response is included as an attachment to this report.

(e) Auditor Comments on LITC's Reaction:

Our DCAA, Technical Services Center, provided comments on LITC's data center billing practices as follows:

(i) LITC does not utilize a formal chargeback system for billing and allocating computer resources. LITC's customers are not billed for actual usage of the computer resources, but only on budgeted peak processing computer requirements. This method does not support a chargeback system which operates based on a customer's measured usage of computer resources.

(ii) Normally, computer resource consumption provides the basis for charging customers for the computer resource costs.

(iii) LITC's customers should continue to forecast and commit to a certain level of computer resource usage, but LITC should consider using measured resource utilization as a basis for allocating the costs to the various divisions for use of those resources. This practice is possible using currently produced LITC reports and would not require major technical effort by LITC.

4. Disposition of Audit Results

a. Accounting counsel and any additional audit services which the contracting officer may require are available upon request. Please contact Mr. Joe Esterak, Supervisory Auditor, at (303) 969-5000. Our FAX number is (303) 969-5056.

b. As required by FAR 30.602-2, please furnish us a copy of your determination regarding the reported noncompliances.

c. This audit was performed by Mr. Jon Brown, Auditor. We would appreciate your comments and suggestions for improving our audit services and/or related audit support.

DEFENSE CONTRACT AUDIT AGENCY

James L. Lashbrook

JAMES L. LASHBROOK, Branch Manager

Attachment:
LITC's Response Dated 31 August 1994

Copy furnished:
→ DCAA, CAC Network

Lockheed Corporation LITC
Attn: Ed Meehan, Director of Finance (Thru the CACO)

Lockheed
Information Technology Company

1401 Del Norte Street
Denver, Colorado 80221

August 31, 1994

Mr. Jon Brown
Defense Contract Audit Agency
Denver Branch Office
7112 West Jefferson Avenue, Suite 200
Lakewood, CO 80235-2327

Subject: Report on Audit of CAS-418 Non-Compliance Allocation of Direct and Indirect Costs

Ref: DCAA Draft audit Report, Same Subject

Dear Mr. Brown:

LITC strenuously objects to DCAA's conclusion of CAS-418 non-compliance. LITC is in compliance with the spirit and letter of this standard's stated requirements. DCAA bases its finding on resource consumption being the only acceptable base to determine cost allocation. The CAS language speaks to beneficial or causal relationships in determining fair and equitable allocation of costs. LITC uses causal relationships to allocate its cost because it more fairly distributes its costs to segments serviced. DCAA's beneficial relationship based on consumption allocates cost beyond the benefits received. LITC's cost allocation process must give consideration to reasons expenses were incurred and for whose benefit.

All of LITC's customers previously had their own data centers. They know what a fair and reasonable price is for the services they require. They also understand that a commitment to a resource, whether acquired individually or through/from LITC, is a long-term commitment irrespective of usage.

DCAA comments that normally, computer resource consumption provides the basis for charging customers for the computer resource costs. LITC does not represent a normal situation. The customer dynamics are much more diverse than the normal data center circumstances. As such, other options must be explored. CAS-418 allows for a number of alternatives should conditions warrant.

CAS-418.50 (f)

> "provides for a special allocation where a particular cost objective in relation to other cost objectives receives significantly more or less benefit from an indirect cost pool than would be reflected by the allocation of such costs using a base determined pursuant to paragraphs (d) and (e) of this section."

CAS-418.50 (g)(3) states:

> The contracting parties may agree on pre-established rates which are not based on costs and activities anticipated for a cost accounting period. The contractor shall have and consistently apply written policies for the establishment of these rates.

LITC, from its inception, has had a commitment policy approved by its Board of Directors which states if you, as a customer, commit to a resource, you are responsible for the cost until such time as the issue is addressed. LITC's IBM pricing policy, as stated in the audit report and as concluded by DCAA, does not currently result in harm to the government. IBM workloads can be forecasted accurately and LITC does not anticipate wide swings in actual vs. forecast/-committed use. In the HPCC area, however, the situation is different. In 1994, the HPCC workload fell off due to a downturn in the defense business base, direct charging implementation for this resource, and alternative solutions being available to our customers. LASC, LMSC, and LADC are the primary customers and principal parties that committed to the expenditure of funds for HPCC resources. LASC is meeting its commitments; LMSC and LADC are not. DCAA's approach would have LASC pay a higher cost for their use, thereby relieving LMSC and LADC from their commitment. This is unfair to LASC and does not meet the spirit of the CAS-418 requirements. Where is the consideration for the causal relationship in DCAA's recommendation?

