**Lockheed**
*Information Technology Company*

1401 Del Norte Street
Denver, Colorado 80221

August 31, 1994

Mr. Jon Brown
Defense Contract Audit Agency
Denver Branch Office
7112 West Jefferson Avenue, Suite 200
Lakewood, CO 80235-2327

Subject: Report on Audit of CAS-418 Non-Compliance Allocation of Direct and Indirect Costs

Ref: DCAA Draft au·:it Report, Same Subject

Dear Mr. Brown:

LITC strenuously objects to DCAA's conclusion of CAS-418 non-compliance. LITC is in compliance with the spirit and letter of this standard's stated requirements. DCAA bases its finding on resource consumption being the only acceptable base to determine cost allocation. The CAS language speaks to beneficial or causal relationships in determining fair and equitable allocation of costs. LITC uses causal relationships to allocate its cost because it more fairly distributes its costs to segments serviced. DCAA's beneficial relationship based on consumption allocates cost beyond the benefits received. LITC's cost allocation process must give consideration to reasons expenses were incurred and for whose benefit.

All of LITC's customers previously had their own data centers. They know what a fair and reasonable price is for the services they require. They also understand that a commitment to a resource, whether acquired individually or through/from LITC, is a long-term commitment irrespective of usage.

DCAA comments that normally, computer resource consumption provides the basis for charging customers for the computer resource costs. LITC does not represent a normal situation. The customer dynamics are much more diverse than the normal data center circumstances. As such, other options must be explored. CAS-418 allows for a number of alternatives should conditions warrant.

CAS-418.50 (f)

> "provides for a special allocation where a particular cost objective in relation to other cost objectives receives significantly more or less benefit from an indirect cost pool than would be reflected by the allocation of such costs using a base determined pursuant to paragraphs (d) and (e) of this section."

CAS-418.50 (g)(3) states:

> The contracting parties may agree on pre-established rates which are not based on costs and activities anticipated for a cost accounting period. The contractor shall have and consistently apply written policies for the establishment of these rates.

LITC, from its inception, has had a commitment policy approved by its Board of Directors which states if you, as a customer, commit to a resource, you are responsible for the cost until such time as the issue is addressed. LITC's IBM pricing policy, as stated in the audit report and as concluded by DCAA, does not currently result in harm to the government. IBM workloads can be forecasted accurately and LITC does not anticipate wide swings in actual vs. forecast/-committed use. In the HPCC area, however, the situation is different. In 1994, the HPCC workload fell off due to a downturn in the defense business base, direct charging implementation for this resource, and alternative solutions being available to our customers. LASC, LMSC, and LADC are the primary customers and principal parties that committed to the expenditure of funds for HPCC resources. LASC is meeting its commitments; LMSC and LADC are not. DCAA's approach would have LASC pay a higher cost for their use, thereby relieving LMSC and LADC from their commitment. This is unfair to LASC and does not meet the spirit of the CAS-418 requirements. Where is the consideration for the causal relationship in DCAA's recommendation?

CAS-403.50 (a)(2) states:

> Where the expense of a given function is to be allocated by means of a particular allocation base, all segments shall be included in the base unless (i) any excluded segment did not receive significant benefits or <u>contribute significantly to the cause</u> of the expense to be allocated and (ii) any included segment did receive significant benefits from or <u>contribute significantly to the cause of the expense in question</u>. (Emphasis added.)

HPCC services can be considered in a class with special facilities. The CAS-418 standard does not provide guidance for accounting for the costs of special

facilities. Therefore, allowances must be made to ensure that the approach taken is fair and reasonable.

LITC believes its formal chargeback system is fair and reasonable; is compliant with the spirit and letter of the CAS; and passes the reasonable man test with respect to our chargeback approach. DCAA's position does not meet this test. It is, therefore, evident that other approaches which meet and are described in CAS-418 should be applied to LITC's situation. Doing so would allow the DCAA to find LITC compliant with CAS-418.

Thank you for the opportunity to provide these comments.

