DEFENSE CONTRACT MANAGEMENT COMMAND
Defense Corporate Executive
c/o Lockheed Martin Corporation
6801 Rockledge Drive
Bethesda, MD 20817-1877

IN REPLY REFER TO: DCMDE-GTC (D. Wheatley)

April 21, 1999

SUBJECT: DEMAND FOR PAYMENT (Second Notice)
Noncompliance with CAS 403 and 418 (CRAY Computers)

Mr. Anthony M. DiPasquale
Corporate Director, Government Financial Management
Lockheed Martin Corporation
6801 Rockledge Drive, Mail Point DM510
Bethesda, MD 20817-1877

Dear Mr. DiPasquale:

This letter is sent as a follow-up to my previous letter of March 16, 1999, which demanded payment from LMC. As of the date of this letter, neither payment nor a response from LMC has been received. In accordance with FAR 32.610, I hereby demand payment of $2,682,565. This amount includes applicable interest charges of $605,618 as required by FAR 32.610(b)(2). This amount has been updated to reflect interest charges through April 21, 1999. LMC's failure to make timely payment by the date of May 21, 1999 will result in additional interest charges to cover the period from April 21, 1999 until LMC makes payment. DoD requires additional interest to be charged on any part of the $2,682,565 which remains unpaid as of the close of 30 calendar days from the date of this letter. Please make the check payable to "Defense Finance and Accounting Service." The check should not be made payable to Treasury of the United States. If payment is not received within 30 calendar days from the date of this letter, the Defense Finance and Accounting Service may deduct this indebtedness by administrative offset from an unpaid invoice in accordance with the Debt Collection Act of 1982 (P.L. 97-365; 31 USC 3716, 3717). This will be your last notice from this office, before this matter is transferred to the Defense Finance and Accounting Service for collection.

SUBJECT: DEMAND FOR PAYMENT (Second Notice)
Noncompliance with CAS 403 and 418 (CRAY Computers)

You are hereby notified that you may submit a proposal for deferment of collection if immediate payment is not practicable or if the amount is disputed. The undersigned is the responsible official designated for determining the amount of the debt and for its collection. However, the DCE is not authorized to defer collection of debts; therefore, any such request will be forwarded to the appropriate DoD official.

If you have questions relating to this matter, please contact the undersigned at 301-214-9899 or Mr. Don Wheatley at 301-214-9731.

Sincerely,

LOUIS G. BECKER
Defense Corporate Executive

---

Demand for Payment, dated April 21, 1999 is hereby acknowledged.

________________________ ____________________

Signature Date

cc:
DFAS
DCMC Headquarters
DCMC DACO Network
DCAA/ J. Ames
LMC/ Mr. Todd J. Kallman

Lockheed Martin Corporation
6801 Rockledge Drive Bethesda, MD 20817
Telephone 301-897-6781

LOCKHEED MARTIN

Anthony M. DiPasquale
Corporate Director
Government Financial Management

May 21, 1999

Mr. Louis G. Becker
Defense Corporate Executive
Defense Contract Management Command
c/o Lockheed Martin Corporation
6801 Rockledge Drive
Bethesda, MD 20817

Subject: CRAY Computers Issue, Your Demand for Payment, Dated April 21, 1999

Dear Mr. Becker:

In accordance with the penultimate paragraph of the referenced letter, Lockheed Martin Corporation (LMC) requests deferment of collection of $2,682,565 during the pendancy of LMC's appeal of your final decision on this matter. The issue and amount are in dispute and LMC intends to appeal your final decision.

It is perplexing that the results of protracted negotiations, that were originally agreed to by your office, have since been withdrawn. Following, for the record, is a recap of events and outline of the issues for appeal.

1. LMC allocated CRAY costs in compliance with CAS 418 using a resource consumption measure (computer resource commitments). LMC used the same method for allocating business computing costs in the same facility.

2. DCAA questioned LMC's allocation method, stating that the only acceptable method was actual usage.

3. The joint DCMDW/DCMDN ADP Technical Review Team disagreed with DCAA and found that LMC's allocation method was fair and reasonable for CRAY costs and business computing costs (Report # OC-0017, dated November 8, 1994).

4. The cognizant DCE then issued a memo on November 22, 1994 that addressed and resolved the allocating methodology in LMC's favor, but only referenced the DCAA report relating to business computing costs.

5. LMC believed that the November 1994 DCE memo and Technical Team report closed all issues.

6. In November 1996 your office informed LMC that the November 1994 decision memo from the previous DCE only covered the business half of the facility.

7. While LMC disagreed with the DCAA report on CRAY computer costs, as did the ADP Technical Team, we entered into negotiations with your office in 1997 in order to resolve the matter.

8. A "handshake" agreement was reached in late 1997, and your office drafted a Memorandum of Agreement (MOA). The MOA documented the fact that LMC had ultimately agreed to reallocate the CRAY costs per the DCAA report.

9. LMC's reallocation of CRAY costs resulted in a $2.8 million benefit to the Government ($1.9 million at Lockheed Martin Aeronautical Systems (LMAS) and $.9 million at Lockheed Martin Skunk Works (LMSW)).

10. The handshake agreement and draft MOA were subsequently withdrawn by your office because the cost impact at our Lockheed Martin Missiles and Space Company (LMMS) was unacceptable to your office. Specifically, your office objects to the LMMS reallocation results, which are governed by local advance agreements that deal with the year adjustments are to be made and applicable cost caps.

