Request No. 14: For 1994, LMSC and LADC did not utilize the Cray computers in accordance with their respective commitments, but they were billed for the full amount of their commitment.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. Defendant did not identify the source document, however, it appears that defendant relied on T001910-21, which is a document entitled "Lockheed Martin memorandum dated September 24, 1994," for the factual allegations contained in this Request for Admission. Plaintiff's response is based on this assumption. LMC admits this Request. In addition, LMC avers that, essentially, based upon actual utilization, LASC had met their committed levels. In the case of LMSC and LADC, both business units actual usage were significantly below their committed levels and were billed up to committed cost.

Request No. 15: For 1994, LASC was not billed the difference between its commitment and its actual usage of the Cray computers.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. Defendant did not identify the source document, however, it appears that defendant relied on T001910-21, which is a document entitled "Lockheed Martin memorandum dated September 24, 1994," for the factual allegations contained in this Request for Admission. Plaintiff's response is based on this assumption. LMC admits the allegations contained in this Request and avers that, as noted above in the response to Request No. 14, LASC had essentially met their committed levels.

Request No. 16: LADC included its 1994 commitment of $1,469,000 in the LADC incurred cost claim for 1993.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. Defendant identified the source document as an audit report dated May 17, 1996 and entitled "Assist Audit for Incurred Cost of CFY 1994 Transfers to LITC, Contractor Fiscal Year 1994." Defendant did not provide bate stamp numbers, although all documents provided to the Government by LMC can be identified by bate stamps. Nonetheless, LMC has identified this document at 004009. Upon review of the document, defendant denies that the document states that LADC included its 1994 commitment of $1,469,000 in the LADC incurred cost claim for 1993. Rather, LMC avers that the document identified states that LMSW (LADC) included the $1,469,882 LITC billed Cray Computer Costs for CFY 1994 as part of the FY 1993 Overhead Claim.

Request No. 17: LITC billed LADC on a monthly basis throughout 1994 for the total amount of $1,469,000.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. The United States has not provided the information requested, nor has LMC been able to identify the source document. LMC denies this Request, and avers that, based upon invoice detail, LADC was billed their committed amount of $1,469,892 evenly over 12 months of 1994.

Request No. 18: Although LITC billed Sanders for 1994 Cray computer usage, Sanders had not previously made any hour or dollar commitment for Cray computer usage.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. Defendant identified the source document as PT 000059. See Response to Request No. 1 regarding this document. Upon review of PT 000059, plaintiff admits the allegations contained in this Request, and avers that the decision to invest and

floor CRAY computer resources was never based upon requirements from Sanders. This business decision was based upon requirements of LMSC, LASC and LADC.

Request No. 19: Although LTOC used the Cray computers in 1994, LITC did not bill LTOC for these services.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. The United States has not provided the information requested, nor has LMC been able to identify the source document. Nonetheless, LMC admits that LITC did not bill LTOC directly for the use of the Cray computers, and aver that, as previously stated in response to Interrogatory No. 26, LTOC was a business unit reporting to LMSC, Sunnyvale.

Request No. 20: For 1994, the total actual costs for the HPCC cost pool was $12,664,929.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. Defendant identified the source document as 000879, which is a Defense Contract Audit Agency (DCAA) Audit Report, dated June 14, 1999, with several attachments. Upon review of the document, defendant admits that the document states that the total amount of computing costs allocated to HPCC was $12,664,929. Furthermore, LMC avers that based upon a DEC YTD Cost Center report, actual 1994 HPCC pool costs were $ 12,546,821. Actual HPCC billings were $12, 664,929.

Request No. 21: For 1994, the total actual costs for the Cray computer in the HPCC cost pool was $9,996,493.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. Defendant identified the source document as 000881, which is a Defense Contract Audit Agency (DCAA) Audit Report, dated June 14, 1999,

with several attachments. Upon review of the document, defendant admits that the document states that $9,996,493 was allocated in HPCC Cray computer costs. The above stated amount represents actual 1994 CRAY billings to LMSC, LASC, LADC, and Sanders.

Request No. 22: The variance between costs billed to customers and the actual HPCC pool costs in 1994 was included in the LITC HPCC cost pool for 1995.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. The United States has not provided the information requested, nor has LMC been able to identify the source document. Nonetheless, LMC admits that the variance between costs billed to customers, and the actual HPCC pool costs in 1994, representing less than 1% of the total pools costs, was rolled forward into 1995 and expensed in that time frame.

Request No. 23: For 1995, LMSC committed $634,000 for Cray computer usage.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. Defendant identified the source document as PT000059. See Response to Request No. 1 regarding this document. Upon review of PT000059, plaintiff admits that the document identified states that LMSC committed $634,000 for Cray computer usage for 1995.

