.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LOCKHEED MARTIN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00-129C |
| | ) | (Judge Allegra) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rules 56 and 83.2(e) of the Rules of the United States Court of Federal Claims, Lockheed Martin Corporation ("Lockheed" or "Plaintiff") submits this Reply in Support of its Motion for Summary Judgment and Opposition to Defendant's Cross Motion for Summary Judgment.

# TABLE OF CONTENTS


RESTATED QUESTIONS PRESENTED……………………………………………………… 1

SUMMARY………………………………………………………………………………1

I. THE GOVERNMENT'S CROSS MOTION SHOULD BE DENIED AND ITS COUNTERCLAIMS DISMISSED BECAUSE, EVEN ASSUMING *ARGUENDO* THAT LOCKHEED'S METHOD DID NOT COMPLY WITH CAS, THE GOVERNMENT PAID NO "INCREASED COSTS"……………………………………………………………………………...6

A. The Controlling Provisions of the CAS Statute and Regulations Bar Recovery on the Government's Counterclaim Because the Alleged CAS Noncompliance Did Not Result in Increased Cost to the Government, In the Aggregate, on CAS Covered……………………………………………………………………………7

II. LOCKEED IS ENTITLED TO CHARGE GOVERNMENT CONTRACTS THE ALLOCABLE PORTION OF THE LOSS DISPOSITION OF THE CRAY COMPUTERS…………………………………………………………………………...11

B. The Government Cannot Claim Prejudice or Lack of Knowledge………………16

III. THE GOVERNMENT'S REQUEST TO STRIKE NEARLY ALL STATEMENTS MADE IN MR. BLUE'S DECLARATION SHOULD BE DENIED BECAUSE THE DECLARATION WAS PROPERLY BASED ON PERSONAL KNOWLEDGE AND MR. BLUE'S REVIEW OF THE COMPANY'S BUSINESS RECORDS IN HIS OFFICIAL CAPACITY………………………………………………………………… 18


## APPENDIX


| | |
|---|---|
| Supplemental Declaration of James M. Blue | 046-049 |
| December 29, 1995 letter from CRAY Research, Inc. to Lockheed (with December 22 letters attached) | 050-052 |
| May 5, 1997 facsimile from Lockheed to Don Wheatley transmitting correspondence concerning disposition of CRAY computers | 053-056 |
| May 5, 1997 facsimile from Lockheed to Don Wheatley transmitting April 1996 DCAA audit report | 057-068 |
| October 10, 1997 Lockheed Memorandum with attachments | 069-072 |
| Lockheed Martin Skunk Works (LADC) FY 1997 Overhead Rate Agreement | 073-074 |

| | |
|---|---|
| *Federal Courts Admin. Act of 1992,* P.L. 102-572, 1992 U.S.C.C.A.N. 3921 | 075-077 |
| DCAA Audit Guidance on Cost Accounting Standards (CAS) Cost Impact – Unilateral Changes in Cost Accounting Practice and Noncompliance with CAS and Disclosed Practices (Jan. 2002) | 078-100 |
| *In re Violation of Rule 28(c)*, Miscellaneous No. 774 (2004) | 101-105 |
| August 19, 2004 letter from Clarence Kipps to Doris Finnerman | 106 |
| October 2, 1997 letter from Lockheed to DCE Becker | 107-108 |

# TABLE OF AUTHORITIES

## CASES

*In re Am. Consulting Servs., Inc.*,
2000 ASBCA LEXIS 141 (2000) .......................................................................... 14

*Attorney Gen. v. Irish N. Aid Comm.*,
530 F. Supp. 241, (S.D.N.Y. 1981)........................................................................19

*Aydin Corp. v. United States*,
229 Ct. Cl. 309, (1982) ...........................................................................................18

*Baker v. Veneman*,
256 F. Supp. 2d 999, (E.D. Mo. 2003)...................................................................20

*Barthelemy v. Air Lines Pilots Ass'n*,
897 F.2d 999, (9th Cir. 1990) ................................................................................19

*Hazma v. United States*,
31 Fed. Cl. 315, (1994) ....................................................................................13, 15

*Larouche v. Webster*,
175 F.R.D. 452, (S.D.N.Y.) ...................................................................................19

*Londrigan v. FBI*,
670 F.2d 1164, (D.C. Cir. 1981) ............................................................................19

*Little River Lumber Co. v. United States*,
21 Cl. Ct. 527, (1990) .............................................................................................15

*Metric Contr. Co. v. United States*,
1 Cl. Ct. 383, (1983)...…………………………………………………………15, 16

*In re N.I. Indus.*,
1991 ASBCA LEXIS 479, (1991) .........................................................................14

*Schimmer v. Kaladijan*,
988 F. Supp. 2d 631, (S.D.N.Y. 1997)……………………………………….…19

*Searles v. 1st Fortis Life Ins. Co.*,
98 F. Supp. 2d 456, (S.D.N.Y. 2000)………………………………………...…19

*Self-Realization Fellowship Church v. Ananda Church Self Realization,*
206 F.3d 1322, (9th Cir. 2000)……………………………………………………18, 19

*Shea, Co. v. United States,*
4 Cl. Ct. 46, (1983)………………………………………………………..………14, 16

*Tecom, Inc. v. United States,*
732 F.2d 935, (Fed. Cir. 1984)…………………………………………………..13

