IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LOCKHEED MARTIN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00-129C |
| | ) | (Judge Allegra) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**APPENDIX TO PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

(Pages 046-077)

Dated: November 22, 2004

Supplemental Declaration of James M. Blue 046-049

December 29, 1995 letter from CRAY Research, Inc. to Lockheed (with December 22 letters attached) 050-052

May 5, 1997 facsimile from Lockheed to Don Wheatley transmitting correspondence concerning disposition of CRAY computers 053-056

May 5, 1997 facsimile from Lockheed to Don Wheatley transmitting April 1996 DCAA audit report 057-068

October 10, 1997 Lockheed Memorandum with attachments 069-072

Lockheed Martin Skunk Works (LADC) FY 1997 Overhead Rate Agreement 073-074

*Federal Courts Admin. Act of 1992,* P.L. 102-572, 1992 U.S.C.C.A.N. 3921 075-077

DCAA Audit Guidance on Cost Accounting Standards (CAS) Cost Impact – Unilateral Changes in Cost Accounting Practice and Noncompliance with CAS and Disclosed Practices (Jan. 2002) 078-100

*In re Violation of Rule 28(c)*, Miscellaneous No. 774 (2004) 101-105

August 19, 2004 letter from Clarence Kipps to Doris Finnerman 106

October 2, 1997 letter from Lockheed to DCE Becker 107-108

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LOCKHEED MARTIN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00-129C |
| | ) | (Judge Allegra) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL DECLARATION OF JAMES M. BLUE**

I, James M. Blue, hereby supplement the statements made in my September 8, 2004 Declaration and declare as follows on the basis of my personal knowledge and review of Lockheed Martin Corporation ("Lockheed") business records:

1. In October 2001, I prepared a schedule entitled "Cost Impact Conclusion," in which I calculated the CRAY costs allocable to government contracts under both Lockheed's resource commitment method and the Government's actual usage method. *See* Def. App. at 158. The schedule provided an estimate of the underpayment by the Government using the Government's actual usage method, including the impact on Lockheed's fixed price and cost-type contracts of allocating the CRAY costs to LASC and LMSC using the Government's actual usage method. *Id.* I estimated the amount of Lockheed's loss on the disposition of the CRAY computers to be approximately $7.2 million, of which approximately $3.6 million was allocable to LASC and approximately $3.6 million was allocable to LMSC, based on their respective actual usage of the CRAY computers. *Id.*

2. Since preparing the schedule in October 2001, I have reduced the calculation of costs reflected in this schedule, including the amount of Lockheed's loss on the disposition of the

CRAY computers allocable to government contracts. The reduced figures are reflected in paragraph 25 of my September 8, 2004 Declaration. *See* Pl. App. at 006.

3. As I stated in paragraph 12 of my September 8 Declaration (Pl. App. at 004), the 1995 disposition of the CRAY computers resulted in an unanticipated loss to Lockheed of approximately $6.8 million. While the total amount of Lockheed's loss on the disposition of the CRAY computers was approximately $7.44 million, because LITC included approximately $632,000 of 1995 depreciation costs in the hourly billings from LITC to the operating companies, I reduced the amount of Lockheed's loss on the disposition of the CRAY computers by $632,000, from approximately $7.44 million to $6.8 million.

4. On October 23, 2001, in connection with the parties' negotiation of this dispute, Lockheed provided a copy of this schedule to the Government as page 5 of a document entitled "DCMC-LOCKHEED MARTIN DISCUSSION." *See* Def. App. at 158.

5. I understand from Orlando-DCAA auditor Jim Wilson that he conducted an audit of the "Cost Impact Conclusion" schedule, which would have included an audit of Lockheed's estimate of its loss on the disposition of the CRAY computers and allocation of that loss to government contracts. DCAA has denied my requests for information concerning the results of that audit.

6. The Government incorrectly states that "the CRAY computers were not disposed in 1995." Def. Brief at 21, n.5; Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Fact, at 7. In January of 1996, Lockheed used the CRAY computers pursuant to a leaseback arrangement after completion of the sale of those CRAY computers in 1995. The documents provided in the appendix to Plaintiff's Reply in Support of Its Motion for Summary Judgment and Opposition to Defendant's Cross Motion for Summary Judgment (Pl. App. at ___)

confirm that the CRAY computers were disposed of in 1995 and reflect this leaseback arrangement.

7. Item 8.3.1.R of Lockheed's Corporate CAS Disclosure Statement provides, in relevant part, that:

> For cost pools allocated on a usage rate basis, standard rates will be set at the start of the year and remain throughout the year provided over/under liquidation does not exceed 10%. Within this range, the over/under liquidation will be rolled into the next year's rates. If the over/under liquidation exceeds 10%, rates will be adjusted to actuals a minimum of once a year, usually at year-end.

Def. App. at 4.

