No. 00-129C
(Judge Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LOCKHEED MARTIN CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# APPENDIX TO DEFENDANT'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

OF COUNSEL:

Gregory T. Allen
Raymond J. M. Wong
Defense Contract Management Agency

DORIS S. FINNERMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0300
Fax: (202) 305-7643
Attorneys for Defendant

February 11, 2005

## INDEX TO APPENDIX

**PAGE(S)**

Letter from A.M. DiPasquale to James Rose,
dated April 1, 1994, w/ excerpt from enclosed Disclosure Statement . . . . . . . . . . . . . . . . . . . 170

Lockheed Power Point Presentation,
March 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 173

**Lockheed Corporation**
4500 Park Granada Boulevard
Calabasas, California 91399

April 1, 1994

Mr. James Rose
Defense Corporate Executive
Defense Contract Management District West
Lockheed Corporation
4500 Park Granada Boulevard
Calabasas, CA 91399

Subject: Revised Lockheed Corporation Disclosure Statement
Dated April 1, 1994

Dear Mr. Rose:

Attached is a revised Disclosure Statement for Lockheed Corporation's home office. This supersedes the last version you received dated June 18, 1993. This statement incorporates the changes documented in our letter to you of October 8, 1993 and our subsequent conversation where you stated your wording preferences. In addition, we have expanded the description of LITC allocation methods for computing resources and made some minor wording changes in other sections to reflect recent developments.

We would be happy to provide you with copies of our redlined drafts to facilitate the review of the document.

Sincerely,

A. M. DiPasquale

A. M. DiPasquale, Corporate Director
Government Finance Relations

Enclosure

cc: Richard Dodd, DCAA ✓



24-1-1

94F19100001

| COST ACCOUNTING STANDARDS BOARD<br>DISCLOSURE STATEMENT<br>*REQUIRED BY PUBLIC LAW 91-379* | PART V—DEPRECIATION AND CAPITALIZATION PRACTICES<br>Name of Reporting Unit LOCKHEED CORPORATION |
|---|---|

| Item No. | Item Description |
|---|---|

**5.4.0** **Treatment of Gains and Losses on Disposition of Depreciable Property.** Gains and losses are: (*Check the appropriate block(s) and if more than one is checked, explain on a continuation sheet.*)

A. ☒ Credited or charged currently to the same overhead or G&A pools to which the depreciation of the assets was charged.

B. ☒ Taken into consideration in the depreciation cost basis of the new items, where trade-in is involved

C. ☐ Not accounted for separately, but reflected in the depreciation reserve account

D. ☐ Credited or charged to Other (Miscellaneous) Income and Expense accounts

Y. ☐ Other(s) (*Describe on a continuation sheet.*)

Z. ☐ Not applicable

**5.5.0** **Capitalization or Expensing of Specified Costs.** (*Check one block on each line to indicate your practices regarding capitalization or expensing of specified costs incurred in connection with capital assets. If the same specified cost is sometimes expensed and sometimes capitalized, check both blocks and describe on a continuation sheet the circumstances when each method is used.*)

| Cost | A. Expensed | B. Capitalized |
|---|---|---|
| (a) Freight-in | ☐ | ☒ |
| (b) Installation costs | ☐ | ☒ |
| (c) Sales taxes | ☐ | ☒ |
| (d) Excise taxes | ☐ | ☒ |
| (e) Architect-engineer fees | ☐ | ☒ |
| (f) Overhauls (extraordinary repairs) | ☐ | ☒ |
| (g) Major modifications or betterments | ☐ | ☒ |

**5.6.0** **Criteria for Capitalization.** (*Enter (a) the minimum dollar amount of expenditures for acquisition, addition, alteration and improvement of depreciable assets, capitalized, and (b) the minimum number of expected life years of capitalized assets. Use leading zeros for dollar amount, e.g., 0150 for $150. If more than one dollar amount or number applies, show the information for the majority of your depreciable assets, and enumerate on a continuation sheet the dollar amounts and/or number of years for each category or subcategory of assets involved which differ from those for the majority of assets.*)

(a) Minimum dollar amount 1,500 (b) Minimum life years ☐ 2

**5.7.0** **Group or Mass Purchase.** Are group or mass purchases (initial complement) of similar items, which individually are less than the capitalization amount indicated above, capitalized? (*Check one.*)

A. ☒ Yes B. ☐ No

171


24-1-5

COST ACCOUNTING STANDARDS BOARD
**DISCLOSURE STATEMENT**
*REQUIRED BY PUBLIC LAW 91-379*

CONTINUATION SHEET

Name of Reporting Unit Page 1 of 1 Page
LOCKHEED CORPORATION

| Item No. | Item Description |
|---|---|
| 5.1.0 | Depreciating Tangible Assets<br><br>(d) Leasehold Improvements<br><br>Useful life code - Leasehold improvements are depreciated over the estimated life of the asset or the remaining term of lease (firm lease period excluding options), whichever is shorter. When the lease is for an indefinite term, the leasehold improvement is depreciated over the period of its estimated life and upon termination of the lease, any unamortized balance is written off.<br><br>(i) Programming/reprogramming costs<br><br>Internally developed software is expensed as costs are incurred.<br><br>Individual pieces of purchased software are expensed if cost is less than $1,000. However, software purchased as part of an original complement costing more than $1,000 is capitalized.<br><br>Licensed software with a unit cost of $6,000 or more is capitalized. |
| 5.4.0 | Treatment of Gains and Losses on Disposition of Depreciable Property.<br><br>Net gains and losses are recorded in the home office residual pool. |

