IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LOCKHEED MARTIN CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 00-129C<br>(Judge Allegra) |

DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IDENTIFYING AND SUMMARIZING A DECISION INTERPRETING THE LANGUANGE IN CAS 9903.306(b)

Lockheed Martin Corporation ("LMC") requests that the Court consider Astronuatics Corp., ASBCA No. 49691, 99-1 B.C.A. ¶ 30,390 (1999), to determine the proper interpretation of CAS 9903.306(b). The facts and decision in that case are consistent with and support the Government's position in this proceeding.

LMC focuses its discussion of the Astronautics decision on quotations from DOD Working Group Paper 76-4 and Preamble M to CAS 9903.306(b). The limited quotations cited by LMC, however, do not provide an adequate analysis of the facts and how they relate to question before this Court. The key facts in the Astronautics case are as follows:

- The Government contended that Astronautics was in noncompliance with CAS 401, 410, 418, and 420 because Astronautics omitted certain material costs and other direct costs from its allocation bases. The Government alleged that the omission of the material and other direct costs resulted in actual overhead rates that were materially higher than they should have been.

- The Government computed the cost impact by including all CAS-covered flexibly priced and fixed price contracts. In calculating the cost impact, the Government re-computed Astronautics' budgeted overhead rates used to estimate costs, which the Government assumed were computed by excluding the material and other direct costs from the allocation bases.
- While Astronautics did not dispute the noncompliance, Astronautics disputed the Government's computation of the cost impact, contending that only flexibly priced contracts were affected by the noncompliance. Astronautics stated that there was no cost impact on its firm fixed price contracts.
- Astronautics's Vice-President of Finance testified that the inaccurate (overstated) rates found by DCAA were not, in fact, used by Astronautics in its budgeting methodology. As a result, its budgeted overhead rates were not impacted by the exclusion of the material and other direct costs.

In rendering its decision, the board relied upon subparagraph (b) of then-existing FAR 30.306 (48 C.F.R. § 30.306 (1987)) (currently set forth at 48 C.F.R. § 9903.306), which states that, for fixed price contracts, "increased costs are measured by the difference between the contract price agreed to and the contract price that would have been agreed to had the contractor proposed in accordance with the cost accounting practices used during contract performance." The board provided some insight into this provision by referencing CAS Preamble M, 4 C.F.R. Part 331, Preamble M (1992), which "explains the need for a remedy when the contractor had adopted practices during contract performance 'that reduced his cost allocations below the allocation determined during the estimating process.'" The board explained this remedy as

follows: "had the Government been aware of this new method of cost allocation at the time of price negotiation prior to award, it would have relied upon the reduced cost allocation to obtain a better contract price. Accordingly, the contract price adjustment precludes the contractor from obtaining any contract price advantage as a result of any CAS noncompliance during contract performance."

Ultimately, however, the board found that Astronautics' noncompliance did not affect the estimates upon which the fixed price contract prices were based. In other words, there was no difference between the contract price that was agreed to and the contract price that would have been agreed to. Since the noncompliance did not affect the estimating process, there was no impact on the fixed price contracts.

Applying the facts and decision of the Astronautics case to this case shows that our position is consistent with the language and intent of section 9903.306. In this case, LMC bid its contracts based upon commitments as to amounts of computer usage. These commitments were the best estimates available at the time the contract price was agreed on. Whether LMC did or did not adjust the commitments to reflect the actual costs incurred during contract performance did not affect the contract price that was agreed upon by the parties.

This conclusion may be illustrated as follows: Contract A, a flexibly priced contract, and Contract B, a fixed price contract, are both negotiated on January 15, 1995, at a contract price of $100,000. Contract A is performed in Segment 1, while Contract B is performed in Segment 2. The contracts each include $30,000 of estimated costs based upon commitments of computer usage made by the managers of Segments 1 and 2. At the time the contractor bid the contract, it was the contractor's practice to NOT adjust the commitment amount to reflect actual

usage. At the end of 1995, the actual computer usage was $20,000 for Segment 1 (which was $10,000 less than the commitment) and $40,000 for Segment 2 (which was $10,000 more than the commitment). Thus, the actual costs for Contract A was $90,000 ($100,000 original estimated cost less the $10,000). The actual costs for Contract B was $110,000 ($100,000 original estimated cost plus the additional $10,000 of actual computer costs).