CAS-403.50 (a)(2) states:

> Where the expense of a given function is to be allocated by means of a particular allocation base, all segments shall be included in the base unless (i) any excluded segment did not receive significant benefits or contribute significantly to the cause of the expense to be allocated and (ii) any included segment did receive significant benefits from or contribute significantly to the cause of the expense in question. (Emphasis added.)

HPCC services can be considered in a class with special facilities. The CAS-418 standard does not provide guidance for accounting for the costs of special

facilities. Therefore, allowances must be made to ensure that the approach taken is fair and reasonable.

LITC believes its formal chargeback system is fair and reasonable; is compliant with the spirit and letter of the CAS; and passes the reasonable man test with respect to our chargeback approach. DCAA's position does not meet this test. It is, therefore, evident that other approaches which meet and are described in CAS-418 should be applied to LITC's situation. Doing so would allow the DCAA to find LITC compliant with CAS-418.

Thank you for the opportunity to provide these comments.

Sincerely,

Edward J. Meehan
Chief Financial Officer

EJM/csm

cc: W. Bernstein
A. DiPasquale, CORLAC
J. Wade

Audit Report No.
3121-94J19200016
CHRON NO. 1001

9 September 1994

Get audit Report
3121-95J10250174-S1
Exhibit J pg 5&6

REPORT ON CAS 418 NONCOMPLIANCE
ALLOCATION OF DIRECT AND INDIRECT COSTS
LOCKHEED INFORMATION TECHNOLOGY COMPANY
DENVER, COLORADO

Under the provisions of Title 32, Code of Federal Regulations, Part 290.26(b)(2), any Freedom of Information Act requests for audit reports received by DCAA will be referred to the cognizant contracting agency for determination as to releasability and a direct response to the requester.

Contractor information contained in this audit report may be proprietary. The restrictions of 18 U.S.C. 1905 should be considered before this information is released to the public.

This report may not be released to any Federal agency outside the Department of Defense without the approval of Headquarters, DCAA, except to an agency requesting the report in negotiating or administering its contract.

DENVER BRANCH OFFICE
DEFENSE CONTRACT AUDIT AGENCY
LAKEWOOD, COLORADO

FOR OFFICIAL USE ONLY

CENTRAL REGION
DENVER BRANCH OFFICE
DEFENSE CONTRACT AUDIT AGENCY
7112 WEST JEFFERSON AVENUE SUITE 200
LAKEWOOD CO 80235-2327

IN REPLY REFER TO
Audit Report No. 3121-94J19200016

9 September 1994

SUBJECT: Report on CAS 418 Noncompliance
Allocation of Direct and Indirect Costs
Lockheed Information Technology Company
Denver, Colorado

TO: Mr. Richard Dodd
Resident Auditor, DCAA
Resident Office - Lockheed Corporation
4500 Park Granada Boulevard
Calabasas, California 91399-0357

1. Purpose and Scope of Audit

a. Our continuous audit of Lockheed Information Systems Company's (LITC) cost accounting practices during performance of contracts includes evaluating whether the LITC has complied with the CAS Board's rules, regulations, and standards, and FAR Part 31. The purpose of the audit was to determine if LITC has complied with the requirements of CAS 418. LITC is responsible for compliance with the requirements of this standard. Our responsibility is to express an opinion on compliance with those requirements based on our audit.

b. The audit was conducted in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the contractors accounting practices comply with the requirements referred to above. An audit includes examining, on a test basis, evidence about the contractors compliance with those requirements. We believe that our audit provides a reasonable basis for our opinion.

2. Summary of Audit Results

a. In our opinion, LITC is in noncompliance with CAS 418. This report is limited to the cited instances of noncompliance. Accordingly, we express no opinion on whether other practices are proper, approved, or agreed to for pricing proposals, accumulating costs, or reporting contractor performance data.

FOR OFFICIAL USE ONLY

PRINTED ON RECYCLED PAPER

b. The results of audit were discussed with Ms. Jan Wade, LITC Supervisor of Administration, at our exit conference on 16 August 1994. The LITC written response is included as an attachment to this report.

c. Information in this report should not be used without first discussing its applicability with the auditor.