Sincerely,

Edward J. Meehan
Chief Financial Officer

EJM/csm

cc: W. Bernstein
A. DiPasquale, CORLAC
J. Wade

CENTRAL REGION
DENVER BRANCH OFFICE
DEFENSE CONTRACT AUDIT AGENCY
7112 WEST JEFFERSON AVENUE STE 200
LAKEWOOD, CO 80235-2327

IN REPLY REFER TO 3121-94J19200016

13 February 1996

MEMORANDUM FOR COMMANDER, DEFENSE CONTRACT MANAGEMENT COMMAND - DENVER, ORCHARD PLACE, SUITE 200, 5975 GREENWOOD PLAZA BLVD, ENGLEWOOD, COLORADO 80111-4715

ATTENTION: DCMDW-GDO, Renee Varin-Potratz

SUBJECT: Audit Report Number 3121-94J19200016, Report on CAS 418 Noncompliance Allocation of Direct and Indirect Costs Lockheed Information Technology Company

Enclosed is a copy of our audit report on the above subject. The Corporate Audit Coordinator has informed us that an initial determination of LITC's CAS 418 noncompliance was not made by the prior Lockheed Corporate Administrative Executive (CAE). We understand your office has been delegated the responsibility for resolving LITC's incurred cost and CAS issues and, accordingly, we are providing you with a copy of our report.

In our report, we estimated the cost impact using LITC's recorded allocation of CRAY computer costs for January through July 1994 projected through the end of the year. We recomputed the CFY 1994 cost impact using the total recorded CFY 1994 CRAY allocations to assist you in assessing the approximate cost impact of the potential CAS 418 noncompliance for the CFY 1994.

| Receiving Divisions | Over/(Under) Cost Allocation | Gov't Cost Reimbursable Participation | Gov't Fixed Price Participation | Gov't Cost Reimbursable Cost Impact | Gov't Fixed Price Cost Impact |
|---|---|---|---|---|---|
| LMSC | $1,584,174 | 87.0% | 3.2% | $1,378,231 | ($50,694) |
| LADC | $1,349,931 | 67.7% | 25.1% | $913,903 | ($338,833) |
| LASC | ($2,852,250) | 42.6% | 40.5% | ($1,215,059) | $1,155,161 |
| | | | | $1,077,075 | $765,634 |

Please contact Acting Supervisory Auditor Sally Mills, or Senior Auditor, Jon Brown, with any questions on this subject at (303) 969-5000, or FAX (303) 969-5056.

Sally Mills
for KENNETH L. HILL
Branch Manager

PRINTED ON RECYCLED PAPER

FOR OFFICIAL USE ONLY

# DEFENSE CONTRACT AUDIT AGENCY

# SUPPLEMENTAL AUDIT REPORT

16 September 1996

**PREPARED FOR:** Administrative Contracting Officer (Ms. Renee Varin-Potratz)
Defense Contract Management Command - Denver
Orchard Place 2, Suite 200
5975 Greenwood Plaza Boulevard
Englewood, Colorado 80111-4715

**PREPARED BY:** Denver Branch Office
7112 W. Jefferson Avenue, Suite 200
Lakewood, CO 80235-2327
Telephone No. (303) 969-5000
FAX No. (303) 969-5056

**SUBJECT:** Supplemental Audit of Fiscal Year 1994 Recorded Costs
For the Period 27 December 1993 to 26 December 1994

**REFERENCES:** DCAA: Supplemental Audit Report No. 3121-95J10250174-S1
Chron No. 0784

**CONTRACTOR:** Lockheed Information Technology Company
1410 Del Norte Street
Denver, CO 80221

**REPORT RELEASE RESTRICTIONS:** See Page 34

**CONTENTS:**


| | Page |
|---|---|
| Subject of Supplemental Audit | 1 |
| Executive Summary | 1 |
| Scope of Supplemental Audit | 1 |
| Results of Supplemental Audit | 2 |
| Contractor Organization and Systems | 31 |
| DCAA Personnel and Report Authorization | 33 |
| Supplemental Audit Report Distribution and Restrictions | 34 |
| Attachment 1: Contractor's Responses | 36 |