While the preceding facts recap events up to the dispute, following is a recap of our position for appeal.

1. All Corporate CRAY costs have been allocated to segments per the DCAA report on CRAY costs, per the draft MOA and per the advance agreements at LMMS.

2. The DCE does not have authority to disregard advance agreements at LMMS.

3. If the DCE and DFAS deduct this alleged $2,682,565 indebtedness from payments due LMMS, LMC will consider it a unilateral vacating of advance agreements at LMMS concerning methods of handling subsequent cost adjustments and multi-year cost caps. Government vacating of the internal cost cap agreements at LMMS will result in additional LMMS cost billings to its Government customers of approximately $5 million.

4. If LMC's appeal is successful, the negative impact to the Government is $ 2.8 million (for reversal of the allocations made per the DCAA report at LMAS and LMSW).

In summary, LMC transferred all costs per the DCAA report. Further, we believe that: (1), LMC's cost allocation method was compliant (as deemed so by the previous DCE); (2), Government voiding of LMMS's advance agreements results in a net cost increase to the Government of nearly $3 million, even if the Government prevails in litigation; and (3), the Government bears a negative impact of $ 2.8 million if it loses the litigation because LMC will reverse the cost impact at LMAS and LMSW.

LMC fails to understand the contracting officer's present position as compared to his position taken in the draft MOA and LMC's offer that benefits the Government by $2.8 million. LMC is still willing to abide by the already implemented handshake agreement that benefits the Government by $2.8 million, if your office withdraws the final decision.

If you have any questions regarding our position on this matter or our intent to litigate, please call me at 301-897-6781.

Sincerely

A.M. DiPasquale

CC: DCAA/J. Ames
LMC/ D.M. Christenson, Esq.
LMC/T.J. Kallman
Miller & Chevalier/ C.T. Kipps, Esq.
Miller & Chevalier/ A.B. Styles, Esq.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LOCKHEED MARTIN CORPORATION, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-129C<br>(Judge Andewelt) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES, SECOND REQUEST FOR PRODUCTION OF DOCUMENTS, AND FIRST REQUEST FOR ADMISSIONS

Plaintiff Lockheed Martin Corporation, Inc. ("Lockheed Martin") hereby submits its Objections and Responses to Defendant's Second Set of Interrogatories and Second Request for Production of Documents and First Set of Admissions. Lockheed Martin reserves the right to supplement its responses, including any objections that may be applicable, based upon any additional information that may be discovered subsequent to this response.

**GENERAL OBJECTIONS**

1. Lockheed Martin objects to Defendant's Second Set of Interrogatories and Second Requests for Production of Documents and First Set of Admissions to the extent that they seek documents protected by the attorney-client privilege and/or work product doctrine.

2. Lockheed Martin objects to Defendant's Second Set of Interrogatories and Second Requests for Production of Documents and First Set of Admissions to the extent that they are overly broad or unduly burdensome.

3. Subject to and without waiving these objections, Lockheed Martin has made a good faith effort to respond to the Government's interrogatories, requests and admissions.

4. Lockheed Martin's discovery and review of records is continuing. To the extent appropriate, these responses will be supplemented as required by Rule 26(e) of the Rules of the United States Court of Federal Claims.

INTERROGATORY NO. 6:

Identify with particularity all "service level agreements and documents of understanding" that are referenced in Lockheed's Disclosure Statement submitted to James Rose on April 1, 1994.

RESPONSE:

Government Documents 000479-000507; 002566-002597; Lockheed Martin Documents T001910-T001921 have thus far been identified. If more documents are discovered, this response will be supplemented.

7. Prior to 1997, LMC did not make any adjustment of the allocation of HPCC/Super Computer costs based upon the actual usage in 1994 and 1995 by the three Lockheed Martin operating companies (LADC, LASC, and LMSC).

Response: Denies.

8. LADC decided in September 1993 that it would no longer use the CRAY computer. (See PT 000034).

Response: Admits and avers that LADC needed the approval of LITC's Board of Directors prior to foregoing future use of the CRAY computer.

9. LITC's Board of Directors approved LADC's decision to no longer use the CRAY computer (See PT 000034).

Response: Admits.

10. LADC was charged $1.4 million for 1994 Cray costs.

Response: Admits.

11. Lockheed's Disclosure Statement submitted to James Rose on April 1, 1994, has never been deemed adequate by the Government.

Response: Admits, and avers that the Government has not deemed any of Lockheed or Lockheed Martin's disclosure statements to be adequate since approximately 1985. Further avers that the Government did not deem the 1994 Disclosure Statement to be inadequate.

Clarence T. Kipps, Jr., Esq.
MILLER & CHEVALIER, Chartered
655 15th Street, N.W., Suite 900
Washington, D.C. 20005
Tel: (202) 626-5800
Fax: (202) 628-0858

Attorney of Record

Lockheed Martin Corporation

Of Counsel:

David M. Christenson, Esq.
LOCKHEED MARTIN CORPORATION
6801 Rockledge Drive
Bethesda, Maryland 20817
Tel: (301) 897-6127
Fax: (301) 897-6333

Jeri Kaylene Somers, Esq.
MILLER & CHEVALIER, Chartered
655 15th Street, N.W.
Washington, D.C. 20005
Tel: (202) 626-5800
Fax: (202) 628-0858

I declare under penalty of perjury that the foregoing is true and correct.
Executed on JUNE 22, 2001.

Edward Meehan