Request No. 24: For 1995, LMSC also committed $2,154,000 for excess capacity, which represented budgeted costs for the LITC HPCC pool that would not be absorbed through commitments for anticipated usage.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. Defendant identified the source document as PT000059. See Response to Request No. 1 regarding this document. Upon review of

PT000059, plaintiff admits that the document identified states that LMSC committed $2,154,000 for excess capacity for Cray computer usage for 1995. Plaintiff denies that the document identified states that the $2,154,000 for excess capacity represented budgeted costs for the LITC HPCC pool that would not be absorbed through commitments for anticipated usage. Furthermore, Plaintiff avers that the $2,154,000 represents budgeted excess capacity for LMSC, which was determined during the financial planning period, and that the actual excess capacity was approximately $1.684M.

Request No. 25: For 1995, LASC committed $634,000 for Cray computer usage.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. Defendant identified the source document as PT000059. See Response to Request No. 1 regarding this document. Upon review of PT000059, plaintiff admits that the document identified states that LASC committed $634,000 for Cray computer usage for 1995.

Request No. 26: For 1995, LASC also committed $757,000 for excess capacity.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. Defendant identified the source document as PT000059. See Response to Request No. 1 regarding this document. Upon review of PT000059, plaintiff admits that the document identified states that LASC committed $757,000 for excess capacity for Cray computer usage for 1995. Furthermore, as stated in response to Request No. 24, $757,000 represents budgeted excess capacity; the actual excess capacity for LASC was approximately $510,000.

Request No. 27: For 1995, LITC billed LMSC $634,000 for actual Cray computer usage.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. Defendant did not identify the source document, however, it appears that defendant relied on PT000059 for the factual allegations contained in this Request for Admission. Plaintiff's response is based on this assumption. See Response to Request No. 1 regarding this document. Upon review of PT000059, plaintiff denies that the document identified states that LITC billed LMSC $634,000 for actual Cray computer usage for 1995. Rather, PT000059 states that the budget usage for LMSC was $634,000.

Request No. 28: For 1995, LITC billed LMSC $1,684,000 for excess capacity.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. Defendant identified the source document as PT000059. See Response to Request No. 1 regarding this document. Upon review of PT000059, plaintiff denies that the document identified states that LITC billed LMSC $1,684,000 for excess capacity for Cray computer usage for 1995. Rather, the document identified states that the actual excess capacity for LMSC was $1,684,000.

Request No. 29: For 1995, LITC billed LASC $634,000 for actual Cray computer usage.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. Defendant did not identify the source document, however, it appears that defendant relied on PT000059 for the factual allegations contained in this Request for Admission. Plaintiff's response is based on this assumption. See Response to Request No. 1 regarding this document. Upon review of PT000059, plaintiff denies that PT000059 states that LITC billed LASC $634,000 for actual Cray computer usage for 1995. Rather, PT000059 states that the budget usage for LASC was $634,000.

Request No. 30: For 1995, LITC billed LASC $510,000 for excess capacity.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. Defendant identified the source document as PT000059. See Response to Request No. 1 regarding this document. Upon review of PT000059, plaintiff denies that the document identified states that LITC billed LASC $510,000 for excess capacity for Cray computer usage for 1995. Rather, the document identified states that the actual excess capacity for LASC was $510,000.

Request No. 31: For 1995, LITC billed LMIT $11,785 for actual Cray computer usage.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. The United States has not provided the information requested. As a result of analyzing the 1995 Cray usage reports, LMC admits that the reports confirm that LMC's actual Cray usage cost was $11,785.

Request No. 32: For 1995, LMSC actually used the Cray computers for 4,959.5 CPU hours.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. The United States identified an audit report dated January 30, 2001, entitled "Audit of Fiscal Year 1995 Incurred Costs," working paper C-1h. The United States failed to provide any bates numbers identifying this document. Despite many attempts, we have been unable to identify the specific document allegedly referenced in this Interrogatory, and therefore cannot respond with any degree of accuracy or certainty. As a result of analyzing the 1995 CRAY usage reports, LMC admits that the reports confirm the above stated hours.

Request No. 33: For 1995, LSSC actually used the Cray computers for 6,186.8 CPU hours.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. The United States identified an audit report dated

January 30, 2001, entitled "Audit of Fiscal Year 1995 Incurred Costs," working paper C-1h. The United States failed to provide any bates numbers identifying this document. Despite many attempts, we have been unable to identify the specific document allegedly referenced in this Interrogatory, and therefore cannot respond with any degree of accuracy or certainty. As a result of analyzing CRAY usage reports, LMC admits that the 1995 actual usage report confirms 6,186.8 CPU incurred hours for LASC.