*Thermocor, Inc. v. Uinted States,*
35 Fed. Cl. 480, (1996)………………………………………………..13, 14, 16, 17

*Transamerica Premier Ins. Co. v. United States,*
32 Fed Ci. 308, (1994)……………………………………………………………….20

*Van Skiver V. United States,*
751 F. Supp. 1522, (D. Ark. 1990)……………………………………………..19

**STATUTES**

41 U.S.C. § 422(h)……………………………………………………………………….9

41 U.S.C. § 422(h)(3)……………………………………………………………8, 9, 11

**REGULATIONS**

CAS § 9903.201-4(a)……………………………………………………………………….8

CAS § 9903.306(b)……………………………………………………………………9,10

CAS § 9903.306(e)…………………………………………………..……………..8, 11

CAS § 9904.409-40(b)(4)……………………………………………………………..11

**MISCELLANEOUS**

*In re Violation of rule 28(c),*
Miscellaneous No. 774 (2004)……………………………………………………………….2

*Federal Courts Admin. Act of 1992,* P.L. 102-572,
1992 U.S.C.C.A.N. 3921. ………………………………………………………… 12

## RESTATED QUESTIONS PRESENTED

To better focus the issues, Lockheed restates the questions presented because their presentation by the Government is confusing and partially incorrect, and Lockheed has withdrawn its equitable adjustment argument.

1. The dispositive issue in the Government's Cross Motion to recover on its counterclaim, assuming *arguendo* the Government's actual usage method is the proper method for allocating the CRAY computers costs under the Cost Accounting Standards ("CAS") and CAS statute, is whether the alleged CAS noncompliance resulted in increased cost to the Government, in the aggregate, on CAS covered contracts?

2. The other dispositive issue in this case is whether Lockheed is entitled to charge government contracts the allocable portion of Lockheed's loss on the disposition of the CRAY computers?

## SUMMARY

By continuing to focus on whether Lockheed's method of allocating CRAY computer costs complied with CAS 418, its Corporate Disclosure Statements or the operating segments' Service Level Agreements and memoranda of understanding, the Government refuses to recognize that the CAS noncompliance issue is no longer an issue because even assuming *arguendo* noncompliance, the Government underpaid -- not overpaid -- the CRAY computer costs allocable to government contracts.

The Government's brief in support of its Cross Motion to recover on its counterclaim fails to address the controlling statutory and regulatory provisions that bar recovery unless the CAS noncompliance resulted in increased cost to the Government in the aggregate on CAS

covered contracts. Even apart from Lockheed's entitlement to the allocable portion of its loss on the disposition of the CRAY computers, the Government's counterclaim is not saved by its jurisdictional challenge to inclusion of the loss on the disposition of the CRAY computers in the Court's analysis of the proper amount of CRAY costs allocable to government contracts. That is because even if the approximately $6.8 million in allocable costs for Lockheed's loss on the disposition of the CRAY computers is disregarded in calculating the CRAY computer costs allocable to government contracts, the Government still underpaid Lockheed approximately $2.68 million of CRAY hourly computer costs allocable to government contracts. Accordingly, the Government's Cross Motion for Summary Judgment should be denied and its counterclaim dismissed.

The Government's Opposition does not substantively respond to Lockheed's arguments establishing legal entitlement to recover the allocable portion of its loss on the disposition of the CRAY computers (hereafter sometimes referred to as "CRAY loss").[1] Rather, the Government passes on its only chance to rebut Lockheed's argument concerning legal entitlement to charge government contracts the CRAY loss.[2] In any event, as a matter of law, the Government cannot rebut these claims because CAS § 9904.409-40(b)(4) (Pl. App. at 031) plainly and

---

[1] In its Motion for Summary Judgment, Lockheed asked the Court to rule on Lockheed's entitlement to recover the allocable portion of its loss on the disposition of the CRAY computers. Pl. Brief at 15. Because resolution of the precise amount of the loss allocable to government contracts is not amenable to summary judgment, Lockheed proposed that quantum be negotiated by the parties or decided in future proceedings before the Court. *Id.*

[2] In a recent ruling, the Federal Circuit made clear that the final reply brief submitted by a cross appellant must be limited to the cross appeal issues. *In re Violation of Rule 28(c)*, Miscellaneous No. 774 (2004). While the court specifically addressed Federal Rule of Appellate Procedure 28(c), the limitations on the scope of final reply briefs would likewise limit Defendant's Reply to the issues raised in its Cross Motion for Summary Judgment.

uncontrovertibly requires the loss on disposition of the CRAY computers be allocated in the year of disposition.

The Government's response to Lockheed's argument that the Court should include the CRAY loss in its analysis of the proper amount of CRAY costs allocable to government contracts is two fold. Its first argument that the loss was in 1996 - not in 1995 – is incorrect. Uncontrovertably, the CRAY computers were sold in December 1995 as shown below. *See infra* at 11. The Government's second and primary argument is that Lockheed's argument should be stricken because Lockheed never submitted a certified claim for this amount to the contracting officer. *Defendant's Cross Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment* ("Def. Brief") at 2, 19-20. The bottom line issue in the dispute from the outset and now is the proper amount of CRAY cost allocable to government contracts. The CRAY loss arises from and is integrally related to the same set of operative facts before the DCE and the allegations in the Complaint. Therefore, there is no new claim requiring a contracting officer's final decision, and further delaying resolution of the legal issues in this case would waste judicial resources and frustrate the purpose and directive of the Contract Disputes Act ("CDA")