8. The Government incorrectly states that Lockheed did not "revise its rates as required by Lockheed's own disclosure statement." Def. Brief at 12. In fact, in 1994 and 1995, Lockheed complied with the above referenced provision.

9. I attended an April 11th 2002 meeting with the Government representatives and attest that this particular issue -- the loss on the disposition of the CRAY computers -- was discussed by the parties at that meeting and that the presentation covered during the meeting included information on this topic.

10. Pursuant to 28 U.S.C. § 1746, to the best of my knowledge and belief, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 22nd day of November 2004.

James M. Blue

James M. Blue

CRAY RESEARCH, INC.

Western Regional Office
3130 Crow Canyon Place, Suite 400, San Ramon, CA 94583 (510) 866-0600
FAX: (510) 866-0024

December 29, 1995

Lockheed Information Technology Company
1401 Del Norte Street
Denver, CO 80221

Attention: Mr. William Bernstein
Vice President, Data Center Services

Subject: Lockheed letters dated December 22, 1995 (attached)

Dear Mr. Bernstein:

Enclosed are duly-executed copies of subject letters covering the purchase of a Cray J916 with related software license and maintenance services, in conjunction with the trade-in of the Cray YMP8I S/N 1710 and the YMP4E S/N 1922. Our acceptance of these letters is expressly conditioned on the following:

1. The terms and conditions of Cray Research's standard Sale, Software License and Maintenance service contracts (Cray-signed copies attached hereto) govern this transaction. The J916 equipment and software will be released for shipment only upon Lockheed's counter-execution of these contracts. The J916 is currently scheduled to be delivered on or about February 2, 1996.

2. In addition to the noted shipping costs for the J916, the noted charges for the YMP8I services, and the noted monthly charges for J916 service and license, Cray Research will issue invoices for the noted $30,000 price differential and the $8,800 UNIX Use-B license fee; payment by Lockheed for all invoices will be in accordance with the provisions of the above-specified contracts.

Please forward one (1) fully-executed original of each of the above contracts to me as soon as possible to allow us to schedule shipment of the J916 accordingly. Please call Carol Burolla at (510) 866-0600, extension 297, or Tim Ward at (303) 705-8316, if you have any questions.

Best regards,

[signature]

Timothy F. Frush
Contracts Manager

litcltr.doc

--97%                510 866 9024                12-29-95 03:43PM P002 #42

Lockheed Information Technology Company
1401 Del Norte Street Denver, CO 80221
Telephone: 303-430-2130 Facsimile: 303-430-2225

LOCKHEED MARTIN

December 22, 1995

Cray Research, Inc.
3130 Crow Canyon Pl. Ste. 400
San Ramon, CA 94583

Lockheed Information Technology Company (LITC) agrees to purchase from Cray Research, Inc. (the following purchase order number has been assigned to this acquisition LT-5772) the following equipment and associated peripherals and software under following conditions:

Equipment
Cray J916/4-2048
IOS-6
DDI-10
DDS-30
EI-1
FI-2
SI-3x

Software
Fortran PE
C++ PE

Purchase price for all items above: $200,000

Unix USE-B License $8,500

Conditions
1. LITC will pay actual shipping costs for the above equipment and software at a price not to exceed $5,000. Installation is at no cost.

2. LITC will pay hardware and software maintenance at a cost of $5,565 per month, effective 2/1/96. Delays in the shipment, delivery and installation of the above equipment will result in LITC continuing to use the leased Y-MP8I at monthly cost of $5,565.

Wm. Bernstein, Vice President
Data Center Services

Timothy F. Frush
Cray Research, Inc.

DEC-28-1995 10:05 510 866 9024 97% 12-28-95 03:43PM P.03 P.02 #42

Lockheed Information Technology Company
3401 Del Norte Street Denver, CO 80221
Telephone: 303-430-2130 Facsimile: 303-430-2225

LOCKHEED MARTIN

December 22, 1995

Cray Research, Inc.
3130 Crow Canyon Pl. Ste. 400
San Ramon, CA 94583

Lockheed Information Technology Company (LITC) agrees to sell to Cray Research, Inc. on 12/22/95 the following equipment and associated peripherals under following conditions:

<u>Equipment</u>
Cray Y-MP8I/4128 S/N 1710
Cray Y-MP4E/464 S/N 1922

<u>Conditions</u>

| | | |
|---|---|---|
| 1. | Sale of equipment | $200,000 |
| | less deinstallation/shipping | (30,000) |
| | Net | $170,000 |

2. Lease of Cray Y-MP8I (S/N 1710), inclusive of hardware and software maintenance at $21,300 for the period 12/23/95-1/31/95.

Wm. Bernstein, Vice President
Data Center Services

Timothy F. Frush
Cray Research, Inc.