FORM CASB-DS-1



24-1-6

# CRAY Litigation

March XX, 2002 Discussion

# Background/Agenda

- Revisit March 14, 2001 Settlement Discussion
  - Questions/Issues Raised by ACO and DoJ
- Is There a CAS Issue
  - Allocability
  - CAS Statute/Clause
  - CAS Cost Impact Requirements
- Alternative Outcomes

# Issues Raised March 14, 2001

- Precedent Setting LMC Issue
  - Linked to Current EIS Accounting
- LMC Response
  - CRAY Issue Stands Alone (Supercomputing)
  - EIS Issues Are Not the Same (Business Computing And Y/E Adj.)
  - EIS Follows 1994 DCE Compliance Determination

CRAY – Nonprecedent and Not Linked to EIS

# Issues Raised March 14, 2001 (cont'd)

- LITC Did Not Follow Disclosed Practice
- LMC Response
  - LITC Followed CAS Disclosure Statement
  - Predetermined Rates Used Per CAS 418 (g)
  - In-Year Adjustments Made Per CAS 418 (e) (g)
  - Y/E ± 10% Variance Test/Adj. Employed

LITC Followed CAS D.S. and Was CAS Compliant

# Is There a CAS Issue - Allocability

- No Dispute Concerning CRAY Cost Allowability
- LITC Compliant With CAS 418
  - "Resource Consumption" Is Dedication of the Resource to Specific Segments
  - DCE 1994 Determination of Compliance/ADPE Team
- CRAY Is Not a CAS 403 Issue
  - Resource Provided Upon Firm Request by Segment
  - Not a Central Service to All Segments Like Finance

Allocability – Based on Resource Consumption

# Is There a CAS Issue – CAS Statute/Clause

- If There Is a CAS Noncompliance
  - We Must Use Applicable Statute and CAS Clause
  - How Much Did the Government Pay?
  - What Were the Total CRAY Costs?

CAS Clause Provides Remedy and Quantum

# CAS Statute And Clause

- "In No Case Shall The Government Recover Costs Greater Than the Increased Cost to the Government, <u>In The Aggregate</u>, on the Relevant Contracts Subject to the Price Adjustment…"
- For CAS Cost Adjustment Purposes, You <u>Must</u>…
  - Consider Total CRAY Costs
  - Offset Cost Increases and Decreases (Incl. FP)
- Local Agreements Do Not Supercede CAS

Both Parties Bound by CAS Statute

# Salient CRAY Costs ($M)

| | |
|---|---|
| • Total Costs Allocable to Government Contracts | $ 31.9 |
| • Costs Paid by the Government | 22.3 |
| • Costs Not Paid by the Government | $ 9.6 |
| | |
| • Cost Decreases | $ 9.6 |
| • DCE's Demand for Cost Increases | 2.7 |
| • Net CRAY Costs Not Paid by the Government | $ 6.9 |

There Is No Cost Increase to the Government Under CAS

# CAS Cost Impact Requirements

- Concurrent Accumulation and Estimating Noncompliance (DCAA Guidance)
  - "Estimating Noncompliances Affect Primarily FP Contracts, While Accumulation Noncompliances Affect Only Flexibly-Priced Contracts. Since the Contractor Both Estimated and Accumulated Costs Using a Noncompliant Practice, the Cost Impact Affects Both Flexibly-Priced and FP Contracts."
  - "Offset the Impact of the Noncompliance on the Cost Accumulations (Flexibly-Priced Contracts) and Contract Price (FP Contracts) Within Each Contract Group."
  - "Determine Aggregate Increased Costs Paid by the Government by Offsetting Across Contract Groups the Increased/Decreased Costs Paid by the Government for Each Contract Group."

**Government Must Consider Flexibly-Priced/FP Offsets**

# DCE's Calculation of Cost Impact Did Not Consider FP Contracts

- DCE's Final Decision & $2.7M Demand for Payment of Cost Increases Considered Only Flexibly-Priced Contracts ($1.9M), Fee ($.2M) & Interest ($.6M)
- Affected Segments Are Essentially All USG CAS Covered
- Contract Mix (%):

| | Flexibly-Priced | FP | USG-CAS |
|---|---|---|---|
| LMSC | 95 | 2 | 97 |
| LASC | 34 | 56 | 90 |
| LADC | 77 | 23 | 100 |

- "Determine Aggregate Increased Costs Paid by the Government by Offsetting…"
  - Flexibly-Priced Increased Costs $1.9M
  - Fixed Price Decreased Costs 1.7
  - Net Impact Per CAS $ .2M

**Alleged Noncompliance Is Immaterial**

# Litigation Outcome Range

- To Prevail, Government Must
  - Overturn 1994 DCE Determination and ADPE Analysis
  - Prove Resources Consumed Were CAS 418 Noncompliant
  - Recognize Only One of Two Local Agreements
  - Create New Interpretation of CAS Statute
- If Government Prevails on All Points
  - Maximum Cost Recovery Is $.2M
- If LMC Prevails on Any Point
  - Government Billed $9.6M Plus Interest

**Further Litigation Not in Best Interests of Both Parties**