| **Contract** | **Contract A – Flexibly Priced** | **Contract B – Fixed Price** |
|---|---|---|
| Contract Price | $100,000 | $100,000 |
| Costs Accumulated During Performance Assuming Noncompliant Method (no adjustment to commitments for actual costs) | $100,000 | $100,000 |
| Costs Accumulated During Performance Asssuming Compliant Method (commitments adjusted to reflect actual costs) | $ 90,000 | $110,000 |

In December, 1995, the contractor is found to be in noncompliance with CAS 418 because it does not adjust the commitment amount to reflect actual usage. The Government is entitled to recover any increased costs it paid as a result of the noncompliance. In accordance with section 9903.306(a), increased costs are deemed to have resulted whenever the cost paid by the Government is higher than it would have been had the contractor complied with the applicable Cost Accounting Standards. Thus, the cost impact is the difference between the cost paid by the Government using the contractor's noncompliant practice and the cost that would have been paid by the Government had the contractor used a compliant practice. In this situation, that cost impact is computed as follows:

| Contract | Costs Allocated Using Non-compliant Method | Amount Paid If Non-Compliant Method Is Used (C) | Costs Allocated Using Compliant Method | Amount Paid If Compliant Method Is Used (D) | Cost Impact Of Using Noncompliant Method (C-D) |
|---|---|---|---|---|---|
| A – Flexibly Priced | $100,000 | $100,000 | $90,000 | $90,000 | $10,000 |
| B – Fixed Price | $100,000 | $100,000 | $110,000 | $100,000 | $--0-- |
| Total | $200,000 | $200,000 | $200,000 | $190,000 | $10,000 |

With respect to Contract B, a fixed price contract, any reallocation of costs to reflect actual usage would be made after the fixed contract price was negotiated, and therefore has no effect on the amount the Government will pay as a result of the noncompliant practice. This is the nature of a fixed price contract. See 48 C.F.R. § 16.202-1 ("A firm-fixed-price contract provides for a price that is not subject to any adjustment on the basis of the contractor's cost experience in performing the contract"); Dalton v. Cessna Aircraft Co., 98 F.3d 1298, 1305 (Fed. Cir. 1996) (fixed price contracts "assign the risk to the contractor that the actual cost of performance will be higher than the price of the contract"). This contrasts with a flexibly priced contract, where the basis for payment is the actual costs incurred in performing the contract. See 48 C.F.R. § 16.301-1 ("Cost-reimbursement types of contracts provide for payment of allowable incurred costs, to the extent prescribed in the contract").

The nature of a fixed price contract is the reason for, and is consistent with, the requirements of section 9903.306(b). Subsection (b) states that the cost impact on a fixed price contract is the difference between the price that was agreed to and the price that would have been agreed to. Thus, the focus for fixed price contracts must be on what occurred at the time of price negotiations, since after that time, the price is fixed, and any adjustments on the basis of the costs

incurred to perform the contract do not effect the price that would have been agreed upon prior to performance of the contract. The actual costs incurred on a fixed price contract do not effect the amount paid by the Government for a fixed price contract. Compare 48 C.F.R. § 30.605 (h)(3) and 48 C.F.R. § 52.230-6(i)(2) (in preparing detailed cost impact ("DCI") proposals for "noncompliances that involve estimating costs," the cognizant Federal agency official ("CFAO") and the contractor are directed to "determine the increased or decreased cost to the Government for fixed-priced contracts and subcontracts") with 48 C.F.R. § 30.605 (h)(4) and 48 C.F.R. § 52.230-6(i)(3) (in preparing DCI proposals for "noncompliances that involve accumulating costs," the CFAO and the contractor are directed to "determine the increased or decreased cost to the Government for flexibly-priced contracts and subcontracts").

In this case, as in Astronautics, the noncompliance did not involve estimating costs. Thus, there is no difference between the price that was negotiated using the noncompliant practice and the price that would have been negotiated had LMC used a compliant practice. The fact that actual costs are recorded differently using the compliant practice versus the noncompliant practice does not impact the price paid by the Government on fixed price contracts, since actual costs incurred are not the basis of payment for such contracts.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Doris S. Finnerman
DORIS S. FINNERMAN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-0300\
Fax: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:

Gregory T. Allen
Raymond J. M. Wong
Defense Contract Management Agency

July 18, 2005