3. Statement of Conditions and Recommendations

Our audit disclosed that LITC's failure to comply with a cost accounting standard has resulted or may result in increased cost paid by the government. The area of non-compliance is LITC's policies and practices regarding the allocation of CRAY computer costs to the benefiting Lockheed divisions.

(a) Condition:

LITC has two CRAY computers whose annual costs are estimated at $10,057,189 for 1994. These costs are allocated to the Lockheed Missiles and Space Company (LMSC), Advanced Development Company (LADC), and Aeronautical Systems Company (LASC) based on a beginning of year usage commitment by these divisions for wall clock hours and shared Computer Processing Units (CPU). The costs allocated using the beginning of the year usage commitment versus the costs allocated based on actual usage are significantly different for the various Lockheed divisions. This practice violate CAS 418.50(e)(1) which recommends that the allocation of the costs be based on resource consumption. Specifically, in situations where pool costs do not contain a material amount of management or supervision costs, the standard specifies:

> CAS 418.50(e)(1):...Homogenous indirect cost pools of this type have a direct and definitive relationship between the activities in the pool and benefitting cost objectives. The pooled costs shall be allocated using an appropriate measure of resource consumption. This determination shall be made in accordance with the following criteria taking into consideration the individual circumstances: (1) The best representation of the beneficial or causal relationship between an indirect pool and the benefiting cost objectives is a measure of resource consumption of the activities of the indirect cost pool....

(b) Significance of Condition:

We computed a $1,236,010 estimated cost impact to the government based on each benefiting Lockheed divisions' 1993 percentage of cost reimbursable and firm fixed price types of government contracts. The projected variance in 1994 costs allocated based on the usage commitment versus cost allocations based on actual resource consumption (Computer Processing Units (CPU)) is as follows:

Audit Report No. 3121-94J19200016

| Division | OVER/ (UNDER) Cost Allocation | Government Cost Reimbursable Participation | Government Fixed Price Participation | Government Cost Reimbursable Cost Impact | Government Fixed Price Cost Impact |
|---|---|---|---|---|---|
| LMSC | $2,014,404 | 87.0% | 3.2% | $1,752,531 | ($64,461) |
| LADC | $1,347,213 | 67.7% | 25.1% | $912,063 | ($338,150) |
| LASC | ($3,353,484) | 42.6% | 40.5% | ($1,428,584) | $1,358,161 |
| | | | | $1,236,010 | $955,550 |

(c) Recommendation:

The costs allocation should be based on actual resource consumption (CPUs and/or wallclock hours) by that division.

(d) LITC's Reaction to the Issue:

LITC believes their method of cost allocation is fair and reasonable. The LITC written response is included as an attachment to this report.

(e) Auditor Comments on LITC's Reaction:

Our DCAA, Technical Services Center, provided comments on LITC's data center billing practices as follows:

(i) LITC does not utilize a formal chargeback system for billing and allocating computer resources. LITC's customers are not billed for actual usage of the computer resources, but only on budgeted peak processing computer requirements. This method does not support a chargeback system which operates based on a customer's measured usage of computer resources.

(ii) Normally, computer resource consumption provides the basis for charging customers for the computer resource costs.

(iii) LITC's customers should continue to forecast and commit to a certain level of computer resource usage, but LITC should consider using measured resource utilization as a basis for allocating the costs to the various divisions for use of those resources. This practice is possible using currently produced LITC reports and would not require major technical effort by LITC.



FOR OFFICIAL USE ONLY

Audit Report No. 3121-94J19200016

4. Disposition of Audit Results

a. Accounting counsel and any additional audit services which the contracting officer may require are available upon request. Please contact Mr. Joe Esterak, Supervisory Auditor, at (303) 969-5000. Our FAX number is (303) 969-5056.

b. As required by FAR 30.602-2, please furnish us a copy of your determination regarding the reported noncompliances.

c. This audit was performed by Mr. Jon Brown, Auditor. We would appreciate your comments and suggestions for improving our audit services and/or related audit support.

DEFENSE CONTRACT AUDIT AGENCY

JAMES L. LASHBROOK, Branch Manager

Attachment:
LITC's Response Dated 31 August 1994

Copy furnished:
→ DCAA, CAC Network

Lockheed Corporation LITC
Attn: Ed Meehan, Director of Finance (Thru the CACO)