FOR OFFICIAL USE ONLY

Explanatory Notes

1. Allocation of Questioned Costs

The questioned $449,051 in HPCC costs have been allocated to the Lockheed Divisions from the HPCC cost pool based on the recorded division's 1994 resource consumption percentages. The questioned $221,249 in IBM costs have been allocated to the Lockheed Divisions from the System Software & Computing Operations (IBM) cost pool based on IBM billed costs. The questioned costs were allocated to the Lockheed divisions as follows:

| | High Performance Computing Center | | | | IBM Systems Software Operations | |
|---|---|---|---|---|---|---|
| Lockheed Divisions | Division Resource Consumption | Questioned Note 1 | Questioned Note 2 | Questioned Total | Division Billings | Questioned |
| LMSC | 52.23% | $234,539 | $1,584,174 | $1,818,713 | 42.93% | $ 94,982 |
| LASC | 39.39% | 176,881 | (2,852,250) | (2,675,369) | 38.27% | 84,672 |
| LADC | 1.30% | 5,838 | 1,349,931 | 1,355,769 | 0.86% | 1,903 |
| LAS | | | | | 5.38% | 11,903 |
| LAD | | | | | 1.85% | 4,093 |
| SANDERS | 0.16% | 718 | (11,880) | (11,162) | 7.15% | 15,819 |
| CORLAC | | | | | 1.44% | 3,186 |
| LACI | | | | | 2.05% | 4,536 |
| LFWC | 6.37% | 28,605 | | 28,605 | | |
| CALCOMP | | | | | 0.06% | 133 |
| OTHER | 0.55% | 2,470 | (69,975) | (67,505) | 0.01% | 22 |
| | | $449,051 | $ 0 | $ 449,051 | | $221,249 |

2. High Performance & Classified Computing CRAY Computer Costs

a. Summary of Conclusions:

We questioned LITC's allocation of $5,868,210 of the $9,996,493 in CRAY computer costs, a major cost element of the HPCC cost collection pool. HPCC costs were not allocated to benefiting cost objectives on a reasonable casual-beneficial relationship. This item is currently a potential CAS 418 noncompliance issue, which we have reported in detail in our Audit Report No. 3121-94J19200016, dated 9 September 1994. These costs are questioned and reallocated in accordance with FAR 31.201-4, Allocability, as follows:

Exhibit J
Page 5 of 6

HPCC CRAY COMPUTER COST ALLOCATIONS

| Lockheed Division | CPU Hours | Usage % | Costs Allocated Based on Usage | Billed | Variance Questioned |
|---|---|---|---|---|---|
| LMSC | 7,245.6 | 48.0% | $4,798,317 | $6,382,491 | $ 1,584,174 |
| LADC | 188.6 | 1.2% | 119,958 | 1,469,889 | $ 1,349,931 |
| LASC | 7,537.3 | 49.9% | 4,988,250 | 2,136,000 | ($2,852,250) |
| LTOC | 112.8 | 0.7% | 69,975 | | ($ 69,975) |
| Sanders | 30.1 | 0.2% | 19,993 | 8,113 | ($ 11,880) |
| | 15,114.4 | 100.0% | $9,996,493 | $9,996,493 | |

b. Basis of Recorded Costs:

LITC recorded 1994 Lockheed Divisional billings of $9,996,493 for the two CRAY computer costs. These costs were allocated to the Lockheed Missiles and Space Company (LMSC), Advanced Development Company (LADC), and Aeronautical Systems Company (LASC) based on a beginning of year usage commitment by these divisions for wall clock hours and shared Computer Processing Units (CPU).

c. Audit Evaluation:

We determined the costs allocated using the beginning of the year usage commitment versus the costs allocated based on actual usage are significantly different for the various Lockheed divisions. We computed a significant cost impact to the government based on each benefiting Lockheed division's 1993 percentage of cost reimbursable and firm fixed price types of government contracts. LITC's practice of allocating costs based on budgeted estimates of resource consumption, without adjustment during the year or at year end, violates CAS 418.50(e)(1), which recommends that the allocation of the costs be based on resource consumption. Additionally, LITC's allocation did not meet the FAR 31.201-4, Allocability, criteria for allocations to be on a causal-beneficial basis. Our adjustment of $9,996,493 represents the difference between 1994 costs allocated based on the usage commitment and 1994 cost allocations based on actual resource consumption.