Request No. 34: For 1995, LMTO actually used the Cray computers for 27.3 CPU hours.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. The United States identified an audit report dated January 30, 2001, entitled "Audit of Fiscal Year 1995 Incurred Costs," working paper C-1h. The United States failed to provide any bates numbers identifying this document. Despite many attempts, we have been unable to identify the specific document allegedly referenced in this Interrogatory, and therefore cannot respond with any degree of accuracy or certainty. As a result of analyzing CRAY usage reports, LMC has determined that the 1995 actual usage report confirms 27.279 CPU incurred hours for LMTO.

Request No. 35: For 1995, LMIT actually used the Cray computers for 112.2 CPU hours.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. The United States identified an audit report dated January 30, 2001, entitled "Audit of Fiscal Year 1995 Incurred Costs," working paper C-1h. The United States failed to provide any bates numbers identifying this document. Despite many attempts, we have been unable to identify the specific document allegedly referenced in this Interrogatory, and therefore cannot respond with any degree of accuracy or certainty. As a result

of analyzing CRAY usage reports, LMC has determined that the 1995 actual usage reports confirm 111.1792 CPU incurred hours for LMIT.

Request No. 36: For 1995, Sanders actually used the Cray computers for 79.9 CPU hours.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. The United States identified an audit report dated January 30, 2001, entitled "Audit of Fiscal Year 1995 Incurred Costs," working paper C-1h. The United States failed to provide any bates numbers identifying this document. Despite many attempts, we have been unable to identify the specific document allegedly referenced in this Interrogatory, and therefore cannot respond with any degree of accuracy or certainty. As a result of analyzing CRAY usage reports, LMC has determined that the 1995 actual usage reports confirm 79.9040 CPU incurred hours for Sanders.

Request No. 37: Although LITC billed LMIT for Cray computer usage in 1995, LMIT had not previously made any hour or dollar commitment for Cray computer usage.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. Defendant identified the source document as PT000059. See Response to Request No. 1 regarding this document. Upon review of PT000059, plaintiff denies that the document identified reflects that LITC billed LMIT for Cray computer usage in 1995 or that LMIT had not previously made any hour or dollar commitment for Cray computer usage.

Request No. 38: Although LMTO used the Cray computers in 1995, LITC did not bill LMTO for these services.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. Defendant identified the source document as

PT000059. See Response to Request No. 1 regarding this document. Upon review of PT000059, plaintiff denies that the document identified reflects that LMTO used the Cray computers in 1995 or that LITC did not bill LMTO for these services.

Request No. 39: For 1995, the total actual cost for the HPCC cost pool was $9,206,000.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. The United States has not provided the information requested. LMC is unable to identify the source document, or determine which of the numerous cost documents reflect the number identified in this Request. Accordingly, LMC denies the request.

Request No. 40: For 1995, the total actual costs for the Cray computer in the HPCC cost pool was $4,293,000.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. The United States has not provided the information requested. LMC is unable to identify the source document, or determine which of the numerous cost documents reflect the number identified in this Request. Accordingly, LMC denies the request.

Request No. 41: The variance between costs billed to customers and the actual HPCC pool costs in 1995 was included in the 1996 HPCC cost pool for EIS.

*Response:* LMC requested that defendant United States identify the source document for the factual allegations contained in this Request. The United States has not provided the information requested. LMC is unable to identify the source document, or determine which of the numerous cost documents reflect the number identified in this Request. Accordingly, LMC denies the request.

Request No. 42: CAS 403 is the applicable standard for the allocation of LITC's Cray computer services.

*Response:* Deny, and aver that CAS 403 is one of the applicable standards for the allocation of LITC's Cray computer services.

Request No. 43: CAS 418 is not the applicable standard for the allocation of LITC's Cray computer services.

*Response:* Deny, and aver that CAS 418 is one of the applicable standards for the allocation of LITC's Cray computer services.

Clarence T. Kipps, Jr., Esq.
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W., Suite 900
Washington, D.C. 20005
Tel: (202) 626-5800
Fax: (202) 628-0858

Attorney of Record
Lockheed Martin Corporation

Of Counsel:

David M. Christenson, Esq.
LOCKHEED MARTIN CORPORATION
6801 Rockledge Drive
Bethesda, Maryland 20817
Tel: (301) 897-6127
Fax: (301) 897-6333

Jeri Kaylene Somers, Esq.
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W.
Washington, D.C. 20005
Tel: (202) 626-5800
Fax: (202) 628-0858

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this ____th day of March, 2003, I caused to be mailed via first class mail Defendant's Response to Plaintiff's Fifth Set of Interrogatories and Requests for Admissions addressed as follows:

Dorie Finnerman, Esq.
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: (202) 514-7300

______________________________
Jeri Kaylene Somers, Esq.