The most shocking part of the Government's argument on this issue is its representation that "[it] has no knowledge of the costs associated with the disposition of the CRAY computers or any knowledge of how Lockheed has already allocated these costs." Def. Brief at 2. This statement is incorrect. As detailed below, (*infra* at 17-18) the facts concerning Lockheed's loss on the disposition of the CRAY computers have been produced in discovery and discussed by the parties in their efforts to resolve the dispute. Blue Supp. Decl. ¶ 9 (Pl. App. at 046-049). In addition, DCAA's Orlando office has conducted an audit of a Lockheed document that sets forth

the CRAY loss. Blue Supp. Decl. ¶¶ 1-5 (Pl. App. at 046-049).[3] For these reasons and those set forth below, the Government's "jurisdictional" argument fails.

Instead of substantively addressing Lockheed's arguments, the Government mischaracterizes them and then addresses the mischaracterized arguments. It mischaracterizes Lockheed's argument concerning the CRAY loss as a counterclaim. Def. Brief at 1, 19-20. The bottom line issue in this dispute has been from the outset and is the proper amount of CRAY computer cost allocable to government contracts. Inclusion of the CRAY loss in the Court's analysis of what has always been the bottom line issue in this case – the proper amount of CRAY computer costs allocable to government contracts – does not give rise to a counterclaim. Instead, it is an integral part of the determination of the proper amount of CRAY computer costs allocable to government contracts. It should not be characterized or analyzed apart from the determination of the proper amount of CRAY hourly costs allocable to government contracts.

The Government also mischaracterizes Lockheed's argument concerning the loss on the disposition of the CRAY computers by describing it as "an offset against the cost impact of the Cost Accounting Standards ("CAS") violation…" Def. Brief at 1. The controlling issue in the Government's counterclaim is whether the alleged CAS violation resulted in the Government's payment of "increased cost" on government contracts. As discussed below, the Government paid no increased cost and indeed underpaid the CRAY computer costs.

Finally, the Government mischaracterizes Lockheed's argument that the Court does not need to decide whether Lockheed's method for allocating CRAY computer costs complies with CAS as being based on the argument that "any cost impact resulting from an improper allocation

---

[3] On August 19, 2004, counsel for Lockheed sent a letter to Government counsel seeking a copy of the results of DCAA's audit of the "Cost Impact Conclusion" schedule. Pl. App. at 106. The Government has not responded to this letter. Lockheed hereby renews that request.

of costs is offset by an allocation of costs associated with the disposition of those assets." Def. Brief at 1-2. The Court need not decide whether Lockheed's method complies with CAS because the Government underpaid -- not overpaid -- the CRAY computer costs allocable to government contracts, regardless of whether the Government's actual usage method or Lockheed's resource commitment method is applicable. This is the case even if the approximately $6.8 million in allocable costs for Lockheed's loss on the disposition of the CRAY computers is disregarded in calculating the CRAY computer costs allocable to government contracts because the Government underpaid approximately $2.68 million in CRAY hourly costs.

In its opening brief, Lockheed contended that it is entitled to an equitable adjustment under the Changes clause because it agreed to change its cost accounting practice and in fact implemented the change by allocating the CRAY computer costs using the Government's method, while preserving its contention that Lockheed's method complies with CAS. *See* PFOF ¶ 19-20. The Government's Opposition raises potentially genuine issues of fact and unnecessarily complicates the issues before the Court. To further narrow the issues, Lockheed hereby withdraws its equitable adjustment argument.

The Government's Cross Motion boils down to one argument: that "Lockheed did not adjust the amounts charged to its business segments, or to affected government contracts, to reflect the variance between the preestablished rate and the actual usage rate of the computer services. Def. Brief at 9. The Government's argument is irrelevant because CAS noncompliance is no longer an issue in this case. Moreover, it is factually incorrect because in

1994 and 1995, Lockheed complied with Item 8.3.1.R of its Corporate Disclosure Statement. Blue Supp. Decl. ¶¶ 7-8 (Pl. App. at 046-049).

## I. THE GOVERNMENT'S CROSS MOTION SHOULD BE DENIED AND ITS COUNTERCLAIM DISMISSED BECAUSE, EVEN ASSUMING *ARGUENDO* THAT LOCKHEED'S METHOD DID NOT COMPLY WITH CAS, THE GOVERNMENT PAID NO "INCREASED COST."

In its Opposition to Lockheed's Motion for Summary Judgment, and in support of its Cross Motion for Summary Judgment, the Government devotes nearly one-half of its argument to contending that Lockheed failed to comply with the CAS in allocating CRAY computer costs for calendar years 1994-1995. Def. Brief at 10-17; *see id.* 3-9. Though Lockheed has consistently maintained (and continues to maintain) that its method of allocating CRAY computer costs complied with CAS, Lockheed made clear in its Motion for Summary Judgment that the Court need not decide whether Lockheed's allocation method complied with CAS. That is because under *either* the Government or Lockheed's allocation method the Government has paid no increased cost to Lockheed for CRAY computer costs. This is true even if the approximately $6.8 million in costs for Lockheed's loss on the disposition of the CRAY computers is disregarded in calculating the CRAY computer costs allocable to government contracts, because the Government still underpaid Lockheed approximately $2.68 million of CRAY hourly computer costs allocable to government contracts. *See* PFOF ¶ 23. Therefore, the Government is not entitled to recover any portion of its counterclaim (which the Government apparently has reduced from $2,669,534 to $540,000)[4].