DEC-26-1995 10:06 510 866 9024 97% P.04
12-29-95 03:43PM P004 #42

LOCKHEED MARTIN

Enterprise Information Systems

12506 Lake Underhill Road, MP 267
Orlando, FL 32825-5002

# FAX SHEET

*Please Note: One fax is being sent to each fax machine, please make copies for all addressees who may share the fax machine at your location. Thank you.*

| Please deliver to: | Phone # | Fax # |
|---|---|---|
| Don Wheatly | | 214 9735 |

**Message:**

Don,

Here's the letter re: to the Gov't reaction of disposing of the Cray. Call me if you have any questions Thanks

Jim

Pages (including cover):

Date: 5/5/97

**From:** Jim Elie

**Phone:** 407 306-2393

**Fax:** (407) 306-7292

Call Jan at 407/306-6692 (8*306-6692) if you have any problems with this transmission.

T 001957

Lockheed Information Technology Company
1401 Del Norte Street Denver, CO 80221
Telephone: 303•430•2130 Facsimile: 303•430•2225

LOCKHEED MARTIN

October 23, 1995

James L. Lashbrook
Branch Manager
Defense Contract Audit Agency
7112 West Jefferson Avenue Suite 200
Lakewood, CO 80235-2327

SUBJECT: Response to Audit Report No. 03121-95J10501001

Dear Mr. Lashbrook:

LITC concurs with your recommendation as stated in Scenario 2, eliminate both Crays. Based on reduced forecasted Cray computing requirements (1,200 cpu hours) for 1996, we have decided to shut down and eliminate both Crays by year end 1995. Cray Research Inc. has been given 90 day notification and our users have been notified of our intent to shut down and eliminate the Crays. We will make arrangements to purchase any required Cray cycles from a third party. Immediate actions will be taken to reduce annual costs as noted in your letter.

Sincerely,

William Bernstein
Vice President
Data Center Services

T 001958

Lockheed Information Technology Company
1401 Del Norte Street Denver, CO 80221
Telephone 303-430-2130

LOCKHEED MARTIN

January 17, 1996

Ms. Renee Varin Potratz
Administrative Contracting Officer
Colorado Central Team
Defense Contract Management Area Operations
Orchard Plaza 2, Suite 200
5975 Greenwood Plaza Boulevard
Englewood, CO 80111-4715

File Reference:
WB/csm/96/486

Dear Ms. Potratz:

The actions described in my October 23, 1995 letter were completed on schedule to eliminate the two CRAY systems.

Rather than satisfying the future low-level demands for CRAY cycles from a third party, we have acquired a single, very small CRAY system, sized to meet our needs. This was done since none of the third parties who were selling CRAY cycles competitively were able to assure us that our proprietary data would be properly safeguarded.

Sincerely,

W Bernstein

William Bernstein
Vice President
Data Center Services

T 001959

**Subject:** FW: 1995 DCAA HPCC Audit Final Outcome

**From:** /c=us/admd=telemail/prmd=mmc/o=den/ou=msmaildos/dd.MSMail=EDEXNET$/LITC$/R... 4/9/96 1:03 PM

**To:** Wanda Rumbaugh at ORL-ESC-CC-P

Wanda, please give this to Archy.

thx

----------

From: Wade, Jan
To: Blue, James (CCMAIL); Bernstein, William
Cc: Kercher, Ron
Subject: 1995 DCAA HPCC Audit Final Outcome
Date: Monday, April 01, 1996 3:01PM

I was contacted today by Gary LePage of DCAA today regarding his follow-up analysis of the alternatives to retaining one or giving up both of the Cray systems. He has prepared a final report saying that LITC should be commended for making the extremely cost effective decision to give up both Crays and acquire the smaller system. We may not see a copy of the report, since his write-up is submitted to the DCAA ACO, but I will put a copy of this memo in the file for future reference.

Jan

T 001960

**Message:**

Don,

Here's the letter re: to the Gov't reaction of disposing of the Crag. Call me if you have any questions. Thanks
Jim

Pages (including cover):

Date: 5/5/97

**From:** Jim Blue

**Phone:** 407 306-2393

**Fax:** (407) 306-7292

Call Jan at 407/306-6692 (8*306-6692) if you have any problems with this transmission.