d. Contractor's Response:

LITC does not concur with our findings. LITC believes the Lockheed heritage DCE, Mr. James R. Rose, evaluated their method of allocation and issued a determination that LITC's current practice of allocating costs meets the intent of CAS 418 requirements and that the issue was resolved. In addition, LITC believes the Government ADP Technical Review team determined that the billing algorithm to be technically sound, equitable, fair, and reasonable.

e. Auditor's Response:

- DCE Determination on Current Cost Charging Practice

LITC erroneously cited disposition of another CAS 418 potential noncompliance issue unrelated to this issue. The DCE's, Mr. James R. Rose, correspondence concerning a determination that LITC's current practice of allocating costs meets the intent of CAS 418 is in reference to our Audit Report No. 3121-94J19200015, dated 19 September 1994. The potential CAS noncompliance concerned LITC billing rates for IBM costs.

The potential CAS 418, Allocation of Direct & Indirect Costs, noncompliance concerning the CRAY computers in the High Performance Computer Center was reported in our Audit Report No. 3121-94J19200016, dated 9 September 1994. That potential noncompliance is now under review by Mr. Lou Becker, the current DCE for the Lockheed Martin Corporation.

- Government ADP Technical Review Report

The DCMDW ADP Report, dated 8 November 1994, referred to by LITC, is limited to a technical opinion regarding the billing algorithm and the concept of billings based on budgeted resource consumption. The recommendation to the DCE was to treat allocation of budgeted capacity not used as a corporate issue. We believe this is being addressed by the DCE in the resolution of the CAS 418 potential noncompliance.

Lockheed Martin Corporation
6801 Rockledge Drive Bethesda, MD 20817
Telephone 301-897-6781

LOCKHEED MARTIN

RECEIVED

Anthony M. DiPasquale
Corporate Director
Government Financial Management

December 6, 1996

Mr. Louis G. Becker
Defense Corporate Executive
Defense Contract Management Command
c/o Lockheed Martin Corporation
6801 Rockledge Drive
Bethesda, MD 20817

Subject: Noncompliance with CAS 418 Determination
Audit Report No. 3121-94J19200016
Allocation of CRAY Computer Costs to LADC, LMSC and LASC

Dear Mr. Becker:

Thank you for supplying us with a copy of the DCAA Audit Report that generated your inquiry. We were confused about which one you were referring to since the issues in the two Lockheed Information Systems Company (LITC) audit reports were very similar. We have been under the impression that the CRAY issue was closed based on the Defense Contract Management Command (DCMDW) ADP report (copy attached) which was issued after the above referenced DCAA audit report.

In their report the DCAA felt a CAS 418 noncompliance existed because the cost of the two CRAY computers were charged out based on the annual usage commitments and not on actual resource consumption. Our response to the DCAA position was attached to the audit report so we won't reiterate those arguments here. The DCMDW ADP team did not agree with the DCAA conclusion either. On page six of the report they stated:

> "Segments that budgeted for capacity not used are allocated cost by the LITC billing algorithm. The philosophy of LITC is to obtain the capacity forecasted by components. Once these resources are obtained, each component is responsible for payment of the forecasted resources whether it is utilized or not. Clearly, there is sufficient incentive for accurate forecasting.
>
> LITC did not ignore changing projections for usage during the year. The HPCC was severely downsized. Workloads were transferred among mainframes to reduce costs. These actions should be recognized by the CACO as necessary and productive in reducing the amount of idle capacity allocated to participating companies who overstate their consumption needs.
>
> <u>Recommendation</u>
>
> The DCE should:
>
> 7a-1. Treat allocation of budgeted capacity not used as a corporate issue. The algorithm as designed is fair and reasonable."

We believe that this report supports our position that a CAS noncompliance does not exist and, therefore, no cost impact proposal is required.