---

[4] Reflecting the amount claimed by DCE Becker in his final decision, the Government asserted a counterclaim for $2,669,534 plus interest, allegedly for "increased costs due to the Government." Defendant's Answer and Counterclaim, at ¶ 42. The Government has revised its Counterclaim to seek "judgment in favor of the Government in the amount of $540,000 plus interest from March 16, 1999," the date the contracting officer issued his final decision. Def. Brief at 22. It appears that the Government took the $540,000 from a schedule entitled "Cost Impact Conclusion" on page 5 of a document entitled "DCMC-LOCKHEED MARTIN DISCUSSION" submitted to the Government on October 23, 2001.

The facts related to Lockheed's loss on the disposition of the CRAY computers are primarily relevant to the question before the Court of the proper amount of CRAY computer costs allocable to government contracts, and are not necessary for the Court to determine whether the Government paid "increased cost."

**A. The Controlling Provisions of the CAS Statute and Regulations Bar Recovery on the Government's Counterclaim Because the Alleged CAS Noncompliance Did Not Result in Increased Cost to the Government, in the Aggregate, on CAS Covered Contracts.**

Assuming *arguendo* that Lockheed's method did not comply with CAS, its Corporate Disclosure Statements or the operating companies' Service Level Agreements and memoranda of understanding, the *most* the Government would be entitled to recover as a result of a finding of CAS noncompliance is its "increased cost," calculated in accordance with the CAS statute and regulations. The CAS statute makes clear that when multiple "relevant contracts" are involved – as is the case here – "increased cost" to the Government is determined by considering costs "in the aggregate":

> In no case shall the Government recover costs greater than the increased cost (as defined by the Board) to the Government, in the aggregate, on the relevant contracts subject to the price adjustment.

41 U.S.C. § 422(h)(3) (Pl. App. at 029). The Government has failed to address this controlling statutory bar to any recovery on its counterclaim.

---

Def. App. at 158. This schedule reflects Lockheed's estimate of the underpayment by the Government using the Government's actual usage method, including the impact on Lockheed's fixed price and cost-type contracts of reallocating the CRAY costs using the Government's actual usage method. Blue Supp. Decl. ¶ 1; Def. App. at 158. Because the Government believes (inaccurately) that only the cost impact to cost-type contracts is relevant, it uses Lockheed's estimate of the impact that its agreement to use the Government's actual usage method had to cost-type contracts. Properly considering the impact to fixed price contracts as well as cost-type contracts reveals an underpayment by the Government of approximately $2.68 million.

In addition to requiring that increased cost be determined "in the aggregate," CAS § 9903.306(e) (Pl. App. at 030) expressly contemplates adjustments to "the contract price" (a phrase used to describe fixed price type contracts) *and* to "cost allowances" (a phrase used to describe cost-type contracts).

> An adjustment to the **contract price or of cost allowances** pursuant to the Cost Accounting Standards clause at 9903.201-4(a) may not be required when a change in cost accounting practices or a failure to follow accounting practices or a failure to follow Standards or cost accounting practices is estimated to result in increased costs being paid under a particular contract by the United States. This circumstance may arise when a contractor is performing two or more covered contracts, and the change or failure affects all such contracts. The change or failure may increase the cost paid under one or more of the contracts, while decreasing the cost paid under one or more of the contracts. In such case, the Government will not require price adjustment for any increased costs paid by the United States, so long as the cost decreases under one or more contracts are at least equal to the increased cost under the other affected contracts, provided that the contractor and the affected contracting officers agree on the method by which the price adjustments are to be made for all affected contracts. In this situation, the contracting agencies would, of course, require an adjustment of the **contract price** or **cost allowances**, as appropriate, to the extent that the increases under certain contracts were not offset by the decreases under the remaining contracts.

Pl. App. at 030 (boldface added). In light of the clear language of CAS § 9903.306(e) (Pl. App. at 030), the impact to both cost-type and fixed price contracts must be calculated in determining any adjustment resulting from a CAS noncompliance.

The Government simply is not entitled to recover under the facts of this case because, taking into account all allocable CRAY costs and all fixed price and cost-type CAS-covered contracts, the Government did not pay increased costs, in the aggregate. Indeed, even without taking into account Lockheed's approximately $6.8 million loss on the disposition of the CRAY computers (which are uncontrovertibly is allocable costs), the Government underpaid Lockheed

by approximately $2.68 million: This is calculated by subtracting the approximately $6.8 million loss on the disposition of the CRAY computers from the Government's gross underpayment of approximately $9.48 million. *See* PFOF ¶ 23.

Lockheed has submitted documents and a declaration supporting the fact that determining increased cost to the Government in the aggregate on the CAS covered-contracts shows that the Government did not pay any increased cost for the CRAY computers.[5] The Government's challenges to Mr. Blue's factual statements concerning these costs lack merit because there is no requirement that Lockheed provide documentary evidence in addition to the statements made by Mr. Blue. *See infra*, at 18-19 (citing *Transamerica Premier Ins. Co. v. United States*, 32 Fed. Cl. 308, 312-13 (1994) ([T]he *primary* source of . . . information was not the company's books and records but, rather, the affiant's own "personal knowledge . . . . the books and records could say no more than the affidavit now does for both owe their recitals to the same source). Therefore, this fact is deemed admitted for purposes of the pending Motions for Summary Judgment. Def. Brief at 18-19.