T 001961

057

TRANSMISSION RESULT REPORT (MAY 05 '97 10:14AM)

407 306 7292 BUS OPS

(AUTO)

THE FOLLOWING FILE(S) ERASED

| FILE | FILE TYPE | OPTION | TEL NO. | PAGE | RESULT |
|---|---|---|---|---|---|
| 006 | MEMORY TX | | 82149735 | 04/04 | OK |

ERRORS

1) HANG UP OR LINE FAIL 2) BUSY 3) NO ANSWER 4) NO FACSIMILE CONNECTION

LOCKHEED MARTIN

Enterprise Information Systems

12506 Lake Underhill Road, MP 267
Orlando, FL 32825-5002

# FAX SHEET

*Please Note: One fax is being sent to each fax machine, please make copies for all addressees who may share the fax machine at your location. Thank you.*

| Please deliver to: | Phone # | Fax # |
|---|---|---|
| Don Wheatly | | 8,214-9735<br>(301) 897 6019 |

## Message:

Don,
More communication which is pertinent to the Gray issue.
Jim Blue

Pages (including cover): 9
Date: 5/6/97

From: Jim Blue
Phone: 407 306-2353
Fax: (407) 306-7292

Call Jan at 407/306-6692 (8*306-6692) if you have any problems with this transmission.

Purchase w/ Gray 590

LOCKHEED MARTIN

*Lockheed Martin EIS - Data Center Services*
*1401 Del Norte Street*
*Denver, CO 80221*

# Facsimile Cover Sheet

**To:** Jim Blue
**Company:** LM EIS
**Phone:** 407-826-6393
**Fax:** 407-826-1063

**From:** William Bernstein
**Company:** Data Center Services
**Phone:** (303) 430-2020
**Fax:** (303) 430-2002

**Date:** 4/30/96
**Pages including this cover page:** 10

**Comments:**

PT 000152

LOCKHEED MARTIN

# EIS Data Center Services

## INTERDEPARTMENTAL COMMUNICATION

**TO:** Distribution

**FILE REFERENCE:** WB/csm/96/524

**FROM:** W. Bernstein

**SUBJECT:** Attached Audit Report

**DATE:** April 30, 1996

The attached audit report is forwarded for your information.

C Martin

for William Bernstein
Vice President, Data Center Services
Lockheed Martin EIS

Distribution:

J. Blue
R. Kercher
S. Montanez
J. Wade

DEFENSE LOGISTICS AGENCY
DEFENSE CONTRACT MANAGEMENT COMMAND
DEFENSE CONTRACT MANAGEMENT AREA OPERATIONS, DENVER
ORCHARD PLACE 2, SUITE 200
5975 GREENWOOD PLAZA BLVD.
ENGLEWOOD, CO 80111-4715

April 23, 1996

REPLY REFER TO DCMC GDOC

Mr. William Bernstein
Lockheed Information Technology Company
1401 Del Norte Street
Denver, CO 80221

Dear Mr. Bernstein:

A review of the acquisition of a single, small Cray system as stated in your 17 Jan 96 letter has been accomplished.

The attached Audit Report No. 3121-96J10601001, 05 Apr 96, concerning the Audit of High Performance Computer Utilization, indicates that the replacement of both the Cray computers with a Cray J90 computer will result in annual cost avoidance of $982,000. Therefore, the installation of the Cray J90 computer is hereby recommended.

If you have any questions, your point of contact is Ms. Renee Varin Potratz at (303)843-4300x119.

Sincerely,

Renée Varin Potratz

RENEE VARIN POTRATZ
Administrative Contracting Officer
Colorado Central Team

Attachment
cc:
DCAA Denver

Federal Recycling Program Printed on Recycled Paper

# DEFENSE CONTRACT AUDIT AGENCY

## AUDIT REPORT

5 April 1996

**PREPARED FOR:** Administrative Contracting Officer
ATTN: Mr. Gerald A. Miller
Defense Contract Management Command, Denver
Orchard Place 2, Suite 200
5975 Greenwood Plaza Boulevard
Englewood, Colorado 80111-4715

**PREPARED BY:** Denver Branch Office
7112 W. Jefferson Avenue, Suite 200
Lakewood, Colorado 80235-2327
Telephone No. (303) 969-5000
FAX No. (303) 969-5056

**SUBJECT:** Audit of High Performance Computer Utilization

**REFERENCES:** DCAA: Audit Report No. 3121-96J10601001
DCAA: Audit Report No. 3121-95J10501001

**CONTRACTOR:** Lockheed Information Technology Company
1401 Del Norte Street
Denver, Colorado 80221

**REPORT RELEASE RESTRICTIONS:** See Page 5

**CONTENTS:**


| | Page |
|---|---|
| Subject of Audit | 1 |
| Executive Summary | 1 |
| Scope of Audit | 1 |
| Results of Audit | 2 |
| DCAA Personnel and Report Authorization | 4 |
| Audit Report Distribution and Restrictions | 5 |


ORIGINAL

Audit Report No. 03121-96J10601001

## SUBJECT OF AUDIT

As a part of our comprehensive audit of Lockheed Information Technology Corporation (LITC), we reviewed the acquisition of a Cray J90 Computer for the High Performance and Classified Computing (HPCC) center. LITC provides computing services to the Lockheed Martin Corporation. We performed the audit to evaluate whether the acquisition of a Cray J90 computer represents the best alternative for providing Cray computing resources for the Lockheed Martin Company. The audit was conducted during February and March of 1996.