Sincerely,

A. M. DiPasquale

Attachment

DEFENSE CONTRACT MANAGEMENT COMMAND
Defense Corporate Executive
c/o Lockheed Martin Corporation
6801 Rockledge Drive
Bethesda, MD 20817-1877

IN REPLY REFER TO: DCMDE-GTC (D. Wheatley)

January 8, 1997

SUBJECT: Noncompliance with CAS 418 Determination
Audit Report No. 3121-94J19200016
Allocation of CRAY Computer costs to LADC, LMSC, and LASC

REFERENCE: LMC letter dated December 6, 1996

Mr. Anthony M. DiPasquale
Corporate Director, Government Financial Management
Lockheed Martin Corporation
6801 Rockledge Drive, Mail Point DM510
Bethesda, MD 20817-1877

Dear Mr. DiPasquale:

Thank you for your response regarding the subject CAS noncompliance and for supplying us with a copy of the DCMC ADP Technical Review of LITC. It appears that LMC is relying on this report as the Government's disposition of this noncompliance. The ADP report is a technical review, and while it may address matters related to the CAS 418 issue, the resolution of this financial matter is outside the scope of the report. As stated on page 3 of the report, it provides "technical assistance to the DCE, DACO, or ACO... verification and validation of financial information is not within the scope of this report." Additionally, the report addresses more than just the CRAY computers, and it is sometimes difficult to distinguish when the report is addressing a CRAY issue, IBM issue or issues related to both. Nevertheless, the report does raise some interesting issues which may help us resolve this CAS noncompliance.

Based on this report, LMC concludes that the DCMDW ADP Team did not agree with DCAA, a CAS 418 noncompliance does not exist, and a cost impact proposal is not required. I do not agree with these conclusions. I believe a more accurate conclusion is that the DCMC Technical Review Team understood LITC's practice of charging based upon estimated usage (vice actual) as a forecasting tool and to hold segments accountable for their forecasts. However, the ADP Team also concluded that this practice was not typical, did not utilize an optimal distribution base, and served to allocate budgeting errors to the offending segments by charging them for more than they actually utilized. Most importantly the ADP Team, clearly recognized that the CAS 418 noncompliance was an issue outside the purview of their report and should be addressed by the DCE.

For the sake of brevity, you did not reiterate the rebuttals contained in the August 31, 1994 Lockheed letter from Edward Meehan. Mr. Meehan's letter addresses the IBM and CRAY issues; however, based on your December 6, 1996 letter, it still represents the LMC position on the CRAY computer issue. I would like to address the positions presented in this Lockheed rebuttal letter.

Mr. Meehan presents several arguments from CAS 418; yet, near the end of the letter he states that "HPCC services can be considered in a class with special facilities" therefore CAS 418 does not apply. If LMC believed the CRAY computers were special facilities, it seems illogical to make arguments from CAS 418 to support the LMC position. I do not believe the CRAY computers are special facilities; however, one could argue that they are centralized services.

LMC states, "The CAS language speaks to beneficial or causal relationships in determining fair and equitable allocation... LITC uses causal relationships to allocate its costs because it more fairly distributes its cost to segments serviced... consumption allocates cost beyond the benefits received." After some further elaboration on these arguments, Lockheed cites two CAS 418 provisions, as follows:

> CAS 418.50(f) provides for a special allocation where a particular cost objective in relation to other cost objectives receives significantly more or less benefit from an indirect cost pool that would be reflected by the allocation of such costs using a base determined pursuant to paragraphs (d) and (e) of this section.
>
> CAS 418.50 (g)(3) The contracting parties may agree on pre-established rates which are not based on costs and activities anticipated for a cost accounting period. The contractor shall have and consistently apply written policies for the establishment of these rates.

LMC did not quote the next part of CAS 418.50(f) which states that special allocations may be used only when the Government and contractor agree on the special allocation. In this case of CRAY, the Government and contractor have not agreed to any special allocation. CAS 418.50(g)(3) states that the contracting parties (Government and contractor) may agree to preestablished rates which are not based on costs and activities anticipated. Lockheed has not presented evidence of any such agreement.

LMC cites the following CAS 403 provision to supports its position:

> CAS 403.50 (a)(2) Where the expense of a given function is to be allocated by means of a particular allocation base, all segments shall be included in the base unless (i) any excluded segment did not receive significant benefits or contribute significantly to the cause of the expense to be allocated and (ii) any included segment did receive significant benefits from or contribute significantly to the cause of the expense in question.