Instead of addressing the controlling statutory and regulatory requirements in determining "increased cost," the Government directs the Court's attention to general statutory and regulatory provisions that do not address the adjustment when multiple contracts are impacted. Title 41 U.S.C. section 422(h) simply requires a price adjustment for increased costs. CAS § 9903.306(b) (Pl. App. at 030), speaking in terms of a single fixed price contract, provides for an adjustment based on what the parties would have agreed to had the contractor complied

[5] For the reasons set forth below in Section III, the Government's challenges to the statements made in Mr. Blue's declaration are without merit and do not call into question their accuracy.

with CAS. The Government's statement that presumably Lockheed priced its fixed price contracts based on the commitments of the operating segments is irrelevant. Def. Brief at 17-18.

The Government's "disagree[ment] with Lockheed's contention that its CAS noncompliance had a cost impact on fixed-price contracts" (Def. Brief. At 18) is inconsistent with the DCAA's guidance on calculating the cost impact of a CAS noncompliance, when the noncompliance impacts both fixed price and cost-type contracts. *Id.* DCAA guidance expressly provides for the inclusion of both fixed price and cost type contracts in determining the cost impact for a CAS noncompliance. *See* DCAA Audit Guidance on Cost Accounting Standards (CAS) Cost Impact – Unilateral Changes in Cost Accounting Practice and Noncompliance with CAS and Disclosed Practices (Jan. 2002) (relevant portions of which are attached hereto at Pl. App. 078-100). The purpose of DCAA's guidance is to provide "guidance on the computation and settlement alternatives of the CAS cost impact for unilateral cost accounting practice (CAP) changes and for noncompliance with CAS or a contractor's disclosed or established accounting practices." *Id.* at 1. Scenario No. 3 of that guidance, entitled "Concurrent Accumulation and Estimating Noncompliance," is most applicable here, assuming *arguendo* that there was a CAS noncompliance. The guidance reflects that when the CAS noncompliance affects the contractor's estimating (for fixed price contracts) and accumulating (for flexibly-priced, cost-type contracts), the cost impact to fixed price and cost-type contracts must be calculated:

> Estimating noncompliances affect primarily FP contracts, while accumulation noncompliances affect only flexibly-priced contracts. Since the contractor both estimated and accumulated costs using a noncompliant practice, the cost impact affects both flexibly-priced and FP contracts.

*Id.* at 11. In "determining the aggregate costs paid by the government," the guidance states "increased costs paid by the government in the aggregate are the total of increased costs on the

flexibly-priced and FP contracts." This guidance is consistent with the CAS statute, 41 U.S.C. § 422(h)(3), and the CAS regulation, § 9903.306(e) and is contrary to the Government's argument that fixed price contracts must be excluded in determining cost impact.

## II. LOCKHEED IS ENTITLED TO CHARGE GOVERNMENT CONTRACTS THE ALLOCABLE PORTION OF THE LOSS ON DISPOSITION OF THE CRAY COMPUTERS.

The CRAY computers were tangible capital assets and Lockheed is entitled to charge government contracts the allocable portion of Lockheed's loss on the disposition of the CRAY computers in accordance with the plain terms of CAS § 9904.409-40(b)(4) (Pl. App. at 030). The Government cannot rebut this legal argument. Def. Brief at 12. Instead, the Government challenges Lockheed's statement that the CRAY computers were disposed of in 1995, arguing that they were removed from service in 1996. The record uncontrovertably shows that the CRAY computers were disposed of in December of 1995 (Pl. App.050-052, 054-055; Blue Supp. Decl. ¶ 6)[6]. Also, using the Government's actual usage method Lockheed allocated the loss on the disposition of the CRAY computers to LMSC and LASC, according to each company's actual usage of the CRAY computers. PFOF ¶ 6.

The Court should reject the Government's request that Lockheed's argument in support of the CRAY loss be stricken because Lockheed never submitted a certified claim to the contracting officer. Def. Brief at 2, 19-20. The heart of the dispute from the outset has been and is the proper amount of CRAY costs allocable to government contracts. Resolution of that issue necessarily requires consideration of all CRAY costs.

---

[6] The Government points to "contemporaneous Lockheed documents" to call into question the fact that the CRAY computers were disposed of in 1995. Def. Brief at 12. The Government is correct that these documents reference minimal use of the CRAY computers in 1996, however, the Government fails to recognize that such use was pursuant to a leaseback provision and occurred after completion of the sale of the CRAY computers in December 1995. Blue Supp. Decl. ¶ 6. Plaintiff attaches hereto additional contemporaneous documents to resolve the Government's confusion. Pl. App. at 050-056.

The allocable portion of Lockheed's loss on the disposition of the CRAY computers arises from, and is integrally related to, the same set of operative facts alleged in the Complaint. In Lockheed's Complaint and its Motion for Summary Judgment, Lockheed alleges that the allocable CRAY costs calculated by the Government's under its actual usage method are incorrect. The only difference is that Lockheed has now taken its initial theory to its natural end by concluding that the correct calculation results in the Government having underpaid Lockheed for the CRAY computer costs.