## EXECUTIVE SUMMARY

In our opinion, the replacement of both of the Cray computers with a Cray J90 computer will result in annual cost avoidance of $982,000. Our previous audit (reference Audit Report No. 3121-95J10501001) of the HPCC disclosed that LITC could provide a more cost effective delivery of computer services if it either disposed of the Cray YMP - 4E computer or disposed of both the Cray YMP - 4E and the Cray YMP - 8I and purchased Cray computing resources from an outside vendor.

## SCOPE OF AUDIT

We conducted our audit in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the data and records reviewed are free of material misstatement. Our audit includes:

- assessing control risk to use as a basis for planning the nature, timing and extent of testing;
- examining, on a test basis, evidence supporting the amounts and disclosures in the data and records reviewed;
- assessing the accounting principles used and significant estimates made by LITC and;
- evaluating the overall data and records presentation.

We evaluated the acquisition of a Cray J90 computer using the applicable requirements contained in:

- Federal Acquisition Regulation (FAR),
- DoD FAR Supplement (DFARS), and
- Cost Accounting Standards.

Our audit specifically included:

- interviewing key managerial personnel, and
- reviewing costs for various computer systems.

## RESULTS OF AUDIT

Our audit disclosed that LITC's replacement of both of its Cray super computers with a smaller Cray J90 computer will result in an annual cost avoidance of approximately $982,000. We recommend that LITC continue with the installation of the Cray J90 computer.

In our previous audit, we examined three possible scenarios for dealing with the idle Cray computer capacity:

(1) Do nothing (i.e., continue to maintain the Cray YMP - 4E and the Cray YMP - 8I).

(2) Eliminate both Cray computers and buy any needed Cray time from a third party. This alternative was projected to save $496,000.

(3) Eliminate the Cray YMP - 4E and maintain the Cray YMP - 8I. The Cray YMP - 8I would continue to service internal Lockheed Martin requirements. This alternative was projected to save $491,000 annually.

Our analysis of the fourth alternative, the purchase of a small Cray J90 computer, follows:

| PROJECTED ANNUAL COST REDUCTION | |
|---|---|
| Labor and Related - HPCC | $100,100 |
| Labor and Related - Operations | 89,000 |
| Hardware Maintenance | 510,900 |
| Software Maintenance | 226,400 |
| Power Consumption | 105,600 |
| Depreciation of Cray J90 | < 50,000> |
| Net Savings | $982,000 |

This analysis is based on the assumptions that:

1. The cost of the Cray J90 is depreciated over a period of four years.

FOR OFFICIAL USE ONLY

2. Replacement of the Cray YMP-4E and the Cray YMP-8I with a Cray J90 will result in a headcount reduction of one in the HPCC department and one in the operations department.

We discussed our findings with Ms. Jan Wade, Administrative Supervisor, on 1 April 1996.

We examined only the acquisition of a Cray J90 computer. Accordingly, we express no opinion on the contractor's system of internal controls taken as a whole.

We would like to express our appreciation for the cooperation and assistance we received from the LITC's management and staff during the course of our review.

Audit Report No. 03121-96J10601001

## DCAA PERSONNEL

| | Telephone No. |
|---|---|
| Primary contact regarding this audit: | |
| Gary LePage, EDP Auditor | 612-725-3296 |
| Other contacts regarding this audit: | |
| Alan Teal, Chief AM/EDP/OA | 214-650-4916 |
| Steve Thorsted, EDP Supervisory Auditor | 801-975-3553 x226 |
| Kenneth Hill, Branch Manager | 303-969-5000 |
| Sally Mills, Acting Supervisory Auditor | 303-969-5000 |
| Denver Branch Office Fax No. | 303-969-5056 |

**AUDIT REPORT AUTHORIZED BY:**

KENNETH L. HILL
Branch Manager
DCAA, Denver Branch Manager

**FOR OFFICIAL USE ONLY**

Audit Report No. 03121-96J10601001

## AUDIT REPORT DISTRIBUTION AND RESTRICTIONS

DISTRIBUTION

DCAA, Lockheed Missiles and Space Co. Res. Ofc.
155D Moffett Pk. Dr., Bldg. 571
P.O. Box 60549
Sunnyvale, CA 94088-0549

DCAA, Lockheed Aeronautical Systems Co. Res. Ofc.
86 S. Cobb Drive, Bldg B2, Zone 0262
Sunnyvale, CA 94088-0549

DCAA, Lockheed Advanced Development Co. Res. Ofc.
1011 Lockheed Way
Palmdale CA 93599-001

DCAA, Pomona Valley Branch Office
1000 E. Garvey Ave. South, Suite 300
W. Covina, CA 91790-2900