CAS 403 deals with the "allocation of the expenses of a home office to segments." I do not think Lockheed is arguing that any of the three segments (LADC, LMSC, and LASC) should be excluded from the allocation base, since they comprise over 80% of LITC's workload. Based on the portions of the citation that Lockheed underlined, it appears Lockheed is reemphasizing the fact that the causal relationship can be considered when deciding how to allocate costs. The fact that the casual relationship can be used in some instances is clear from the provisions of CAS 418 as well.

However, CAS gives very explicit direction concerning when causal or beneficial type relationships are to be used. In summary, concerning the citations and explanations from CAS offered by Lockheed, Lockheed's points of rebuttal from CAS do not appear related to the facts of the issue at hand and Lockheed has ignored other more pertinent CAS provisions. I would like to present the CAS provisions which I believe are more applicable. They are as follows:

> CAS 418-40(c)(2) If the cost pool does not contain a material amount of the costs of management or supervision of activities involving direct labor or direct material costs, resource consumption can be specifically identified with cost objectives. The pooled costs <u>shall</u> be allocated based on the specific identifiability of <u>resource consumption</u> with cost objectives by means of one of the following allocation bases: (i) A resource consumption measure (ii) An output measure, or (iii) A surrogate that is representative of resources consumed.
>
> CAS 418-50(e) Allocation measures for indirect cost pools that do not include material amounts of the costs of management or supervision of activities involving direct labor or direct material

costs. Homogeneous indirect cost pools of this type have a direct and definitive relationship between activities in the pool and benefiting cost objectives. The pooled costs shall be allocated using an appropriate measure of resource consumption. This determination shall be made in accordance with the following criteria taking into consideration the individual circumstances:

CAS 403-40(b) (1) Centralized Service Functions. Expenses of centralized service functions performed by a home office for its segments shall be allocated to segments on the basis of the service furnished to or received by each segment. Centralized service functions performed by a home office for its segments are considered to consist of specific functions which, but for the existence of a home office , would be performed by or acquired by some or all of the segments individually. Examples include centrally performed personnel administration and centralized data processing. (emphasis added)

These CAS provisions are relevant to the situation at hand, and require little explanation for their application to be understood. When management and supervision of direct labor costs or direct material costs is a small portion of an indirect cost pool (which is the case at LITC), the cost pool shall be allocated utilizing a measure of resource consumption. If one wants to utilize CAS 403 to shed light on this issue, CAS 403-40(b)(1) indicates that a centralized service, such as a computer operation, which supports many segments shall be allocated on the basis of services furnished to or received by each segment. I am unable to find support in CAS for the allocation of costs to a cost objective based solely on an estimate, without any equitable adjustment and/or comparison of the estimate with actuals. From my understanding, Lockheed allocated costs based upon a beginning of year estimate. Regardless of whether or not each segment used more than, less than or exactly what they forecasted, no adjustment to their allocation was made.

Lockheed certainly has the right to hold segments accountable for their estimated computer usage by whatever means it deems appropriate. The Government is not questioning Lockheed's right to make this business decision. However, the Government is questioning Lockheed's right to charge the Government for computer services the Government never received or from which it derived no benefit, via an allocation method that is not compliant with CAS 418.

Now that you have DCMC's written position on this issue, I request that we establish a time to discuss this matter and bring this issues to a close. I still believe that LMC is required to submit a Cost Impact Proposal, unless LMC can prove to me that a CAS 418 noncompliance does not exist. If LMC is unable to prove this, and will not agree to submit a cost impact proposal, I will disposition this matter in accordance with FAR 52.230-5, so that both parties can move forward and work towards the resolution of other issues.

We look forward to disposing of this and other CAS issues in the near future. If you or your staff have any questions regarding these matters, please contact Mr. Don Wheatley on x9731.

Sincerely,

LOUIS G. BECKER
Defense Corporate Executive

CC:
DCAA / J. Ames, M. Klee
LMC / C. McGrath