The facts concerning Lockheed's loss on the disposition of the CRAY computers have been produced in discovery and discussed by the parties in their efforts to resolve the dispute. Blue Supp. Decl. ¶ 9 (Pl. App. at 046-049). Consideration of the allocable portion of Lockheed's loss as part of the analysis of the proper amount of CRAY costs allocable to government contracts is squarely within the Court's jurisdiction. The Government's argument to the contrary is an attempt to construct a technical defect when there is none.

In any event, Section 605(c) of the CDA was amended in 1992 to make clear that a "technical defect" in certification does not deprive the Court of jurisdiction over a claim. *Federal Courts Admin. Act of 1992,* P.L. 102-572, 1992 U.S.C.C.A.N. 3921, 3937 (amending section 605(c) to state "[a] defect in the certification of a claim shall not deprive the court . . . of jurisdiction over that claim"). (Attached hereto at Pl. App. 075-077)). As reflected in the legislative history, only when there is a "substantive defect" does the CDA preclude a Court's jurisdiction:

> The term "technically defective" is intended to cover the full range of defects found by the courts that do not involve a substantive defect, such as bad faith, fraud, or reckless and intentional disregard of the statutory certification requirements.

*Id*; *see Hazma v. United States,* 31 Fed. Cl. 315, 322 (1994) (discussing purpose of 1992 amendment "to avoid repetition of the entire administrative claims process and waste of judicial . . . mistakes" (citing H. Rep. No. 102-1006, 102d Cong. 2d Sess. 6, *reprinted in* 1992 U.S.C.C.A.N. 3904, 3937)). Delaying a ruling on whether Lockheed is entitled to allocate the loss on the disposition of the CRAY computers would serve no purpose other than to waste judicial resources and further delay resolution of this case. Lockheed would request another final decision by the DCE and, upon denial of that request by the contracting officer, return to this Court. The Court has jurisdiction to decide the CRAY loss issue.

*Tecom, Inc. v. United States*, 732 F.2d 935 (Fed. Cir. 1984), provides some guidance. There, the initial claim did not require certification because it was under the CDA threshold, but was increased above the threshold during the appeal. *Id.* The Federal Circuit held the enlargement of a monetary claim properly before the contracting officer satisfied the CDA general principle and did not deprive the Court of jurisdiction. *Id.* at 938. Here, the Government's monetary claim that did not require certification (the amount of CRAY computer costs allocable to government contracts) was properly before the DCE, and he incorrectly determined the amount. This appeal is to determine the correct amount allocable to government contracts.

It is well-settled that "a court has jurisdiction over a claim if it is 'based on the same set of operative facts underlying the claim' submitted to the contracting officer." *Thermocor, Inc. v. United States*, 35 Fed. Cl. 480, 489 (1996); *see also Appeal of Am. Consulting Servs., Inc.*, 2000 ASBCA LEXIS 141, * 13 (2000). The jurisdictional prerequisite that claims initially be brought to the attention of the contracting officer is not (as the Government's brief suggests) intended to

keep from the Court's consideration claims, including alternate theories, that are later asserted in court and which stem from the same set of operative facts:

> [I]t would be very disruptive to a court's procedures, if theories, developed as a result of pretrial proceedings including discovery, had to be submitted to the contracting officer before the court could render a final decision on a claim.

*Thermocor,* at 489; *see also J.F. Shea Co. v. United States*, 4 Cl. Ct. 46, 54 (1983); *Tecom,* at 937-38.

Thus, in resolving such a jurisdictional challenge, the relevant inquiry is whether the set of facts was brought to the attention of the contracting officer, rather than on the precise language initially employed by the claimant or the legal theories presented. *Thermocor*, 35 Fed. Cl. at 489-90 (where contractor argued different theory for entitlement to equitable adjustment at court than in complaint, court found that augmentation of theory did not change essence of claim); *J.F. Shea Co.* at 54-55 (request for increased damages was not a new claim because the factual basis for it was identical to the original claim); *Appeal of Am. Consulting Services, Inc.*, 2000 ASBCA LEXIS 141, *13 (2000) (for three of four of contractor's claim, board found jurisdiction over "increased and additional quantum elements sought in ACS' complaint"); *Appeal of N.I. Indus.*, 1991 ASBCA LEXIS 479, * 41-45 (1991) (holding that Government's assertion of additional CAS violations, though not addressed in the contracting officer's final decision, "represent the assertion of alternative legal theories of recovery based on the same operative facts as underlie the claim in the [final decision]," and that the Government's argument that it is entitled to a credit "though not separately articulated in the CACO's decision, is sufficiently intertwined with the gravaman of the Government's claim for return of alleged 'overpayments' as to fall within the proper scope of the appeal"). Though the Government's counterclaim fails because the Government had no increased cost even without consideration of

the loss on the disposition of the CRAY computers, Lockheed's loss on the disposition of the CRAY computers is unquestionably "intertwined" with the bottom line issue in this case, which is the proper amount of CRAY costs allocable to government contracts.