DCAA, North Eastern Region Resident Office
65 Spit Brook Rd. Bldg. NHQ1-0519
Nashua, NH 03061-0868

DCAA, Atlanta Branch Office
2250 Newmarket Pkwy., Suite 124
Marietta, GA 30067-8749

DCAA, RAMA-3

DCAA, RSA-3 (ATTN: Steve Thorsted)

Permanent File

Audit Report No. 03121-96J10601001

RESTRICTIONS

1. Contractor information contained in the audit report may be proprietary. It is not practical to identify during the conduct of the audit those elements of the data which are proprietary (too few audit reports are requested by parties outside the contracting activity to warrant the additional effort). Proprietary determinations should be made in the event of an external request for access. The restrictions of 18 U.S.C. 1905 should be considered before this information is released to the public.

2. Under the provisions of Title 32, Code of Federal Regulations Part 290.26(b)(2), any Freedom of Information Act requests for audit reports received by DCAA will be referred to the cognizant contracting agency for determination as to releasability and a direct response to the requester.

3. The Defense Contract Audit Agency has no objection to release of this report, at the discretion of the contracting agency, to authorized representatives of LITC.

4. The information contained in this audit report should not be used for purposes other than action on the subject of this audit without first discussing its applicability with the auditor.

LOCKHEED MARTIN

# Memorandum

Date: October 10, 1997

To: R. Dalal, LM Missiles & Space
C. Wheeler, LM Aeronautical Systems

From: A. M. DiPasquale
Corporate Director
Government Financial Management

Subject: Write Off of CRAY Computer

Enclosed is a billing which represents an allocation of the write off of the net book value of the CRAY computer which was part of the Lockheed Information Technology Center (LITC) in Denver. This write off was temporarily recorded on the corporate books in 1996 and needs to be dispositioned prior to year end 1997.

We have examined several options for recording this transaction and decided that a CAS compliant and equitable way to handle it is to allocate the write off according to actual usage of the computer in 1994, 1995 and 1996. Accordingly, 49% has been allocated to Missiles & Space and 51% to Aeronautical Systems.

This decision has been reviewed and approved by senior financial management. If you have any questions, you may call me at (301) 897-6781.

A. M. DiPasquale

Attachment

cc: P. J. Duke
T. J. Kallman
J. C. McCarthy
F. X. McKenna

LOCKHEED MARTIN
6801 ROCKLEDGE DRIVE BETHESDA, MARYLAND 20817

# INTEROFFICE DEBIT / CREDIT MEMORANDUM

Nº 64148

10/10/97
DATE

LMAS

04-1718-02-01-00

WE DEBIT YOUR ACCOUNT AS FOLLOWS:

| DESCRIPTION | TOTAL |
|---|---|
| CRAY COMPUTER - WRITE OFF<br>- (See Attachment) | $ 3,795,733.88 |

BY

Proprietary Matter

PT 000070

LOCKHEED MARTIN

INTEROFFICE DEBIT / CREDIT MEMORANDUM

6801 ROCKLEDGE DRIVE BETHESDA, MARYLAND 20817

Nº 64149

LMMS

04-2135-20-00-00

10/10/97

DATE

DEBIT

WE YOUR ACCOUNT AS FOLLOWS:

| DESCRIPTION | TOTAL |
|---|---|
| CRAY COMPUTER - WRITE OFF | $ 3,646,881.56 |
| - (See attachment) | |

BY

PT 000071

Proprietary Matter



I/M-2 (Rev. 2-88) COPY 1

# GENERAL LEDGER JOURNAL VOUCHER

## MARTIN MARIETTA INFORMATION SYSTEMS

AUTOMATIC REVERSAL YES_NO

PREPARED BY J. Williamson 306-2035

APPROVED BY

NO. 200

DATE 5/95

PAGE 1 OF 1

EXPLANATION: To Transmit to Corp 1995 Restructure Cost comprised of write off of LITC CRAY computer $7,612,615.44 less amount received from Cray Research for trade-in value (170,000.00)

| MASTER | SUB | DESCRIPTION | DEBIT | CREDIT |
|---|---|---|---|---|
| 7C1519 | LMART | | | 7442615 |
| 7C2955 | 06000 | | 7442615.44 | |
| | | Dr 1305 Susp | | |
| | | Cr 1820 Interco | | |

COPY

0•

7,442,615•44
0•49
3,646,801•56
LMAS

7,442,615•44
0•51
3,795,753•88
LMAS

0•

PT 000072

Proprietary Matter

5/23/96

GCLSV

# NEGOTIATED SETTLEMENT
# LOCKHEED MARTIN SKUNK WORKS
# FISCAL YEAR 1997 OVERHEAD RATE AGREEMENT

1. This agreement is entered into by and between the Department of Defense (DoD), represented by Defense Contract Management Agency Palmdale, and Lockheed Martin Aeronautics Company, Palmdale, for the purpose of settling Lockheed Martin Skunk Works divisional overhead issues for contractor fiscal year 1997.