The Government cannot overcome the Court's jurisdiction over the issue of Lockheed's entitlement to allocate to government contracts the loss on the disposition of the CRAY computers by arguing that Lockheed has not identified a "sum certain" which the contracting officer could accept or deny. That is because the CDA's requirement that the contracting officer identify a "sum certain" "is satisfied if the contractor sets out the specific amount it is seeking or if the amount in dispute can be easily determined by a simple mathematical calculation or from the contractor's submission to the contracting officer." *Hazma v. United States,* 31 Fed. Cl. 315, 322 (1994) ("[D]efendant was able to calculate the amount and conclude the amount of the claim . . . The only issue in dispute was whether plaintiff was entitled to his claim; the government certainly knew the amount". However, several documents as a whole might constitute a claim"); *see also GPA-I v. United States,* 46 Fed. Cl. 762, 767 (2000) ("[T]he CO could, through simple mathematical calculation, determine the precise amount of plaintiff's claim"); *Little River Lumber Co. v. United States*, 21 Cl. Ct. 527, 535 (1990) ("Here, the basis of the dispute . . . concerning overpayments is whether plaintiff is correct that the base rate rather than the appraisal rate should be used, and that its proposed conversion factors and 50% adjustment . . . should be employed. Assuming plaintiff's contentions are correct, defendant could arithmetically calculate the amount of the overpayment claim for each contract. As in *Metric* [*Constr. Co. v. United States*, 1 Cl. Ct. 383, 392 (1983)], plaintiff herein gave adequate notice of the basis and amount of claim."). Here, as detailed below, the DCE and his representative have had available to them all documents necessary to calculate the amount of the underpayment

using the Government's actual usage method. *See infra*, at 17-18. If this Court finds that Lockheed is entitled to recover the total amount of CRAY costs allocable to government contracts using the Government's actual usage method, then Lockheed would naturally be entitled to include in that amount the allocable portion of its loss on the disposition of the CRAY computers.

Jurisdiction is proper, even to the extent that the Court finds that Lockheed's claim for the allocable portion of its loss on the disposition of the CRAY computers is based on the development of additional supporting facts. The Court has recognized that permitting modifications in the relief requested based on later-developed facts reflects the realities of the litigation process and also enhances judicial economy. Because of enhanced discovery tools attendant with trial, it is natural that the parties would discover additional facts supporting their respective claims. *J.F. Shea*, 4 Cl. Ct. at 54. Indeed, it would be cumbersome and a waste of judicial resources to require that new factual developments that reasonably emanate from further investigation of the initial claim be presented to the contracting officer before the court could render a decision. *Thermocor*, 35 Fed. Cl. at 489. Thus, granting the Government's request to exclude from the Court's analysis the allocable portion of its loss on the disposition of the CRAY computers would penalize Lockheed for proceeding in a manner that is consistent with the law and serves the interest of judicial economy. Here, there is no new claim requiring a contracting officer's final decision or an amended complaint, and further delaying resolution of *all aspects* of this case would frustrate the purpose and directive of the CDA and waste judicial resources.

### B. The Government Cannot Claim Prejudice or Lack of Knowledge.

The Government simply cannot genuinely argue "[it] has no knowledge of the costs associated with the disposition of the CRAY computers or any knowledge of how Lockheed has already allocated these costs." Def. Brief at 2. First, Lockheed received the concurrence of DCAA before disposing of the CRAY computers. Pl. App. at 020-022; Def. App. at 159-166; *see also* Pl. App. at 053-057. Documents reflecting the collaboration between the Government and Lockheed on the disposition of the CRAY computers were sent to DCE Becker's representative in 1997. Second, there has been extensive discovery, and documents reflecting Lockheed's loss on the disposition of the CRAY computers were provided to the Government during discovery. *See, e.g.,* Pl. App. at 069-072. Third, in October 2001, Lockheed provided the Government with a schedule entitled "Cost Impact Conclusion" as part of a larger document entitled "DCMC-LOCKHEED MARTIN DISCUSSION." This schedule included Lockheed's estimate at that time of the loss on the disposition of the CRAY computers. Finally, the Orlando-DCAA auditor Jim Wilson has conducted an audit of the "Cost Impact Conclusion" schedule, which would have included an audit of Lockheed's CRAY loss. Blue Supp. Decl. ¶ 5 (Pl. App. at 046-049); Def. App. at 158. The Government's argument that it would be prejudiced if Lockheed were permitted to proceed with its argument the CRAY loss has no merit. The DCE had sufficient opportunity to review the facts before him (including those related to Lockheed's loss on the disposition of the CRAY computers) and make as decision as to the proper amount of CRAY costs allocable to government contracts. *See Thermocor,* at ("[i]n determining whether the assertion constitutes a new claim, the critical test is whether the contracting officer's right to adjudicate claims is undermined by circumventing his statutory role 'to receive and pass judgment on the contractor's entire claim.'"). The DCE was not deprived any opportunity: He

rejected Lockheed's calculations using the Government's actual usage method. As such, the DCE implicitly rejected any argument Lockheed had concerning the Government's underpayment of CRAY costs.

The Court should deny the Government's request to exclude the allocable portion of Lockheed's loss on the disposition of the CRAY computers from the Court's analysis of the proper CRAY cost allocable to government contracts.

## III. THE GOVERNMENT'S REQUEST TO STRIKE NEARLY ALL STATEMENTS MADE IN MR. BLUE'S DECLARATION SHOULD BE DENIED BECAUSE THE DECLARATION WAS PROPERLY BASED ON PERSONAL KNOWLEDGE AND MR. BLUE'S REVIEW OF THE COMPANY'S BUSINESS RECORDS IN HIS OFFICIAL CAPACITY.

In its Response to Lockheed's Proposed Statement of Uncontroverted Fact and its Memorandum in Opposition to Lockheed's Motion for Summary Judgment, the Government argues that Mr. Blue lacks personal knowledge of nearly all the facts attested to in his September 8, 2004 Declaration.