2. This agreement is entered into pursuant to and in accordance with Federal Acquisition Regulation (FAR) 42.705-1, entitled "Contracting Officer Determination Procedure."

3. The issues agreed to are based on Defense Contract Audit Agency (DCAA) questioned cost applicable to Lockheed Martin Skunk Works Final Overhead Proposal for Fiscal Year 1997.

4. Subject to the provisions set forth herein, the below listed rates are hereby established as acceptable for application to Government flexibly priced contracts having costs incurred during LMSW Fiscal Year 1997. A listing of major contracts and subcontracts is enclosed.

Overhead Rates:

| Pool | Expense | Base | Rate | Allocation Base |
|---|---|---|---|---|
| Tacair | $ 19,701,832 | $ 31,834,760 | 61.888% | Tactical Aircraft LOB DL$ |
| Recce | $ 10,996,430 | $ 17,713,561 | 62.079% | Reconnaissance LOB DL$ |
| Engineering | $ 40,007,758 | $ 50,776,673 | 78.792% | Engineering DL$ |
| Aircraft Service | $ 12,964,495 | $ 23,861,340 | 54.333% | Aircraft Services LOB $ |
| Operations | $ 74,996,236 | $ 84,795,322 | 88.444% | Operations DL$ |
| G&A | $ 95,344,689 | $ 183,525,215 | 51.952% | Total DL$ |
| Helendale | $ 325,879 | $ 583,216 | 55.876% | Helendale DL$ |
| Ops | $ 43,028,694 | $ 96,124,107 | 44.764% | Direct and Indirect Operations Labor $ |
| Non-Ops | $ 78,011,561 | $ 179,752,851 | 43.399% | Direct and Indirect Labor $ Total Less Operations |

Facilities Capital Cost of Money

| | |
|---|---|
| Tacair | 4.303% |
| Recce | 4.886 |
| Engineering | 5.440 |
| Aircraft Services | 3.363 |
| Operations | 10.111 |
| G&A/IR&D/B&P | 1.484 |

5. The amount of $12,456 disallowed for software associated with CRAY computer in 1994 is in dispute. The Contractor has appealed the Contracting Officer's final decision, and the parties are in litigation. If this amount or any part thereof is subsequently determined to be allowable and allocable, it will be added to the negotiation of the then oldest open overhead year.

6. The amount of $1,469,000 disallowed for the allocation of CRAY computer costs in 1993 is in dispute. The Contractor has appealed the Contracting Officer's final

decision, and the parties are in litigation. If this amount or any part thereof is subsequently determined to be allowable and allocable, it will be added to the negotiation of the then oldest open overhead year.

7. This agreement shall not change any monetary ceiling, contract obligation, or specific allowance or disallowance provided in the terms and conditions of affected contracts. This agreement is without prejudice to any right or claim that is, or might be, available to either the Government or Lockheed with respect to similar or related costs in future overhead proposals. Neither the Government nor Lockheed shall consider anything in this agreement as establishing a mutual agreement on specific allowable or unallowable incurred costs beyond 1997.

8. In witness hereof, the parties hereby executed this agreement on this 9th day of January 2003.

| LOCKHEED MARTIN AERONAUTICS COMPANY | DEFENSE CONTRACT MANAGEMENT AGENCY |
|---|---|
| Debra McClendon | John G. Locke |
| DEBRA MCCLENDON<br>Manager, Palmdale Accounting | JOHN G. LOCKE<br>Divisional Administrative Contracting Officer |

## FEDERAL COURTS ADMINISTRATION ACT OF 1992

*P.L. 102–572, see page 106 Stat. 4506*

### Dates of Consideration and Passage

*Senate: August 3, October 7, 1992*
*House: October 3, 1992*

**Cong. Record Vol. 138 (1992)**

**Senate Report (Judiciary Committee) No. 102–342, July 27, 1992**
**[To accompany S. 1569]**

**House Report (Judiciary Committee) No. 102–1006, Oct. 3, 1992**
**[To accompany H.R. 5933]**

*The Senate bill was passed in lieu of the House bill after amending its language to contain much of the text of the House bill. The House Report (this page) is set out below, and the President's Signing Statement (page 3942) follows.*

## HOUSE REPORT NO. 102–1006

[page 1]

The Committee on the Judiciary, to whom was referred the bill (H.R. 5933) to implement the recommendations of the Federal Courts Study Committee, and for other purposes, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass.

*　　*　　*　　*　　*

[page 12]

*　　*　　*　　*　　*

### Explanation of Amendment

Inasmuch as H.R. 5933 was ordered reported with a single amendment in the nature of a substitute, the contents of this report constitute an explanation of that amendment.