Consistent with RCFC 56(e), and as reflected in the document itself, Mr. Blue's declaration was properly based on his personal knowledge as well as his knowledge gained from his review of the company's business records in his official capacity. Defendant's attempts to convince this Court to the contrary ignore the positions that Mr. Blue has held in his decade-long tenure at Lockheed, many of which entailed direct involvement in the transactions and events at issue here. *See* Blue Decl. ¶¶ 1-3 (Pl. App. at 001-002). Mr. Blue has personal knowledge of the relevant events and Lockheed's practices based on the positions he has held over the years, and particularly in his current position as Director of Finance at Enterprise Information Systems to which LITC operations (including all CRAY-related matters) were transitioned in 1995. *Aydin Corp. v. United States*, 229 Ct. Cl. 309, 313-14 (1982). *See also Self-Realization Fellowship*

*Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990).

Additionally, Mr. Blue's position at Lockheed qualifies him to "review the relevant business materials" and issue a declaration as to their contents. *Searles v. 1st Fortis Life Ins. Co.*, 98 F. Supp. 2d 456, 461-62 (S.D.N.Y. 2000) ("[Corporate officer's] position . . . qualified her to review the relevant business materials in an official capacity and make sworn statements based upon those materials. The Court finds that [she] had personal knowledge of the facts about which she testified."). *See also Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) ("Wroblewski was competent to testify to his own observations upon review of the documents"); *Schwimmer v. Kaladijan*, 988 F. Supp.2d 631 (S.D.N.Y. 1997) ("Dr. Stoller's testimony is based on his review of Beth Israel's medical records. Thus, he has personal knowledge of the contents of the records."); *Larouche v. Webster*, 175 F.R.D. 452, 454-55 (S.D.N.Y. 1996) ("Affiants may also testify to the contents of records they have reviewed in their official capacities"); *Attorney Gen. v. Irish N. Aid Comm.*, 530 F. Supp. 241, 252 (S.D.N.Y. 1981) (affiant's review of documents sufficient to satisfy personal knowledge requirement of F.R.C.P. 54(e)); *Van Skiver v. United States*, 751 F. Supp. 1522, 1524 (D. Ark. 1990) (the "affidavit is clearly based upon his own personal knowledge and/or his own files"); *Baker v. Veneman*, 256 F. Supp. 2d 999, 1005 (E.D. Mo. 2003) (personal knowledge for purposes of F.R.C.P. 56(e) existed by virtue of manager's position and his review of relevant files).

By reviewing company business records in his official capacity, Mr. Blue gained personal knowledge of their contents and became competent to make statements in his declaration on the basis of personal knowledge derived from his review. This proposition applies with equal force to events occurring before Mr. Blue assumed responsibility for LITC

operations, including all CRAY-related matters, so long as he reviewed the relevant business records firsthand. *Baker*, 256 F. Supp. 2d at 1005 (affiant could testify about government farm loans made before he began work as Farm Loan Manager because he reviewed loan files).

In light of precedent from this Court, it is of no consequence that Lockheed did not attach to Mr. Blue's declaration or include in Plaintiff's Appendix all of the records upon which Mr. Blue relied in preparing declaration:

> [T]he *primary* source of . . . information was not the company's books and records but, rather, the affiant's own "personal knowledge . . . ." Hence, the supplementary information defendant now insists upon could do no more than repeat -- though in a format less helpful than the affidavit itself -- the substance of those transactions that originated in the first instance . . . . To put it another way, the books and records could say no more than the affidavit now does for both owe their recitals to the same source.

*Transamerica Premier Ins. Co. v. United States*, 32 Fed. Cl. 308, 312-13 (1994). Mr. Blue had extensive involvement in and has personal knowledge concerning the facts integral to the issue of the proper amount of CRAY costs allocable to government contracts, including as the author of the "Cost Impact Conclusion" schedule which (1) Mr. Blue provided the Government to estimate of the cost impact of Lockheed's change in cost accounting practice to cost-type and fixed price contracts using the Government's method, and (2) was audited by DCAA-Orlando (Blue. Supp. Decl. ¶¶ 1-2 & 5 (Pl. App. at 046-049)). Therefore, requiring documentary proof to support the statements made in Mr. Blue's September 8, 2004 Declaration and November 19, 2004 Declaration (attached hereto at Pl. App. 046-049) is unnecessary because Mr. Blue's declaration is more helpful to the Court.

Lockheed requests oral argument on these motions. The Court's reaction to the dispositive issues at the conclusion of oral argument could lead to a settlement and the entry of judgment.

Respectfully submitted,

s/Clarence T. Kipps

Clarence T. Kipps, Jr., Esq.
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W., Suite 900
Washington, D.C. 20005
Tel: (202) 626-5800
Fax: (202) 628-0858
Attorney of Record
Lockheed Martin Corporation

Of Counsel:

Angela B. Styles, Esq.
Kimberly R. Heifetz, Esq.
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W., Suite 900
Washington, D.C. 20005
Tel: (202) 626-5800
Fax: (202) 628-0858

David M. Christenson, Esq.
LOCKHEED MARTIN CORPORATION
6801 Rockledge Drive
Bethesda, Maryland 20817
Tel: (301) 897-6127
Fax: (301) 897-6333

Dated: November 22, 2004