### Summary and Purpose

H.R. 5933 in part is a supplement to the Federal Courts Study Committee Implementation Act of 1990 which was enacted into law as part of the Judicial Improvements Act of 1990. In addition to addressing a number of the Federal Courts Study Committee recom-

[page 28]

*Section 907. Sites for holding court*

Section 907 clarifies the authority of the court to hold proceedings where convenient to the litigants and witnesses. The amendment will restore the authority of the court to preside in hearings overseas, particularly in Government contract disputes, when the circumstances of the case make that the most appropriate location for the parties and witnesses.

*Section 908. Jurisdiction*

This provision would amend 41 U.S.C. § 605(c) by making certification of claims under the Contract Disputes Act nonjurisdictional. Wasteful and esoteric litigation over this issue has produced several hundred written and, oftentimes, conflicting opinions from various courts and agency appeals boards. The language in this section is the result of much discussion between the Administrative Conference, Members of Congress, and the Claims Court. Chief Judge Smith of the U.S. Claims Court is a strong advocate of this section.

Certification has always been tended to insure that complete, clear, and honest claims are presented to Federal contracting officers, and this requirement remains: Contracting officers are not required to address claims that do not comply with the provisions of 41 U.S.C. § 605.

However, a defect in the certification, discovered after a claim is in litigation, may be cured by the contractor to avoid repetition of the entire administrative claims process and waste of judicial or board resources. See generally *United States* v. *Grumman Aerospace Corp.,* 927 F.2d 575 (Fed. Cir. 1991); *Ball, Ball &Brosamer, Inc.* v. *United States,* 878 F.2d 1426 (Fed. Cir. 1986).

The term "technically defective" is intended to cover the full range of defects found by the courts that do not involve a substantive defect, such as bad faith, fraud, or reckless and intentional disregard of the statutory certification requirements. Examples of "technically defective" certifications made curable by this amendment include certification with each document submitted as part of the claim when all claim documentation is not submitted simultaneously, missing certifications when two or more claims not requiring certification are deemed by the court or board to be a larger claim requiring certification, and certification by the wrong or incorrect representative of the contractor (when the person making the certification was authorized by the contractor to certify on its behalf). This list is not intended to be exclusive, but to illustrate that use of the word "technically" does not narrowly and unreasonably limit the scope of this amendment.

It is the Committee's belief that contractors whose certifications are defective as the result of innocent mistake or inadvertence should not be penalized where their claims are otherwise meritorious and a good faith effort appears to have been made to provide a responsive certification in the first instance, including recertifications filed in response to contracting officer inquiries after the initial claim was filed.

To reiterate, the language would not eliminate the certification requirement. The language merely would permit an agency board of contract appeals or court to allow a certification to be amended

if there are reasonable grounds and so long as the certification was not made fraudulently, in bad faith, or with reckless or grossly negligent disregard of the Contract Disputes Act or applicable regulations. This section shall also have prospective application and allow interest to accrue from the date a claim was filed where a court or board of contract appeals allows a defective certification to be corrected.

*Sections 909 and 910. Awardable costs and proceedings generally*

Section 909 and 910 will promote uniformity among the courts by making applicable to the Claims Court various provisions of title 28 pertaining to costs, witness fees, in forma pauperis proceedings and payment of judgments now applicable to other Federal trial courts.

*Section 911. Subpoenas and incidental powers*

Section 911 will amend 28 U.S.C. § 2521 to provide for the Claims Court the same authority to enforce its orders and processes as is presently provided for the U.S. Tax Court.

## TITLE X—EFFECTIVE DATE

This section is a residual effective date stating that, except as otherwise specifically provided in the text of the bill, this act shall be effective on January 1, 1993.

## COMMITTEE OVERSIGHT FINDINGS

In compliance with clause 2(l)(3)(A) of rule XI of the Rules of the House of Representatives, the Committee reports that the findings and recommendations of the Committee, based on oversight activities under clause (2)(b)(1) of rule X of the Rules of the House of Representatives, are incorporated in the descriptive portions of the report.

## COMMITTEE ON GOVERNMENT OPERATIONS OVERSIGHT FINDINGS

No findings or recommendations of the Committee on Government Operations were received as referred to in clause 2(l)(3)(D) of rule XI of the Rules of the House of Representatives.

## NEW BUDGET AUTHORITY AND TAX EXPENDITURES

Clause 2(l)(3)(B) of House Rule XI is inapplicable because this legislation does not provide new budget authority or increase tax expenditures.

## CONGRESSIONAL BUDGET OFFICE COST ESTIMATE

In compliance with clause 2(l)(3)(C) of rule XI of the Rules of the House of Representatives, the Committee sets forth, with respect to the bill H.R. 5933, the following estimate and comparison prepared by the Director of the Congressional Budget Office under section 403 of the Congressional Budget Act of 1974: